

**ORDERED in the Southern District of Florida on October 16, 2018.**

Erik P. Kimball, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

160 Royal Palm, LLC,                    Case No. 18-19441-EPK

Debtor.                                 Chapter 11
_____/

**ORDER GRANTING DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER (I) APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (II) APPROVING THE FORM AND MANNER OF NOTICE OF SALE, (III) SCHEDULING AN AUCTION AND SALE HEARING AND (IV) APPROVING THE SALE OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

**THIS MATTER** came before the Court for hearing on October 10, 2018, upon the motion of 160 Royal Palm, LLC (the "Debtor") seeking an entry of an order (I) approving bid procedures and bid protections in connection with the sale of substantially all of its assets, (II) approving the form and manner of notice of sale, (III) scheduling an auction and sale hearing and (IV) approving the sale of the assets free and clear of liens, claims and encumbrances (the "Motion") [ECF No. 92]. The Court, having reviewed the Motion, having heard the arguments of counsel, and being otherwise fully advised in the premises, hereby:

{2234/000/00417952}                     1

**FINDS AND DETERMINES THAT:**

A. The Court has jurisdiction over this matter and over the property of the Debtor pursuant to 28 U.S.C. §§ 157(a) and 1334, venue is proper in this district pursuant to 28 U.S.C. § 1408, and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

B. Good and sufficient notice of the relief sought in the Motion has been given in accordance with Bankruptcy Rule 2002, and no other or further notice is or shall be required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties-in-interest.

C. The sale procedures set forth herein (the "Sale Procedures") and proposed notice set forth in the Motion are appropriate, and reasonably calculated to provide all interested parties with timely and proper notice thereof.

D. The Sale Procedures set forth herein are fair, reasonable and appropriate, and are designed to maximize the recovery on the proposed sale of the Assets.[1]

E. The bidding and sale process described in the Motion is fair and reasonable, and designed to fully expose the Assets to the market.

F. The entry of this Order is in the best interests of the Debtor, its estate, creditors, and all other parties-in-interest.

**ORDERS AND ADJUDGES THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. The Sale Procedures set forth herein are hereby **APPROVED**.

3. The Debtor is hereby **AUTHORIZED** to consummate and carry out the actions reasonably necessary to consummate and carry out the Sale Procedures and Auction.

---

[1] Capitalized terms not defined herein shall have the definitions provided for in the Motion.

{2234/000/00417952}    2

4. The form of the asset purchase agreement ("Form APA") filed by the Debtor under a notice of filing on October 8, 2018 [ECF No. 105] is approved, subject to the terms of the sale procedures set forth herein, and provided that section 12.1 of the Form APA is modified to provide that the buyer shall pay for real property taxes and assessments for the 2018 tax year, and 2019 tax year (if applicable), through the closing, except that such buyer shall be entitled to receive a closing credit for taxes in the amount of $50,000.

5. The findings and conclusions set forth above constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

6. The Sale Procedures with respect to the Auction and the sale of the Assets are as follows:

    i. Participation Requirements: Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must, no later than **5:00 p.m. on November 9, 2018** (the "Bid Deadline"):

        a. wire into the trust account of Greenberg Traurig, P.A. (the "Initial Deposit Agent"), an escrow deposit of ten percent (10%) of the purchase price, pursuant to the wire instructions attached hereto as **EXHIBIT A**, to be held by the Initial Deposit Agent pending the outcome of the selection by the Debtor, and approval by the Court, of the Successful Bidder and Back-Up Bidder, and then pursuant to the terms of the applicable asset purchase agreement in the event a Qualified Bidder is the Successful Bidder or Back-Up Bidder;

        b. submit to the Broker, Shraiberg, Landau & Page, P.A. and Greenberg Traurig, P.A. on or before the Bid Deadline: (A) a fully executed asset purchase agreement substantially in the form of the Form APA to be provided by the Debtor (the effectiveness of such Form APA being contingent only upon the Qualified Bidder becoming the Successful Bidder pursuant to these procedures, subject only to Bankruptcy Court approval, with no due diligence or financing contingencies), with a purchase price of not less than Thirty Two Million Five Hundred Thousand and No/100 ($32,500,000.00), and (B) a black-lined version of the APA to show any changes made by such potential bidder; provided that, an asset purchase agreement proposing any material change to the Form APA provided by the Debtor may be rejected by the Debtor in its sole business judgment; and

      c. submit to the Broker and Shraiberg, Landau & Page, P.A. on or before the Bid Deadline such financial disclosures and documentation which demonstrate, in the Debtor's sole business judgment, the potential bidder's financial and other capabilities to consummate the sale.

