UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re | Case No.: 18-19441-BKC-EPK |
| 160 ROYAL PALM, LLC, | Chapter 11 |
| Debtor._____ / | |

**SECURED CREDITOR KK-PB FINANCIAL, LLC'S RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTION TO LIMIT CREDIT BIDS WITH RESPECT TO SALE OF SUBSTANTIALLY ALL OF ITS ASSETS [ECF NO. 103]**

Secured Creditor, KK-PB Financial, LLC ("**KK-PB Financial**"), pursuant to this Court's Order dated October 10, 2018 [ECF No. 134], submits this response in opposition to the Motion to Limit Credit Bids with Respect to Sale of Substantially all of its Assets [ECF No. 103], filed by Debtor 160 Royal Palm, LLC ("**Debtor**"), and states:

**PRELIMINARY STATEMENT**

1. In 2013, Glenn Straub sold the property he owned at 160 Royal Palm Way, LLC, to Palm House, LLC for $36 million, with seller financing. About 20% of the purchase price was paid at the closing, and Straub – through his wholly owned limited liability company, KK-PB Financial – took back the balance as a $27.5 million mortgage. In every respect, the sale was a common Florida land deal.

2. As it happened, the owners of Palm House, thereafter, appear to have committed a number of allegedly fraudulent and criminal acts. Certainly, Straub and KK-PB Financial became one of their victims, as the buyer's attorney failed to record the mortgage for 7 months, buyer stopped making payments on the mortgage, and siphoned off for their own purposes the $723,000 Straub had placed into an escrow fund to pay off city fines. KK-PB Financial initiated a foreclosure lawsuit that Debtors dragged out for four years.

3. Picking up where these criminals left off, the Debtor is now seeking to sell the mortgaged property without KK-PB Financial's consent for far less than the secured claims against it. Worse, as part of this effort, Debtor has abandoned relevant factual evidence and law, and opted instead to attack Straub personally, with rumor and gossip that would be well-suited to TMZ.com, but does not address, much less satisfy the critical legal issues.

1



4. In its credit bid motion, the Debtor pulls out all the stops on this character-assassination strategy. But looking past that thicket of unethical rubbish, the Court will clearly see that Debtor fails to set forth cause to limit KK-PB Financial's credit bid. To the contrary, failure to allow KK-PB Financial to be an active bidder will merely ensure that a multi-billion dollar real estate player – the Related Group – walks away with the property with a lowball offer.

5. Below, KK-PB Financial addresses the Debtor's relevant claims, demonstrating that no cause exists to limit its credit bid.

## FACTUAL BACKGROUND

### I. STRAUB'S SALE OF REAL ESTATE TO PALM HOUSE, LLC

6. The disputed transaction here was nothing more than a run-of-the-mill Florida dirt deal. Far from the complicated machinations of Lyondell, Nabisco, and other famed leveraged buyouts, the transaction was simply the sale of real estate, using a long-recognized mechanism to transfer real estate while attempting to minimize transfer taxes – instead of a deed, the real property was transferred by the assignment of the 100% membership interest in an llc whose only asset is the real property.

7. Each of the transaction documents demonstrates this was a real estate transaction, beyond any possible "bona fide dispute." For example, the central document in this transaction – the August 15, 2013 *"AS IS" Agreement for Purchase and Sale* – is a typical contract for the sale and purchase of Florida real estate in every respect.

8. The Agreement, attached to the Affidavit of Glenn Straub as Exhibit A, plainly states that the "property" being sold is real estate:

> 2. SALE AND PURCHASE. In consideration of the mutual covenants herein contained, and other good and valuable consideration, Seller agrees to sell and convey to Purchaser and Purchaser agrees to purchase from Seller, on the terms, covenants and conditions hereinafter set forth, the Property.
>
> 2.1 Real Property. That certain real property located in Palm Beach County and legally described on Exhibit "A" attached hereto (the "Real Property").
>
> 2.2 Appurtenant Property. To the extent owned and transferable by Seller, all improvements on the Real Property, including all buildings, structures, fixtures (including mechanical systems); all materials currently stored on or off the Property to be used in the construction of the Project, all intangible property used, if any, and owned by Seller in connection with the construction or operation of the Property, including the plans and specifications ("Plans") prepared for the construction of the Project together with an assignment and consent authorizing the transfer and use of the Plans by the architect and engineer of record, trade names (including without limitation, the Palm House name), intellectual property, websites, trademarks, contract rights, guarantees, licenses, permits and warranties; and all right, title and interest of the Seller, if any, in and to any and all streets, roads, highways, easements, accesses and rights-of-way appurtenant to the Real Property, and all right, title and interest of the Seller, if any, in and to any and all covenants, restrictions and agreements benefitting the Real Property.

