UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

160 Royal Palm, LLC,    Case No. 18-19441-EPK

    Debtor.    Chapter 11

_____/

**DEBTOR'S *EXPEDITED* MOTION TO COMPEL TESTIMONY**

****Expedited Telephonic Hearing Requested on December 28, 2018****

**An expedited hearing is requested because this motion relates to testimony the Debtor seeks in preparation for an evidentiary hearing that will commence on January 8, 2019. Currently, the Court has a telephonic hearing for scheduled for December 28, 2018 at 1:30 p.m. involving two discovery motions, and the Debtor therefore requests that the Court schedule this motion for telephonic hearing at the same date and time.**

Debtor in Possession, 160 Royal Palm, LLC (the "Debtor"), pursuant to Federal Rules of Civil Procedure 30(d)(1) and 37(a)(3)(B), hereby requests that the Court compel party KK-PB Financial, LLC ("KK-PB") and its principal Glenn Straub ("Mr. Straub") to submit to a continued full-day deposition. In support, the Debtor states as follows:

1. On January 8, 2019, the Court will commence an evidentiary hearing (the "Evidentiary Hearing") on three related matters (the "Contested Matters"): a) the *Debtor's Motion to Limit Credit Bids with Respect to Sale of Substantially All of Its Assets* ("Motion to Limit") [ECF No. 103]; b) *Secured Creditor KK-PB Financial, LLC's Motion to Estimate Claim for Purposes of Credit Bidding Pursuant to 11 U.S.C. §§ 502(c) and 363(k)* [ECF No. 133]; and c) *Secured Creditor KK-PB Financial, LLC's Motion to (I) Modify and Terminate Automatic Stay; or (II) Dismiss Chapter 11 Proceeding* [ECF No. 69]. An important witness for both sides at the Evidentiary Hearing will be Mr. Straub, who is: (a) a key participant in the transactions in dispute

{2234/000/00427382}

in the Contested Matters; (b) the principal of party KK-PB; and (c) the former principal of the Debtor.

2. On November 29, 2018, the Debtor and individuals who have been referred to in this matter as the EB-5 Investors, represented by David George, began taking the joint deposition of KK-PB and Mr. Straub at a location chosen by Mr. Straub. Such deposition commenced at 9:47 a.m., adjourned for several short breaks, adjourned for a forty-minute lunch break, and ended at 5:00 p.m.

3. While such deposition did last for approximately 7 hours, the deposition concluded before the undersigned counsel for the Debtor asked any questions,[1] prompting the attorneys for the Debtor and the EB-5 Investors to state at the end of the deposition that a full-day continued deposition would be necessary, to which counsel for KK-PB and Straub stated that this could be dealt with another time. *See* Transcript Excerpt, Exhibit A, p.243, line 14 – p.244, line 16.

4. Quite frankly, the reason for the need to adjourn the deposition to be continued for another full day was Mr. Straub's pervasive difficulty answering straightforward questions without extended tangents and irrelevant/unprompted detours. *See, e.g.*, Transcript Excerpt, Exhibit B, p.8, line 16 – p.12.

5. Following a meet-and-confer conference call involving the undersigned counsel, counsel for the EB-5 Investors, and counsel for KK-PB and Mr. Straub, Luis Salazar on the afternoon of December 27, 2018 to discuss coordination of the remaining depositions, the undersigned emailed Mr. Salazar to coordinate the scheduling of Mr. Straub's continued

---

[1] Counsel for the EB-5 Investors asked questions on behalf of the EB-5 Investors.

{2234/000/00427382}    2

deposition. Mr. Salazar replied that Mr. Straub should not be required to submit to a continued deposition but would nevertheless agree to a deposition limited to four hours on a Saturday.[2]

6. While the attorneys were communicating back and forth on the afternoon of December 27, 2018, Mr. Salazar's staff produced nearly 4,000 pages of additional documents to the undersigned counsel, which the undersigned will now need to review in preparation for a continued deposition of Glenn Straub and the Evidentiary Hearing.[3]

7. Given Mr. Staub's demonstrated unnecessary lengthening of the prior deposition due to his difficulty answering questions in a straightforward manner, and his position as the principal of KK-PB, the former principal of the Debtor, and the individual with most knowledge of the transaction at the heart of the contested matter, as well as the fact that nearly 4,000 pages of additional documents have now been produced by KK-PB at the eleventh hour, four hours will not be enough time to complete Mr. Straub/KK-PB's continued deposition.

8. Pursuant to Federal Rule of Civil Procedure 30(d)(1), while depositions are generally limited to one seven-hour day per deponent, the Court "must allow additional time . . . if needed to fairly examine the deponent or if the deponent . . . impedes, delays, or frustrates the examination." Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), the Court may compel a party to answer questions during a deposition.