A person who timely complies with these requirements shall have submitted a "<u>Qualified Bid</u>" and shall be deemed a "<u>Qualified Bidder</u>". The list of Qualified Bidders will not be shared with anyone prior to the Auction. The Stalking Horse Bidder shall be deemed a Qualified Bidder.

ii. <u>Waiver of Conflicts</u>: Any person who has submitted a Qualified Bid shall be deemed to have waived any right to claim there is a conflict with respect to an unrelated transaction for which such person has employed the law firm of Greenberg Traurig, P.A., and the Debtor's employment of Marcia H. Langley and the law firm of Greenberg Traurig, P.A. as the Initial Deposit Agent, real estate transaction counsel and title agent for the sale of the Assets, and related transactions contemplated herein.

iii. <u>Auction</u>: In the event the Debtor receives a timely Qualified Bid, the Debtor will conduct an auction (the "<u>Auction</u>"). The Auction shall take place on November 16, 2018 beginning at 10:00 a.m., at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401. In the event the Debtor does not receive a timely Qualified Bid, the Debtor will seek final approval of the sale to the Stalking Horse Bidder at the Sale Hearing on November 16, 2018.

iv. <u>Auction Procedures</u>: At the Auction, the Debtor will identify the Qualified Bid which shall serve as the opening bid.

      a. All Qualified Bidders shall be entitled to make any subsequent bids in increments of not less than $50,000 (a "<u>Subsequent Bid</u>"). Bidding at the Auction shall continue until such time as the highest or best offer is determined by the Debtor in the exercise of its sole business judgment. The Debtor reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in its sole business judgment.

      b. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Debtor will, at each round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse Bidder.

      c. Each Qualified Bidder's offer shall be irrevocable until the selection of the Successful Bidder and, if applicable, the Back-Up Bidder (as set forth in the asset purchase agreement), provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain

        irrevocable until the of closing of the sale to the Successful Bidder or the Back-Up Bidder.

v. <u>Broker's Commissions</u>:  All broker commissions shall be in accordance with the terms and conditions of the Broker Engagement Order.  Other than as set forth in the Broker Engagement Order, the Debtor's bankruptcy estate shall not be liable for any commissions.

vi. <u>Successful Bid</u>:  After the conclusion of the Auction, the Debtor shall submit the highest or best bid that has been accepted (the "<u>Successful Bid</u>") for approval by the Bankruptcy Court at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401 on November 16, 2018 following the Auction (the "<u>Sale Hearing</u>").  The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to as the "<u>Successful Bidder</u>."

vii. <u>Closing Date</u>. The closing of the transaction (the "<u>Closing</u>") shall take place on or before twenty (20) calendar days after the order approving the sale is entered (the "<u>Sale Order</u>") and becomes final and non-appealable (the "<u>Closing Date</u>"), subject to the terms of the applicable asset purchase agreement.  The Successful Bidder must be prepared and must in fact consummate the purchase of the Assets in accordance with applicable asset purchase agreement.

viii. <u>Back Up Bid</u>.  Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Assets because of a breach or failure on the part of the Successful Bidder, then the Debtor may elect in its business judgment to close with the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "<u>Back Up Bidder</u>").  At the Sale Hearing, the Debtor intends to seek approval from the Court for the next highest or best bid (the "<u>Back Up Bid</u>"), which approval shall authorize the Debtor to consummate the Back Up Bid immediately after a default under the Successful Bid without further order of the Court.  Promptly following the conclusion of the Sale Hearing, the Debtor shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

ix. <u>As is/where is</u>:  The Assets will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.