2



9. In fact, the Agreement defines "Property" as "the Real Property and the Appurtenant Property which shall be deemed to include furniture, desks, and computers[.]" And the balance of the Agreement is all real estate *nitty-gritty*, providing for transfer by Warranty Deed, title insurance, prorations, surveys, condemnation, and paying a real estate broker commission.

10. This real estate deal also required seller financing, so the Agreement also sets forth a Financing section, Sec. 28, which provides that the seller will agree to finance the Property and take back a mortgage. That financing is the reason why KK-PB Financial holds a mortgage on the property and is a secured lender in this case.

11. Two weeks after the Agreement was entered into by the parties, the buyer suggested adding the option of transferring the property by assignment of the membership interest, so as to minimize transfer taxes. As a result, the parties entered into the *First Amendment to "As Is" Agreement for Purchase and Sale*. There, the parties agreed that the buyer would have the option (but not the obligation) to purchase the Membership Interest in the Debtor, rather than taking the fee interest. See Section 3.

## II.     FACTUAL CONTENTIONS WITHOUT EVIDENTIARY SUPPORT

12. Looking past Debtor's irrelevant character assassination efforts, there are just a handful of facts that are truly relevant to the legal issues that arise under Bankruptcy Code Sections 363(k) and 363(f)(4). As to those facts, the Debtor repeats allegations it knows are false, or makes allegations without any evidentiary basis. Set forth in the chart below are the only relevant factual grounds, with specific analysis as to each:

| ALLEGATIONS | |
|---|---|
| With respect to KK-PB Financial specifically, while it obtained its mortgage in August 2013, it did not record its mortgage until seven (7) months later, on March 28, 2014, which created the façade that the real property was unencumbered by such debt and that the EB-5 Creditors would, indeed, obtain a first mortgage on the real property that fully secured their investment once a purported bank loan was paid off. | **Knowingly False Allegation.** KK-PB Financial did not control the recording of the mortgage, and the delay in recording was cause by Leslie Evans, an indicted member of the fraud.<br><br>No "façade" was created. All EB5 Documents disclose existence of loan in the amount of $29.5 million that was in first position.<br><br>Debtor does not allege a single creditor detrimentally relied upon the failure to record before investing. |



| ALLEGATIONS | |
|---|---|
| KK-PB Financial also improperly benefited from the scheme by receiving transfers of the EB-5 Creditors' stolen money. | KK-PB Financial received payment from Palm House, LLC in exchange for the sale of the Real Property. Debtor states no grounds why this was an improper benefit. |
| Mr. Straub and KK-PB Financial were aware that PHH intended to offer an EB-5 visa program at the Palm House Hotel, and that they intended to obtain foreign investors in the project. | Both were aware. |
| Upon information and belief, Mr. Straub and KK-PB Financial were informed that the foreign investors were told that there was a $29,500,000 bank loan and mortgage against the property, and that those funds were being used to create jobs and continue the construction. | Upon information and belief is not an objective basis for a "bona fide" dispute. This allegation contradicts Debtor's allegation that the mortgage recording delay created a false façade. |
| Upon information and belief, Mr. Straub and KK-PB Financial were informed that the foreign investors were told that their investments would be used to pay off the $29,500,000 bank loan, at which time they would receive a first mortgage on the Property. | Upon information and belief is not an objective basis for a "bona fide" dispute. This allegation contradicts Debtor's allegation that the mortgage recording delay created a false façade. |
| Upon information and belief, Mr. Straub and KK-PB Financial were informed that the foreign investors would be told that their investments would be fully secured by the Property. | Upon information and belief is not an objective basis for a "bona fide" dispute. Contradicted by the PPM and other offering documents attached to the EB5 Complaint, which say EB5 investors are limited partners in Palm House Hotel, LLC |
| Upon information and belief, Mr. Straub and KK-PB Financial intentionally failed to record the Mortgage for almost seven (7) months to create the façade to potential foreign investors that the Property was unencumbered by his mortgage, which was in excess of $27,000,000. | **Knowingly false allegation**. Note now, the use of "upon information and belief." No "façade" was created. All EB5 Documents disclose existence of loan in the amount of $29.5 million that was in first position. Debtor does not allege a single creditor detrimentally relied upon the failure to record before investing. |
| Upon information and belief, Mr. Straub and KK-PB Financial recorded the Mortgage on March 28, 2014, only after being informed that most of the EB-5 Creditors had already performed their due diligence, signed their documentation, and wired their investments to be used at the Palm House Hotel project. | Upon information and belief is not an objective basis for a "bona fide" dispute. Informed by whom? Where is the email or the testimony to support this? Also, knowingly false, as a simple analysis of Exhibit N (a spreadsheet showing all monies received from the |