9. In this instance, due to Mr. Straub's impediment of a comprehensive, single-day deposition on November 29, 2018, the fact that the Debtor did not have a chance to ask questions of Mr. Straub during the November 29th deposition, and the aforementioned late-stage document

---

[2] The undersigned counsel is shomer Shabbos, meaning he observes the Jewish Shabbath from sundown on Friday to sundown on Saturday.

[3] Upon a very brief initial review, the undersigned believes that many of these documents are responsive to earlier discovery requests.

{2234/000/00427382}    3

production, cause exists for the Court to permit and compel a second, fully-day deposition and Mr. Straub and KK-PB.

    WHEREFORE, the Debtor respectfully requests that the Court compel a KK-PB Financial, LLC and its principal, Glenn Straub, to sit for a continued, full-day deposition prior to the commencement of the Evidentiary Hearing.

    Respectfully Submitted,

    SHRAIBERG, LANDAU & PAGE, P.A.
    Attorneys for the Debtor
    2385 NW Executive Center Drive, #300
    Boca Raton, Florida 33431
    Telephone: 561-443-0800
    Facsimile: 561-998-0047
    Email: plandau@slp.law
    Email: ericpendergraft@slp.law

    By: /s/ *Philip J. Landau*
        Philip J. Landau
        Florida Bar No. 0504017
        Eric Pendergraft
        Florida Bar No. 91927

## ATTORNEY CERTIFICATIONS

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A). **I FURTHER CERTIFY** that I have, in good faith, conferred with counsel for KK-PB and Mr. Straub in an effort to resolve this controversy without Court action.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on December 27, 2018, via CM/ECF to all parties registered to receive such notice via electronic filing.

*/s/ Philip J. Landau*
Philip J. Landau

Exhibit A

1    A    No, it says, "Brokerage commission."
2    Q    That's the other side.
3    A    Oh, okay, here.  We must've got $9 million,
4  $2 million seller's financing, doc stamps, and 29 --
5  okay.  Some way nine million, somebody expressed nine
6  million in here.  What did we get?  We must've got --
7  well, I guess we got six million, plus we got $2
8  million.  So we must've got $7 million, because there
9  must've been a $2 million deposit, and at the time of
10 closing, we got $6 million, but I can go ahead and
11 make a call.
12   Q    Okay.  That won't be necessary, but thank
13 you.
14        All right.  I don't have any more questions
15 about this document, so if there's going to be an
16 ending spot until we take this up again, this is a
17 proper spot to do it.
18        (Discussion off the record.)
19        MR. GEORGE:  Let's go back on the record.
20        Go ahead.
21        MR. SALAZAR:  No, you guys go ahead.  I'm
22 saying want to cut it off and try to continue another
23 day.
24        MR. GEORGE:  We're going to adjourn the
25 deposition.  I am -- I have a lot more questions to

1  ask.  I'm willing to continue doing this deposition as
2  late as it needs to in order to finish today, so I'm
3  here and can do that.  I understand Mr. Straub has had
4  a long day and doesn't feel well, and that's fine.
5  But it's our intention that this deposition is not
6  over and that we're going to take, at the very least,
7  another day to finish the questioning.
8         MR. LANDAU:  And for the record, the debtor
9  hasn't even had an opportunity to ask any questions.
10        MR. SALAZAR:  I understand.
11        THE WITNESS:  I understand.  I'm in and out
12 of the country a lot.
13        MR. SALAZAR:  It has been a long day, so I
14 think eight hours is long enough for a depo.  We don't
15 necessarily agree that we need to go another couple
16 days, but we can deal with that at another time.
17        MR. GEORGE:  The deposition didn't start
18 until ten o'clock.  We took an hour for lunch.  We
19 haven't been here for eight hours, and as I said at
20 the very beginning of this deposition, with the types
21 of answers that have been given, a lot of time was
22 taken up, and I'm fine with that, but we are going to
23 need to finish the deposition.  There's a lot of
24 substantive topics left to be covered, the least of
25 which is creditors that existed at the time of the

Page 245

1  closing of the transaction.
2          MR. SALAZAR:  Well, listen you spent a lot of
3  time on things that were not relevant.  That's where
4  you should have started, okay, instead of asking him
5  about e-mails and minorities.
6          Yes, he'll read.
7          (Whereupon, the deposition was concluded.)
8
                                _____
9                               GLENN F. STRAUB
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Exhibit B

Page 8

1  beginning, probably -- no, pretty much all the way
2  through now, probably -- I agree.  All the way from
3  the beginning, middle, and now at the end -- now I
4  don't even see the guy hardly.  I think I saw him
5  sitting outside of a deposition here the last couple
6  of days, and that's been about it.  Other than that I
7  don't get to see him.
8        So give me the year, and I'm saying it was --
9  hardly get to know him or hardly know Bob, didn't know
10 who he was before 2000 and, maybe, 9, maybe read
11 something in the paper about a developer, and then
12 maybe after that knew his wife a little bit better.  I
13 think I saw her in more acting careers and stuff.  So
14 at some point 2006 or '7, before that, I don't think I
15 knew Bob.
16    Q   All right.  I'm not sure you understood my
17 question.  So what I'm asking you is simply that when
18 you first met me personally, in the context of this
19 case, you told me at that time that you barely knew
20 Bob Matthews; isn't that true?
21        MR. SALAZAR:  I'm going to objection on the
22 grounds it was asked and answered and as to form of
23 the question.
24        MR. GEORGE:  I'm going to ask you, like we
25 did in the last deposition, to limit your objections