x. <u>Credit Bidding</u>: Subject to the limitations requested by the Debtor discussed below and as may be ordered by the Court after the October 24, 2018 hearing on the Debtor's Motions to Limit Credit Bids with Respect to Sale of Substantially All Its Assets [ECF No. 103], only holders of allowed valid secured claims (that are otherwise Qualified Bidders) are permitted to credit bid at the Auction; <u>provided that</u>, in the event any person submits a permitted credit bid and is the Successful Bidder and/or Back Up Bidder, such person shall provide for the

payment of the Break-Up Fee, and any commission due to the Broker, in cash on the Closing Date. No party shall be permitted or entitled to credit bid, or attempt to credit bid, any alleged obligation of the Debtor that the Debtor asserts constitutes, or will constitute at some point, a contingent, unliquidated or disputed claim against the Debtor. The Debtor reserves all rights to contest the propriety of any credit bid pursuant to § 363(k) and § 105 of the Bankruptcy Code.

xi. <u>Initial Deposit Agent Provisions</u>.

    a. The Initial Deposit Agent shall hold all deposits received from any person until after the conclusion of the Sale Hearing. If, after the conclusion of the Sale Hearing, a person is not selected and approved as the Successful Bidder or Back-Up Bidder, the Initial Deposit Agent shall return the deposited funds to each person who provided the deposit. If a person is the Successful Bidder or Back-Up Bidder, the Initial Deposit Agent shall transfer such party's deposit to Chicago Title Insurance Company, the Deposit Agent under the applicable asset purchase agreement, who shall continue to hold such person's deposit pursuant to the terms of the applicable asset purchase agreement.

    b. If conflicting demands relating to a deposit are made upon the Initial Deposit Agent, the Initial Deposit Agent shall have the absolute right to do either or both of the following: (A) withhold and stop all actions in performance of the escrow and await settlement of the controversy by final appropriate legal proceedings or as otherwise mutually directed in writing by the person providing the deposit and the Debtor; or (B) file suit in declaratory relief or interpleader and obtain an order from the Bankruptcy Court requiring the person who provided the deposit and the Debtor to interplead and litigate in such court their several claims and rights amongst themselves. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Court the relevant funds, the Initial Deposit Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it under this Order with respect to such funds.

    c. In no event shall the Initial Deposit Agent be liable for any act or omission under or in respect of the deposits held under this Order except where Initial Deposit Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, the Initial Deposit Agent shall not incur any liability with respect to (A) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Initial Deposit Agent under this Order, or (B) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Initial Deposit Agent shall in good faith believe to be genuine, to have been signed or presented by a person

or persons having authority to sign or present such instrument, and to conform with the provisions of the applicable asset purchase agreement and this Order.

7. The Debtor is authorized to act in accordance with the Sale Procedures, which shall be binding upon all parties-in-interest in these cases.

8. KK-PB Financial, LLC reserves the right to credit bid at the Auction, subject to further hearing and the Court's determination with respect to the *Debtor's Motion to Limit Credit Bids with Respect to Sale of Substantially All of its Assets* [ECF No. 103], and *Secured Creditor KK-PB Financial, LLC's Motion to Estimate Claim for Purposes of Credit Bidding Pursuant to 11 U.S.C. §§ 502(c) and 363(k)* [ECF No. 133].

9. The Asset Purchase Agreement (the "Stalking Horse APA") entered into between the Debtor and the RREF II Palm House LLC (the "Stalking Horse Bidder") is approved, subject to the Sale Hearing and entry of the Sale Order.

10. Subject to the Sale Hearing and entry of the Sale Order, as set forth in section 11.5 of the Stalking Horse APA, the Stalking Horse Bidder shall pay, on the Closing Date, all costs of Closing, and as set forth in section 12.1 of the Stalking Horse APA and as such section is modified herein, the Stalking Horse Bidder shall pay for real property taxes and assessments for the 2018 tax year, except that the Stalking Horse Bidder shall be entitled to receive a closing credit for taxes in the amount of $50,000.

11. The Debtor and Stalking Horse Bidder further agree that section 8.4 of the Stalking Horse APA is modified as follows:

> Break-Up Fee. In the event Buyer is not in default hereunder and has not terminated this Agreement pursuant to the terms hereof and is ready, willing, and able to close on the purchase of the Assets, if Seller accepts an offer to sell all or any portions of the Assets to another buyer ("Alterative Buyer"), which sale is approved by the Bankruptcy Court in the Bankruptcy Case, and such transaction closes, then Seller agrees that Buyer shall be entitled to receive Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00) as a break-up fee to reimburse

Buyer for the value of its time, costs, and expenses incurred in connection with this transaction, including Buyer's agreement to serve and participate as the "stalking horse" bidder under the Sale Procedures Order (the "Break-Up Fee"). The Break-Up Fee shall be entitled to status as a super-priority administrative expense and shall be secured by a lien on the deposit of the Alternative Buyer or the closing proceeds in the event the transaction with the Alternative Buyer closes, and, except in the event of a credit bid, shall be paid solely and exclusively from such forfeited deposit or closing proceeds. Any sums becoming payable to Buyer pursuant to this Section 8.4 shall be paid to Buyer promptly after the closing with any such Alternative Buyer approved in the Bankruptcy Case or, if applicable, promptly after the deposit on such transaction is forfeited.

12. The Break-Up Fee in the amount of Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00) set forth in the Stalking Horse APA is approved as set forth therein and modified by this Order.

13. The Overbid Protection set forth in the Stalking Horse APA is approved, and if the Stalking Horse Bidder has not terminated or materially breached the Stalking Horse APA, the Debtor agrees not to accept any offers from an Alternative Buyer unless such offer is at least Thirty Two Million Five Hundred Thousand and No/100 ($32,500,000.00) .

14. The Debtor is authorized and permitted to sell the Assets to the highest or best bidder following the Auction, free and clear of all liens, claims and encumbrances, including without limitation mortgages, pledges, charges, liens, debentures, trust deeds, claims, assignments by way of security or otherwise, security interests, and conditional sales contracts or other title retention agreements or similar interests or instruments charging, or creating a security interest in the Assets or any part thereof or interest therein (including notices or other registrations in respect of any of the foregoing) affecting title to the Assets or any part thereof or interest therein (collectively, the "Liens"), with such Liens to attach to the proceeds of the sale of the Assets in the order of their priority, with the validity, force and effect that they had as of the Petition Date, if any, against the Assets, subject to the rights, claims, defenses and objections of the Debtor and all interested parties with respect to such liens, so that the purchaser of the Assets

shall take the Assets free of all Liens.  The Liens include without limitation, the interests held by the following parties:

    i.    Palm House LLC, by reason of being the sole member of 160 Royal Palm LLC, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

    ii.    Ryan Black, by reason of any interest in 160 Royal Palm LLC, by reason of Palm Beach County Circuit Court Case No, 14-12824, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

    iii.    Gerry Matthews, by reason of any interest in 160 Royal Palm LLC, by reason of Palm Beach County Circuit Court Case No, 14-12824, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

    iv.    Robert V. Matthews, by reason of any interest in 160 Royal Palm LLC;

    v.    Joseph J. Walsh, Sr., by reason of any interest in Palm House Hotel LLLP;

    vi.    KK PB Financial LLC, a Florida limited liability company, by reason of the Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement recorded in Official Records Book 26694, Page 1420; and Foreclosure Case 14-11203;

    vii.    Palm House Hotel, LLLP, a Florida limited liability company, by reason of the Mortgage and Security Agreement recorded in Official Records Book 27103, Page 129; and Case 14-14382 and Case 15-14480;

    viii.    James F. Biagi, P.E., by reason of Default Final Judgment filed in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, under case No. CACE 15-005370 (08) recorded in Official Records Book 27660, Page 1139;

    ix.    Richard's Woodwork, Inc., a/k/a RFW Cabinetry and Millwork, a Florida profit corporation, by reason of Final Judgment on Default for Plaintiff filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA004303 AB, recorded in Official Records Book 27702, Page 1461;

    x.    David Campanaro by reason of Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA005120XXXMBAF, recorded in Official Records Book 28122, Page 196;

    xi.    Place For Tile, Inc., by reason of Final Default Judgment Against Defendant 160 Royal Palm, LLC, filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA002935XXXXMB,

recorded in Official Records Book 28517, Page 1307 and in Official Records Book 29606, Page 1097;

xii. TWG Enterprises Waterproofing & Painting, Inc., by reason of Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA012471XXXXMB, recorded in Official Records Book 28038, Page 734;

xiii. Van Linda Iron Works, Inc., a Florida corporation, by reason of Amended Default Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA013194XXXMB, recorded in Official Records Book 28140, Page 1634;

xiv. New Haven Contracting South, Inc., by reason of Final Default Judgment Against Defendant 160 Royal Palm, LLC, filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under case No. 2015CA013244XXXXMB, recorded in Official Records Book 28877, Page 790;

xv. Architectural Precast & Foam, LLC, by reason of Final Judgment of Foreclosure After Default recorded in Official Records Book 28560, Page 1512, and by reason of Final Judgment for Attorney's Fees and Costs recorded in Official Records Book 28560, Page 1510, and by reason of Consent Final Judgment for Post-Judgment Attorney's Fees and Costs Pursuant to Fla. Stat. 57.115 recorded in Official Records Book 28935, Page 975, all under case No. 2015CA014459XXXXMB, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida;

xvi. Xpert Elevator Services, Inc., by reason of the Claim of Lien Renewal recorded in Official Records Book 29442, Page 819, which renewed that certain Claim of Lien Renewal recorded in Official Records Book 28682, Page 78, which renewed that certain Claim of Lien Renewal recorded in Official Records Book 27916, Page 492, which renewed that certain Claim of Lien recorded in Official Records Book 27194, Page 1278;

xvii. Securities and Exchange Commission by reason of United States District Court, Southern District of Florida, West Palm Beach Division Case No. 18-81038;

xviii. Edward A. Marod, Esq., attorney for Lan Li, et al, interested parties, as more particularly set forth in the Notice of Appearance and Request for Service in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division Case No. 18-19441, Docket Entry 31.; and as identified in action pending in U.S. District Court Case No. 16-81871;

xix. Maria Titova, as purported member of Palm House Hotel LLLP, the holder of a mortgage encumbering the subject property, per Palm Beach County Circuit Court Case No. 16-12723;

    xx.    The Town of Palm Beach by reason of action by 160 Royal Palm LLC against the Town of Palm Beach seeking extension of development permits in Palm Beach County Circuit Court Case No, 12-23613; and

    xxi.    Daniel Gorman, as to any interest disclosed by Memorandum of Understanding Agreement recorded in Official Records Book 27522 Page 958.

15.    The Auction will be held on **November 16, 2018 at 10:00 a.m.** at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401.  The Auction may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Auction.

16.    The Sale Hearing to consider final approval of the sale of the Assets will be held immediately following the Auction on **November 16, 2018** at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Sale Hearing.

17.    Objections, if any, to the proposed sale, must: a) be in writing, b) set forth the nature of the objector's claims against or interest in the Debtor's estates, and the basis for the objection and the specific grounds therefore; c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; d) be filed with the Court and served upon the Debtor, the Stalking Horse Bidder, and the United States Trustee for the Southern District of Florida, so as to be received no later than 5:00 p.m. two (2) business days prior to the Sale Hearing (the "Objection Deadline").  Only timely filed and served responses and objections will be considered by the Court during the Sale Hearing.  The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the proposed sale or the consummation and performance with respect to the proposed sale.

18. The Debtor has served the Motion on the Debtor, all creditors and the Office of the United States Trustee. The Debtor shall serve this Order upon all creditors and interested parties. The foregoing form and manner of notice of the Auction and proposed sale is approved.

19. As required under the Stalking Horse APA, the Debtor will publish notice of the proposed sale free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens attaching to the sale proceeds in the *Palm Beach Post* not less than once per week for two consecutive weeks. Such publication notice will set forth the time, date and place of the Auction and Sale Hearing.

20. Notice of the Sale Procedures, the Auction, the Sale Hearing and the remainder of the relief requested in the Motion, as described in the Motion, shall be good and sufficient notice thereof, and any requirements for other or further notice shall be waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, 6006 and 9007 and pursuant to the Court's powers under section 105 of the Bankruptcy Code.

21. Any stays that may be imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure with respect to the Motion are waived.

22. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

# # #

Submitted by:

Philip J. Landau
Bernice C. Lee
Counsel for the Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email:  blee@sfl-pa.com

*Copy to:* *Bernice C. Lee, Esq., 2385 NW Executive Center Dr., Suite 300, Boca Raton, FL 33431.  [Attorney Lee is directed to serve a copy of this Order upon all interested parties.]*