4



| ALLEGATIONS | |
|---|---|
| | EB5 Creditors) in the EB5 Creditors District Court complaint demonstrates. |
| Mr. Straub and KK-PB Financial conspired with and/or enabled the Bad Actors to fraudulently sell the Palm House investment opportunity to the EB-5 Creditors. | **Knowingly false allegation.** No factual basis provided. FBI, SEC, and US Attorney have investigated and brought enforcement actions against Matthew and Evan, but have not found or asserted any wrong doing by Straub and KK-PB Financial. |
| It was never disclosed to the EB-5 Creditors that a prior mortgage in favor of the prior owner/developer existed on the Property. | **Knowingly false allegation.** All the investment materials used to solicit the EB5 investments make this disclosure. Debtor offers no facts, no documents to support this allegation. |
| Further, Mr. Straub and KK-PB Financial impermissibly benefitted from their conduct by collecting payments on the Mortgage from the EB-5 Creditors' funds. | Straub and KK-PB Financial sold the Property to Palm House, LLC and received payment in exchange for that valuable consideration. Debtor provides no objective evidence to demonstrate why receipt of scheduled mortgage payments from Palm House was an "impermissible benefit." |
| The Town fine remained unresolved as of the Petition Date. In violation of the Escrow Agreement, the $744,442 was never paid to Palm House or the Debtor. | **Knowingly false allegation.** Straub funded the escrow, Palm House took the money and failed to take any steps to satisfy the fines. In effect, Palm House stole those escrowed funds. |

## LEGAL ARGUMENT

### I. DEBTORS MOTION TO LIMIT CREDIT BID SHOULD BE DENIED

#### A. Debtor Has Failed To Establish Cause Under 363(k)

13. Relying at little beyond gossipy innuendo, the Debtor seeks to limit KK-PB Financial's credit bid. Such a limitation is an extraordinary exception and not a matter of routine. Here, the Debtor has not met its burden showing "cause" under Section 363(k) to justify such an extraordinary exception.

14. It is important to note that this is the accepted baseline: KK-PB Financial has a right to credit bid its secured claim at an auction sale unless this Court orders otherwise for "cause" pursuant to Bankruptcy Code Section 363(k). *In re Aéropostale, Inc.*, 555 B.R. at 414 (stating Bankruptcy Code allows a party to credit bid unless court orders otherwise for cause); *In re RML Developments, Inc.*, 528 B.R. 150, 155 (Bankr. W.D. Tenn 2014). The Bankruptcy Code does not define "cause" to limit a party's credit bid rights under Section 363(k). *In re*

5



*Merit Group, Inc.*, 464 B.R. 240, 252 (Bankr. S.C. 2011). Instead, it is left to the courts to determine on a case-by-case basis whether or not there is sufficient cause to deny or modify a party's credit bid rights. *In re Aéropostale, Inc.*, 555 B.R. at 414; *In re RML Developments, Inc.*, 528 B.R. at 155 (stating "what constitute cause is discretionary with the bankruptcy court").

15. At the same time, a bankruptcy court does not have limitless discretion in determining whether to deny or limit a party's credit bid rights. *In re Aéropostale, Inc.*, 555 B.R. at 415 (stating that discretion does not permit a court to act arbitrarily or "freewheeling"). A court should only modify or deny credit bid rights as an extraordinary exception and not a matter of routine. *In re Aéropostale, Inc.*, 555 B.R. at 415; *In re RML Developments, Inc.*, 528 B.R. at 156 (determining "modification or denial of credit bid rights should be the extraordinary exception and not the norm").

16. While the Debtor asserts a plethora of meaningless allegations in support of its claims to deny KK-PB Financial's credit bid rights, nothing the Debtor alleges gives rise to "cause" permitting this Court to deny or limit KK-PB Financial's credit rights. *In re Merit Group, Inc.*, 464 B.R. at 252. The Debtor has not, and is unable, to meet its burden of proof that some factual grounds exists to show there is an objective basis for a dispute. *In re Merit Group, Inc.*, 464 B.R. at 252; *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991) (rejecting the argument that merely alleging a dispute is enough). The Debtor must do more than allege hearsay and innuendo to create a dispute.

17. Additionally, the Debtor's tabloid style allegations are irrelevant to and have no impact on the estate or the bidding process. *In re Aéropostale, Inc.*, 555 B.R. at 415. The Debtor alleges scandalous rumors to prejudice this Court into ruling that "cause" exists to limit or deny KK-PB Financial's credit bid rights since the Debtor cannot provide any specific facts or evidentiary support for alleged wrongdoings by KK-PB Financial. *In re Aéropostale, Inc.*, 555 B.R. at 416 (finding no "inequitable conduct that would justify limiting [or denying] a credit bid"); *In re Merit Group, Inc.*, 464 B.R. at 256 (finding that lack of evidence by the party requesting that a credit bid right be denied or conditioned for cause as a weakness in that party's position).

18. The Debtor falsely alleges that Straub and KK-PB Financial were parties to the alleged fraud perpetrated on the EB-5 victims[1] as a basis for this Court to determine that cause exist to limit or deny KK-PB Financial's credit bid rights. The Debtor has a reckless disregard for the truth when making such false allegations in light of the mountain evidence to the contrary available to the Debtor, including the Matthews Federal Indictment and the SEC Complaint. While the Matthews Federal Indictment and the SEC Complaint seeking enforcement against all parties involved in the EB-5 fraud, those documents failed to ***even mention*** Straub or KK-PB Financial, much less name them as co-conspirators.

19. The Court should reject the Debtor's request to limit or deny KK-PB Financial's credit bid right since the Debtor has failed to provide a modicum of facts giving rise to cause for the relief it seeks, much less any evidence to support its baseless allegations. Denying KK-PB Financial's rights is an extraordinary exercise of this Court's discretionary powers that must not be undertaken on the basis of unsubstantiated allegations. *In re Aéropostale, Inc.*, 555 B.R. at 415 (stating "modification or denial of credit bid rights should be the extraordinary exception and not the norm").

20. Moreover, Debtor appears to be advocating that the Court should prohibit KK-PB Financial from credit bidding because such credit bidding, in and of itself, would chill the bidding. The "in and of itself" argument, however, does not support cause under 363(k).

21. The "in and of itself" reading of "cause" in Section 363(k) purports to authorize limiting credit-bidding rights even in the absence of lien defects, claim allowance issues, procedural defaults, and inequitable conduct. Instead, its based solely upon the supposed inevitable effect that the exercise of a credit bidding right will have on bidding, in particular where the secured claim at first glance exceeds the cash value of the collateral. But there is no support for finding cause on such grounds.

22. In *Aéropostale*, the bankruptcy court ruled that Sycamore Partners and its affiliates ("Sycamore") could credit bid up to the full amount of its $150 million pre-petition secured loan at a Section 363 Sale of the assets of debtor Aéropostale, Inc. and its affiliates (the "Aéropostale Debtors").

---

[1] Notwithstanding what the Debtors would have this Court believe, the EB-5 victims are not creditors of the Debtor's bankruptcy estate.



23. The Aéropostale Debtors, relying on several of the same bankruptcy court decisions relied upon by the Debtor here, argued that Sycamore should not be permitted to credit bid its loan because (i) permitting Sycamore to credit bid would chill other bidders from participating in the bidding process and (ii) Sycamore's debt should be equitably subordinated because its bad acts had pushed the Aéropostale Debtors into bankruptcy. The court overruled both claims and permitted Sycamore to credit bid up to the full amount of its loan to the Aéropostale Debtors.

24. The Court should likewise reject the Debtor's "in and of itself" argument here. In fact, KK-PB Financial would argue that failing to allow it to credit bid will depress the bidding and the ultimate sales price. As Debtor proudly noted in open court, its stalking horse is a Related fund, a multibillion dollar developer that is certain to have the wherewithal to close. But its offer to purchase the property is for $32 million, ***well below*** the KK-PB Financial's claim and certainly well below the total secured claims in the estate. The involvement of Related alone could discourage other bidders from participating in the auction. By excluding KK-PB Financial's ability to credit bid, the stalking horse would avoid competitive bidding entirely and take the Property for an undervalued price.

25. There is only one party certain to bid against Related and any other bidders – KK-PB Financial. Its involvement as a credit bidder would ensure that a fair price for the property is achieved.

**B.    The Debtor Fails to Provide a Basis for the Equitable Subordination of KK-PB Financial, LLC's Secured Claim**

26. The Debtor also appears to be claiming it will assert some form of equitable subordination claim[2] against KK-PB Financial. As noted, the Debtor must provide objective factual and legal grounds demonstrating that there is a bona fide dispute. But the Debtors tabloid pleadings do not show grounds for a bona fide dispute on equitable subordination.

---

[2] Other than to keep secured creditors in the dark, it is not clear why the Debtor has failed to bring such an equitable subordination claim in the nearly three months this sale case has been pending. KK-PB Financial of course reserves its right to address directly any equitable subordination claim, if and when actually asserted by the Debtor.



27.     Certainly, Bankruptcy Code Section 510(c) gives this Court the power to subordinate all or part of KK-PB Financial's secured claim if Debtor can meet the "principles of equitable subordination:"

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may —
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. 510(c).

28.     Those referenced "equitable subordination principles" permit a bankruptcy court to exercise its powers of equitable subordination only when the following three elements are established: (i) the respondent must have engaged in some type of inequitable conduct; (ii) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (iii) subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *See In re Mobile Steel Company*, 563 F.2d 692, 700 (5th Cir. 1977); *In re Holywell Corporation*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Rich Capitol, LLC*, 436 B.R. 224, 232 (Bankr. S.D. Fla. 2010). The Debtor, in seeking equitable subordination, bears the burden of proof for subordinating a claim since a proof of claim is presumed valid. *In re Aéropostale, Inc.*, 555 B.R. 369, 397-98 (Bankr. S.D.N.Y. 2016).

29.     Further, the Debtor must meet its burden on three additional principles to prove equitable subordination. *In re Aéropostale, Inc.*, 555 B.R. at 397 (*citing In re Mobile Steel Company*, 563 F.2d at 700). First, the Debtor must demonstrate that the inequitable conduct directed against the bankrupt or its creditors may be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim. *In re Mobile Steel Company*, 563 F.2d at 700; *In re Aéropostale, Inc.*, 555 B.R. at 397. Second, the Debtor must demonstrate the extent to which the claim must be subordinated, as "a claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt or its creditors suffered on account of the inequitable conduct." *In re Mobile Steel Company*, 563 F.2d at 700; *In re Aéropostale, Inc.*, 555 B.R. at 397. Third, with respect to the

burden of proof, the Debtor must deliver a real factual basis, because "an objection resting on equitable grounds cannot be merely formal, but rather must contain some substantial factual basis to support its allegation of impropriety.'" *In re Aéropostale, Inc.*, 555 B.R. at 397 (*quoting In re Mobile Steel Company*, 563 F.2d at 700); *In re Rich Capitol, LLC*, 436 B.R. at 232 (since creditor "is neither an insider of the Debtor nor a fiduciary of the Debtor, the Debtor must prove with peculiarity that" a creditor engaged in misconduct to allow equitable subordination).

30. The Debtor must allege more than "labels and conclusions," or simply recite the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court should deny the relief the Debtor seeks if it does not plead enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570; *See also Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1298 (S.D. Fla. 2009)). A claim has facial plausibility when the Debtor pleads factual content that allows the Court to draw the reasonable inference that KK-PB Financial is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that KK-PB Financial has acted unlawfully. *Id*.

31. Considering the above factors, the Court must conclude that the Debtor has simply failed to demonstrate that a bona fide dispute exists as to its equitable subordination claims, much less set forth sufficient facts that would ultimately prove it. Debtor's allegations amount to this: Straub and KK-PB Financial sold the property at 160 Royal Palm Way to Palm House and took back a mortgage. But they failed to record that mortgage for seven months. Those allegations alone are insufficient to support equitable subordination. When considering the first prong, it is clear that the Debtor has failed to allege any inequitable conduct by KK-PB Financial that reaches "the requisite egregious conduct tantamount to fraud, overreaching, or spoliation." *In re Rich Capitol, LLC*, 436 B.R. at 233. The Debtor fails to provide any facts, much less offer any objective proof, to support the allegations of KK-PB Financial's purported misconduct. *In re Aéropostale, Inc.*, 555 B.R. at 398 (proponent of equitable subordination bears the burden of proof regarding the alleged misconduct); *see also In re Rich Capitol, LLC*, 436 B.R. at 234 ("The Debtor offers no contradictory evidence.").

32. Furthermore, the Debtor then makes up this deficit in substantive, relevant facts by dumping a truckload of tabloid fodder that might support newspaper sales in the checkout aisle, but here amount to irrelevant tripe. But the Debtor must take this fling-it-and-see-if-it-sticks approach because no factual evidence of KK-PB Financial's "misdeeds" exists. In fact, after investigations by the FBI, the SEC, and the US Attorney, neither KK-PB Financial nor Straub were even mentioned in the Matthews Federal Indictment or in the SEC's complaint.[3] The EB5 Creditors District Court case has been pending for two years and the KK-PB Financial's foreclosure case has been pending for four years, and not a drop of evidence has been discovered showing any inequitable conduct by KK-PB Financial or Straub.

33. As to the second prong, the Debtor again fails to allege any facts as to how KK-PB Financial's purported conduct caused any injury to the Debtor or its creditors or resulted in an unfair advantage to KK-PB Financial. *In re Aéropostale, Inc.*, 555 B.R. at 398 (stating "claimant's conduct must cause injury 'to the debtor or its creditors or result[] in unfair advantage to claimant.'"). Even assuming the Debtor's allegations are true, which they are not, the Debtor has failed to allege, much less prove, how KK-PB Financial's purported conduct had any adverse impact on the Debtor or its creditors. *In re Rich Capitol, LLC*, 436 B.R. at 232. All that the Debtor has alleged is that Straub and KK-PB Financial sold the 160 Royal Palm Way property, took back a mortgage, then fought for four years to foreclose it.

34. Lastly, the Debtor seeks to equitably subordinate KK-BB's claim to the claims of other creditors as well as non-creditors (the EB-5 victims). Clearly, the Debtor's attempt to seek an equitable subordination of KK-PB Financial's claim is not an attempt to remedy purported misconduct but, is instead, an attempt to punish KK-PB Financial for imaginary wrongdoings. *In re Mobile Steel Company*, 563 F.2d at 701 (stating that the "equitable relief is remedial rather than penal"); *In re Aéropostale, Inc.*, 555 B.R. at 399 (stating "codification of the doctrine in Section 510(c) limits the attention due this third factor" but that the remedy of equitable subordination was not be punitive as opposed to remedial). The Court in *In re Mobile Steel Company* stated "that a claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct." *In re Mobile Steel Company*, 563 F.2d at 701. Here, there was no harm to

---

[3] If even a fraction of the alleged misdeeds the Debtor imputes upon KK-PB Financial were true, KK-PB Financial would have been named in the Matthews Federal Indictment, as well as the SEC complaint.

11



the Debtor or its creditors that needs to be remedied by any of the actions the Debtor alleges of KK-PB Financial.

35. For all the reasons above, the Debtors demand that KK-PB Financial's claim be equitably subordinated to the claims of other creditors must fail.

**C.   Debtor has the burden of demonstrating a Bona fide dispute under 363(f)(4)**

36. Debtor also appears to be asserting a challenge to KK-PB Financial's mortgage pursuant to Section 363(f)(4). Although this case has been pending for over two months, the Debtor has not actually filed an adversary proceeding setting forth the basis for its claim, so KK-PB Financial is not truly on notice nor aware of the details of the threatened claims. Nonetheless, the Debtor cannot sell the Property unless it meets the requirements of Section 363(f).

37. Here, the Debtor has failed to obtain a sales price greater than the secured claims of KK-PB Financial and other secured lenders have against the Property. Moreover, Debtor has never sought, much less obtained, KK-PB Financial's consent, apparently preferring innuendo-laden sniping and the full-on risk of litigation under 363(f)(4). Under that Section, the Debtor carries the burden of proving that KK-PB Financial's secured claim is in "bona fide dispute."

38. While the "bona fide dispute" is not defined in the Bankruptcy Code, there is ample caselaw that has fleshed out what the phrase requires, particularly given its use in both Sections 363(f)(4) and 303(b). *See In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill.1991); *In re Taylor*, 198 B.R. 142, 162 (Bankr.D.S.C.1996); *In re Collins*, 180 B.R. 447, 452 (Bankr.E.D.Va.1995). Courts interpreting Section 363(f)(4) have consistently held that for a bona fide dispute to exist the court must determine "whether there is ***an objective basis*** for either a factual or legal dispute as to the validity of the debt." *In re Octagon Roofing,* 123 B.R. at 590 (emphasis added); *In re Bedford Square Associates*, 247 B.R. 140, 145 (Bankr.E.D.Pa.2000) (although the debtor had not commenced a strong-arm proceeding to avoid a provision from a shopping mall lease, the fact that it could was sufficient to establish a "bona fide dispute"); *In re Olympia Holding Corp.*, 129 B.R. 679, 681 (Bankr.M.D.Fla.1991); Collins, 180 B.R. at 452 (there must be "an objective basis for either a factual or legal dispute as to the validity of the debt"); *Taylor*, 198 B.R. at 162.

12



39. Additionally, courts interpreting the term "bona fide dispute" as it applies to Section 303(b) have consistently held that a "bona fide dispute" exists when "there is an objective basis for either a factual or a legal dispute as to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987). *See also In re Atlas Machine & Iron Works v. Bethlehem Steel*, 986 F.2d 709 (4th Cir.1993) (bona fide dispute exists where there is a meritorious existing conflict as to creditor's right to payment); *Atwood*, 124 B.R. at 407 (bona fide dispute exists if "there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts."); *In re Leach,* 92 B.R. 483, 487 (Bankr.D.Kan.1988) (same); *In re Ramm Industries, Inc.*, 83 B.R. 815, 823 (Bankr.M.D.Fla.1988) (same).

40. At a minimum, the Debtor must articulate in a pleading or in an argument an objective basis sufficient under the facts and circumstances of this case for the Court to determine that a bona fide dispute exists. *In re Robotic Vision Sys., Inc.*, 322 B.R. at 506.

41. This Court has also lent its voice to the interpretation of "bona fide dispute" in its *In re International Oil Trading Company, LLC*, 545 B.R. 336 (2016), decision. There, the Court noted that the petition creditor must present a *prima facie* case to meet its burden of proof that there is no "bona fide dispute" as to its claim. Applying the Court's reasoning here, the Debtor here carries the burden of proof of demonstrating its *prima facie* case disputing KK-PB Financial's secured claim.

42. From the Latin for "first sight," a prima facie case is the establishment of a legally required rebuttable presumption. A *prima facie* case is a cause of action or defense that is sufficiently established by a party's evidence to justify a verdict in his or her favor, provided such evidence is not rebutted by the other party. PRIMA FACIE CASE, Black's Law Dictionary (10th ed. 2014).

43. Here, the Debtor has yet to clearly articulate the grounds upon which it disputes KK-PB Financial's secured claim, but it appears to be asserting in part that KK-PB Financial's mortgage can be avoided as a fraudulent transfer because title to the real property was transferred by assignment of the membership interest in the Debtor, rather than by deed. The Debtor's entire fraudulent transfer claim hangs on this sole element of the transaction. This, it argues, converted the sale of real estate into a Milkenesque LBO, clearly designed to loot the value of 160 Royal Palm and cheat creditors.



44.  But transactions like these – where 'transfer of ownership' is accomplished by conveying a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest itself – have long been recognized as real estate transfers.

45.  For example, Fla. Stat. Section 201.0201, which governs the application of document excise taxes, has long recognized such transactions: "It is the Legislature's intent by this act to impose the documentary stamp tax when the beneficial ownership of real property is transferred to a new owner or owners by the use of techniques that apply the Supreme Court's decision in Crescent in combination with transfers of ownership of, or distributions from, artificial entities."

46.  In fact, the statute covers real estate transferred for consideration to a "purchaser." In *Florida Department of Revenue v. De Maria*, 338 So.2d 838 (Fla.1976), the Florida Supreme Court defined "purchaser" under the statute as "one who obtains or acquires property by paying an equivalent in money or other exchange in value," recognizing that many property transfers do not simply involve the execution of a deed. *Id*. at 840. *And see Kuro, Inc. v. State, Dept. of Revenue,* 713 So.2d 1021 (1998) (transfers of property were found to be "mere book transactions and, otherwise, were not sales to a purchaser, as contemplated by §201.02(1).").

47.  Ultimately, in analyzing any fraudulent transfer claim, the Court must collapse these components that constitute the disputed sale transaction and focus on the context and net effect of the transaction. In equity, "substance will not give way to form, [and] technical considerations will not prevent substantial justice from being done." *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *see also Dean v. Davis,* 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917); *Warren v. Union Bank of Rochester,* 157 N.Y. 259, 270-71, 51 N.E. 1036, 1039 (1898). Thus, an allegedly fraudulent transfer must be evaluated in context. *Pereira v. Checkmate Communications Co. (In re Checkmate Stereo & Elec., Ltd.),* 9 B.R. 585, 612 (Bankr.E.D.N.Y.1981) (quoting *Buffum v. Peter Barceloux Co.,* 289 U.S. 227, 232, 53 S.Ct. 539, 541, 77 L.Ed. 1140 (1933)), *aff'd,* 21 B.R. 402 (E.D.N.Y.1982); *accord Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.),* 124 B.R. 984, 998 (Bankr.S.D.Ohio 1990).

48.  When analyzing the net effect of the transaction here, the Court must inevitably conclude that this transaction was nothing more than the seller-financed sale of real estate, with

14



ownership of the land effectuated by the transfer of a membership interest rather than a deed. That so, the Debtor's fraudulent transfer action must fail.

**D.   Debtor has Failed to Establish A Prima Facie Case to Overcome The Statute of Limitation Barring any Fraudulent Transfer Action**

49.  To establish its *prima facie* case for fraudulent transfer, the Debtor must prove that its claim is timely because this transfer occurred in August 2013 – or at the latest March 2014 when buyer's counsel finally recorded KK-PB Financial's mortgage. In either case, any as yet unfiled complaint to void the mortgage as a fraudulent transfer falls outside even Florida's four-year statute of limitations and is barred.

50.  Debtor attempts to slip its way out of this pickle by manipulating its schedules and fabricating an IRS claim to support its asserting the IRS's 10-year look back under Section 544(b).[4] Nonetheless, Debtor must still demonstrate that there is actually an IRS claim in this case.

51.  Debtor's initial schedules show "$0.00" liability to the IRS, who is listed "For Notice Purposes" [ECF. No. 1]. This would make sense, considering that the Debtor was a non-operating entity and thus would not have earned any income.

52.  But on October 9, 2018, the Debtor amended its schedules to suddenly show an ***allowed, liquidated, and undisputed*** IRS claim of $2,586,813.30 [ECF. No. 107]. This is a shocking change that has the effect of diluting and diminishing claims for all creditors. It must follow, then, that there is a bedrock-solid ground for the Debtor to schedule under oath this tax claim as ***allowed, liquidated, and undisputed.***

53.  Point of fact – there isn't. On October 12, 2018, KK-PB Financial's counsel wrote Debtor's counsel asking for any documents supporting this sudden schedule change. A true and correct copy of Counsel's letter is attached to the Salazar Declaration as Exhibit A.

54.  Debtor's counsel's response: "What documents?" See Response Email attached to the Salazar Declaration as Exhibit B.

55.  This exchange lead to a troubling phone call where Debtor's counsel advised that the Debtor relied upon two documents to establish that the IRS has an ***allowed, liquidated, and undisputed*** claim, to wit, the *Superseding Indictment* against Robert Matthews, Leslie

---

[4] KK-PB Financial maintains that the 10-year lookback period for avoidance action should not apply in this case. See *Wagner v. Ultima Holmes, Inc. (In re Vaughan Co.)*, 498 B.R. 297 (Bankr.D.N.M.2013).

15



Evans, and Maria Matthews, Case No. 3:18-CR-48 (D. Conn), and a *Notice of Federal Tax Lien* against Robert Matthews and property he owns in Nantucket, Massachusetts. True and correct copies of the Superseding Indictment and the Notice of Federal Tax Lien are attached to the Salazar Declaration as Exhibit C and Exhibit D, respectively.

56. How these documents could support the Debtor's listing of a $2,586,813.30 IRS claim as ***allowed, liquidated, and undisputed*** is a mystery. If the Debtor is relying on the IRS statute of limitations to assert a timely, *prima facie* claim for fraudulent transfer, it should be able to show its prima facie case for allowing a $2,586,813.30 IRS claim as liquidated and undisputed, or at all for that matter.

57. Similarly, the Debtor has failed to present any objective evidence or establish a *prima facie* case that the imposition of the mortgage as part of the Seller financing rendered the Debtor insolvent. Given there was nearly a cash component of nearly 20% of the overall purchase price, it would appear that would be impossible for Debtor to present such evidence at all.

**WHEREFORE**, KK-PB Financial, LLC respectfully requests that the Court enter an Order (i) denying the Motion to Limit Credit Bid; and (ii) granting such further relief as the Court deems equitable.

Dated: October 17, 2018              Respectfully submitted,

**SALAZAR LAW**
*Counsel for Secured Creditor, KK-PB Financial, LLC*
2000 Ponce de Leon Boulevard, Penthouse Suite
Coral Gables, Florida  33134
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Luis@Salazar.Law
Email: Aguilar@Salazar.Law

By:  */s/ Luis Salazar*
         Luis Salazar
         Florida Bar No. 147788
         Celi S. Aguilar
         Florida Bar No. 117589



## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties identified on the Service List attached to the original hereof via transmission of Notices of Electronic Filing generated by CM/ECF and/or electronic mail transmission as indicated thereon.

By:    */s/ Luis Salazar*
        Luis Salazar

**SERVICE LIST**

**Electronic Mail Notice List (Via CM/ECF)**

- **Heidi A Feinman**   Heidi.A.Feinman@usdoj.gov
- **Steven C Jones**   steven.jones@wilsonelser.com, anna.nowakowska@wilsonelser.com;vivian.fusco@wilsonelser.com;EService.Miami@wilsonelser.com
- **Philip J Landau**   plandau@slp.law, msmith@slp.law;blee@slp.law;pdorsey@slp.law;dwoodall@slp.law;ematteo@slp.law;ependergraft@slp.law;cdraper@slp.law
- **Bernice C. Lee**   blee@slp.law, dwoodall@slp.law;ematteo@slp.law;cdraper@slp.law
- **Peter J Malecki**   pmalecki@riccalawyers.com, bricca@riccalawyers.com;lkendrick@riccalawyers.com
- **Edward A Marod**   emarod@gunster.com, dpeterson@gunster.com
- **Orfelia M Mayor**   omayor@ombankruptcy.com, legalservices@pbctax.com;carmen@ombankruptcy.com;cmbk@ombankruptcy.com;omayor@ecf.inforuptcy.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Eric S Pendergraft**   ependergraft@slp.law, dwoodall@slp.law;ematteo@slp.law;bshraibergecfmail@gmail.com;cdraper@slp.law
- **Cristopher S Rapp**   csrapp@kelleykronenberg.com, IRGeservice@kelleykronenberg.com
- **Luis Salazar**   Luis@Salazar.Law, Aguilar@Salazar.Law;Cabrera@Salazar.Law;Lee-Sin@Salazar.Law;Osorio@Salazar.Law
- **Jeffrey I. Snyder**   jsnyder@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- **Allen R Tomlinson**   atomlinson@jonesfoster.com, dstewart@jonesfoster.com

**Manual Notice List**

**Gregg H Glickstein**
Gregg H. Glickstein, P.A.
54 SW Boca Raton Blvd.
Boca Raton, FL 33432

**Larry Richey**
Cushman & Wakefield U.S., Inc.
515 E Las Olas Blvd., #900
Fort Lauderdale, FL 33301

**Daniel A. Hershman**
c/o Hershman Law, P.A.
2240 Palm Beach Lakes Blvd., #101
West Palm Beach, FL 33409

**Maria M Yip**
Yip Associates
1001 Yamato Road, #301
Boca Raton, FL 33431

**David R. Miller**
David Miller and Associates, P.A.
319 Clematis Street, Suite 802
West Palm Beach, FL 33401

18