1  to objection to form.
2          MR. SALAZAR:  Okay.  I appreciate you asking
3  that, and I'll make objections --
4          THE WITNESS:  What I had said --
5          MR. SALAZAR:  -- that are appropriate at the
6  time.
7          THE WITNESS:  I think you can tell me certain
8  things, but not as to procedural stuff.  I'm not gonna
9  be familiar with the procedure, even though I've had
10 lots and lots and lots of depositions, nobody has been
11 that specific.  They usually just let me talk, and
12 then they take out of it whatever they take, and
13 that's gonna be a lot more comfortable for me, opposed
14 to trying to figure -- in this situation I don't
15 remember talking to you about that specific of an
16 item.  We're always in a room with multiple different
17 people.  I don't ever remember being in a single
18 capacity with you or you interviewing me or anything
19 else.  So, no, I can't remember you using those exact
20 words.
21         But very easy it could happen that based on
22 the friends that I have, I go out with every night,
23 because I'm single for 11 years and married for close
24 to 40 years before that, so he's not in that category
25 of those types of people that I'm with, usually three

1  or four guys every night, or at least six out of seven
2  nights, and -- so I don't remember a conversation with
3  you that would say that I said that -- whatever you
4  just said there about my knowledge of him or being
5  around him or being a friend with him or anything.
6          No, it's always been a little bit an arms'
7  length situation with me, with him.  And he would come
8  with projects, and I listen to everybody, because I'm
9  a big, big lender of money.  That's how I get myself
10 in trouble all time with lending yp minorities and
11 people, monies.  If they got a good explanation, I'm
12 what's called a collateral lender, and I do a lot of
13 this in life.
14         As I accumulated some money, I started
15 lending money on a collateral basis.  Don't care to
16 much what your color skin is, race, what your assets
17 are, this or that.  I'm usually protected by
18 consultants that I would go to and say, "Where in the
19 hell is this case?"  I think I got one in New Jersey a
20 million and a half square feet for a drug company.
21 Hey, if they want to put up a $50 million building,
22 I'll give them $25 million.  In other words, I do it
23 for big boys, and I take it for -- I got a guy
24 floating around here owes me a thousand bucks, and I
25 see him.  I see him at the bar, and eventually I'll

1   get my money, or I'll use him for something, get my
2   thousand dollars out of him.  So it's -- I'm a
3   collateral lender, and so Bob would have been a type
4   of lender, and I know a little bit about my -- people
5   I lend to, so I would probably know something about
6   Bob.
7   BY MR. GEORGE:
8       Q   Mr. Straub, I'm going to ask you today -- and
9   I know that from reading deposition transcripts and
10  from what you just said that, you know, you're used to
11  people just asking you a question and letting you talk
12  and tell whatever story you want to tell.
13          But what I'm going to ask you today is to
14  please focus on just the questions I ask you, because
15  I have 50 documents to show you, and I have questions
16  that I really want answered, and if you tell me a
17  story with every question I ask you, we're going to be
18  here for two or three days.  So what I would like you
19  to do is really try to focus, and out of respect for
20  you, I really don't want to interrupt you or be rude
21  or anything like that, but it's going to double or
22  triple or quadruple the amount of time we're going to
23  spend here, because with respect to that question, all
24  I really asked you is, isn't is true that you've
25  personally told me you barely know Bob Matthews?

Page 12

1  That's all I asked you.  It's really just a yes or no
2  question.
3       A   No, it's not.  It's not a yes or no to me,
4  the way I run my life.  So it will take as long as it
5  takes, because --
6            MR. SALAZAR:  Agree.
7            THE WITNESS:  -- that's the way I remember
8  things.  I'm 72.  I'm twice your age in a sense, and I
9  I'm trying to tell you, I remember based on putting
10 myself in a predicament by remembering what you're
11 asking me, because obviously you're -- I don't think
12 you try to trick me, but I've been down enough
13 depositions and then on a trial somebody uses some
14 angle against me, and so I want to explain in what
15 structure I'm doing it.
16           So if it takes longer for me to answer a
17 question, get a court order against me and say, "Mr.
18 Straub, you gotta do it," and I'll say, "I'll have to
19 disobey your court order, sir," because that's the wat
20 I am, and that's the way I made a success.  I only
21 have -- I think I got a high school education, maybe,
22 I don't know if I even got one, because that's about
23 as far as I went.  School of hard knocks has been
24 where I been.
25 BY MR. GEORGE: