# UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION

In re:

160 ROYAL PALM, LLC

Debtor.

_____/

Case No. 18-19441-EPK

Chapter 11

U.S. BANKRUPTCY COURT
SO. DISTRICT OF FLORIDA-WPB

FEB 0 4 2019

FILED _____ RECEIVED _____

## EB-5 INVESTORS  BAOPING LIU  OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF

## SETTLEMENT AGREEMENT AND RELATED ASSET PURCHASE AGREEMENT

## WITH KK-PB FINANCIAL, LLC AND GLENN F. STRAUB

EB-5 Investor **BAOPING LIU** hereby objects to the Motion for Approval of Settlement Agreement and Related Asset Purchase Agreement between 160 Royal Palm, LLC (Debtor) and KK-PB Financial, LLC and Glenn F. Straub. ("KK-PB").

**1**

If KK-PB's entire claim is objected to and **this is a chapter 11 case**, KK-PB will not has the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing the claim for voting purposes. (ECF #179 with other 62 EB-5 Investors))

| Claim No. | Name of Claimant | Amount of Claim | Basis for Objection/Recommended Disposition |
|---|---|---|---|
| 70-1 | KK-PB Financial, LLC | $37,337,705.77 | The EB-5 Creditors object to the claim on the ground that it is held by a defendant in Case No. 16-81871-CIV-MARRA pending in the United States District Court, Southern District of Florida (the "Civil Litigation") in which **the EB-5 creditors claim an equitable lien that is senior to the lien of this claim which is filed as a secured claim.** In that case, which has been actively |

| | | | litigated for nearly two years, KK- PB has been accused of withholding the filing of its alleged mortgage as part and parcel of the scheme of the other defendants in that case, including the Debtor here, to defraud the EB-5 Creditors of the millions of dollars that are the subject of their claims in this case (claims 3-1 through 65-1) and in the Civil Litigation. In addition, KK-PB is alleged in that case to have improperly benefited from the scheme by receiving transfers of the money stolen from the EB-5 Creditors as part of the scheme which are challenged there as fraudulent transfers. Upon information and belief, additional claims against KK-PB are about to be added to that case. On all of the grounds alleged in the Civil Litigation and adopting the grounds raised by the Debtor in its objection to this claim, the claims of KK- PB should be denied for fraud and unclean hands, or should be subordinated to the claims of the EB-5 creditors, or should be deferred until the conclusion of the Civil Litigation. |
|---|---|---|---|

2

Pursuant to the Court's *Order Granting Motion to Continue Evidentiary Hearing and Related Deadlines, and Sale Hearing* [ECF No. 389]

CONCISE STATEMENT of the witness Cary Glickstein (the court-appointed receiver for the property)

**(i) the non-existence of any liens or potential liens, any claims or potential claims, or any unpaid lienors; and (ii) the non-existence of any outstanding or potential payment obligations to any party.**

26  Cary Glickstein
Fact Witness and Rule 26(a)(2)(C) Expert Witness
c/o Philip Landau, Esq., 2385 NW Executive Center Drive, Ste. 300, Boca
Raton, Florida, 33431, 561-526-8459

This witness initially was the court-appointed receiver for the property of the

Debtor and later the court-appointed manager of the Debtor. **As a fact witness,**

this witness will testify regarding: (a) his involvement with the Debtor; (b) the
finances of the Debtor; and (c) his involvement with the Town of Palm Beach
regarding construction non-conformities, project approvals, and code
violations.

By May 2015, when he became the receiver, this witness was in his second
term as Mayor of Delray Beach, Florida and a member of The Florida Bar, a
Florida certified general contractor and an experienced corporate manager and
real estate developer. Over the past thirty-three years, this witness has been a
real estate and corporate lawyer for a national law firm, general counsel and
senior operational officer within a large, multi-national development
organization, real estate developer, certified general contractor and an elected
official, who, in those various capacities, has been personally involved in
hundreds of real estate transactions, including significant and complex
acquisitions and dispositions encompassing numerous types of financing
strategies, including acquisition, development and construction loans of
significant amounts, spanning a variety of asset classes, including retail,
office, condominium, single-family and multi- family, industrial and
manufacturing, and hospitality properties. In those capacities, this witness has
underwritten, overseen, approved, entitled, re-zoned, created, helped design,
marketed, participated in, secured financing for, constructed, completed,
closed and sold completed projects and properties, and represented private,
public, institutional, governmental buyers, sellers, syndicators and lenders,
using various ownership entities and financing structures in real estate-related
transactions and development projects throughout the state of Florida and
other states. As a result of such varied experience and his position of
employment at various times, this witness has engendered and maintained
good working relationships with local and state officials having jurisdiction
over development projects.

**As an expert witness**, this witness will utilize such background and expertise to
factually testify and opine as to the following subject matter: (a) the acquisition,
financing and construction feasibility and propriety of the Palm House Hotel project,
including the market rate of interest for commercial real estate financing; and (b) the
transactions that resulted in the sale of the membership interests in the Debtor from
Glenn Straub to Palm House, LLC.

The following is a summary of the facts and opinions as to which this witness is expected to testify to as an expert witness:

By May 2015, the Palm House Hotel Project was the subject of several lawsuits by and among the property ownership interests, construction lien and loan foreclosure actions, as well as intentional tort claims arising from the Project, the construction of which had been abandoned in late 2014. Criminal indictments, prosecutions and plea agreements associated with the Project and certain of its participants were still over three years away at that time.

In connection with his service as receiver and as manager for the Debtor, this witness has reviewed the various documents regarding the transaction involving the sale of Glenn Straub's membership interests in the Debtor to Palm House, LLC and the related loan by KK-PB Financial, LLC. This witness will opine that, had he been approached as a prospective purchaser/assignee for the assignment of Debtor's membership interests as occurred between Glenn Straub and Palm House, LLC, he would have declined for a number of reasons, including, but not limited to, the following which individually and collectively would have led him to conclude that a proposed conveyance solely by the transfer of membership interest, unaccompanied by a deed conveyance would be highly suspect and of questionable legitimacy, in that it was not an arm's length, good faith transfer of assets in exchange for valuable consideration.

a. Having participated in hundreds of real estate transactions of varying significance, simplicity and complexity, this witness will testify that he cannot recall a single real estate acquisition, transfer or disposition of real estate ownership, or financing of real estate collateral, using only a non-assigned, non-pledged, non-hypothecated, or otherwise non- collateralized transfer of membership/share interests between unrelated parties, in lieu of a recorded deed transfer or an instance where all document recordation to reflect the bona fide intentions of the parties and consummate the transfer did not occur concurrent with closing.

b. This witness will testify that as a seasoned real estate professional he is confident he would not participate in a transfer of real estate ownership involving an active construction project where the transfer of member/share interests occurred between unrelated parties, as purportedly occurred between Mr. Straub and the members of Palm House, LLC, (versus a transfer between existing members/shareholders; e.g., death, divorce, incapacity, etc.), without substantially more documentation than what appears to exist in this transaction, such as the requirement for performance and/or completion bonds, corporate and personal indemnification and hold harmless agreements from the transferring entity and member/shareholders, establishment of unencumbered escrowed funds to address any potential claims issues, and/or comprehensive waiver letters from the transferee acknowledging the

inherent and unknown risks, among other documents, none of which exist in the subject transactions.

c. This witness will testify that the following aspects of the Palm House Hotel Project would discourage any prospect for bona fide conventional financing: known and unknown claims and liabilities of the Debtor; extensive, potential fatal liabilities arising from a partially completed construction project with a history of foreclosure (of the same principal purchaser-borrower) and a foreclosure sale; and existing litigation between the Debtor and the Town of Palm Beach, which substantially imperiled the Project and interjected uncertainty into its prospects for obtaining a Certificate of Occupancy along with possible construction lien liability incurred by the Debtor and possible code enforcement violations.

d. Similarly, this witness will testify that, because the Debtor acquired the Property through a judicial sale, marketability of title to the Property would be a paramount concern and consideration, and it is presently unknown if the Debtor ever obtained an owner's or mortgagee's policy of title insurance.

In addition, there appears to be no evidence of any assignment, pledge or hypothecation (at any time or of any kind) by Palm House, LLC in favor of KK-PB, of the transferred LLC member interests (which would be typical in any loan transaction in order to restrict changes in borrower control until the loan obligation is satisfied). Further, this witness will testify that one of the most, if not the most inexplicable fact he has discovered associated with the purported mortgage loan transaction by and between KK-PB and the Debtor is that KK-PB did not record its mortgage for approximately seven months after the mortgage was executed and delivered. This witness will testify that, because most construction liens to relate back to the filing of a notice of commencement which must be filed before or shortly after construction begins, KK-PB's seven-month delay in recording its purported mortgage was effectively a lifetime of delay and suggests there was no regard for the priority of the mortgage lien or its ultimate enforceability.

This witness will testify that, having acted as attorney to many lenders and borrowers, and participated as a borrower, in hundreds of construction-related loan transactions, the urgency for recording a mortgage given in connection with a construction project, for purposes of securing lien priority, is as critical as confirming proper execution and delivery of the loan documents.

This witness will testify regarding the interest rate involved in the loan transaction in question, and will offer opinions as to the market rate of interest for similar transactions to demonstrate that the below-market interest rate charged by KK-PB was indicative of a transaction that was not arms-length.

This witness will testify that, as egregious an error as KK-PB's delay in the recording of its purported mortgage would be in connection with any construction related loan

transaction, it is especially inexplicable to the Project because KK-PB was not simply recording a mortgage for a loan for which construction had not yet commenced. This witness will testify that the Project for which the Debtor gave KK-PB a purported mortgage was an active, on-going construction project which involved a number of construction personnel and subcontractors that provided labor, services and materials for Robert Matthews when the Property was owned by Royal 160, LLC, then for Mr. Straub and the Debtor, and then back to the Debtor and Robert Matthews. Based on his experience, this witness will testify that every loan closing transaction associated with construction involves thorough due diligence by the lender and the title insurer not only as to the borrower and the collateral but also to verify that no construction has commenced in order to limit the risk of liens and claims which might have priority over the line of the mortgage, and that if construction had commenced, any bona fide buyer or lender, as well as any title insurer, would require a termination of a recorded notice of commencement, in addition to affidavits from the general contractor and property owner, in favor of the lender and title insurer, among others, attesting to: (i) the non-existence of any liens or potential liens, any claims or potential claims, or any unpaid lienors; and (ii) the non-existence of any outstanding or potential payment obligations to any party.

**3**

Attorney for the Debtor, Philip J. Landau, Esq. "Restricting KK-PB' s right to credit bid will facilitate the debtor' s ability to sell the hotel through the proposed auction and administer the estate' s assets for the benefit of legitimate creditors through the Chapter 11 case,Permitting KK-PB to credit bid, on the other hand, may derail the auction process and chill bidding."

*4* Mr. Brian Aryai, of ICON Compliance Services, a former U.S. Treasury and Homeland Security Senior Special Agent and certified public accountant among other impressive credentials. Mr. Aryai was one of the main forensic investigators and advisors in cases of national importance, such as the Bernie Madoff case. His expertise in sophisticated and complex fraud investigations has been instrumental in bringing this case to its inevitable conclusion. Mr. Aryai and his team worked tirelessly to provide several agencies a significant 1100-page report of investigation and numerous exhibits, **in which the fraud and conspiracy was uncovered and brought to the point of prosecution.**

**5**
Glenn Straub under criminal investigation, according to the Broward State Attorney's Office.

CASE NO.: 2017CA003219XXXX-MB-AN

https://assets.documentcloud.org/documents/5028827/Straub-Nicodermo.pdf

The two ex-girlfriend of Glenn Straub suing their criminal investigation of alleged mortgage fraud.
*Nicodemo, 33, claims the liens are fraudulent she also says that there was never an agreement or expectation of payment for the work, she believes the services were a gift from a loving boyfriend, but billionaire Straub now wants his money.*

*Ashley Maguire, a former Mrs. Florida beauty pageant winner.Maguire, 33, claimed to have strong ties in Wellington with wealthy equestrians and wealthy business executives with whom she could use her beauty and charms in assisting with selling expensive country club memberships, sponsorships and promotions," the lawsuit said. "Defendant never commenced a single day of work for, or on behalf of, plaintiff."*

Glenn Straub's ex-girlfriend claims his company filed fraudulent liens as revenge

6

This is a classic example of the powerful abusing the judicial process and wasting judicial resources to attempt to create leverage in a demented love triangle.
Glenn Straub is 72 years old and has been single more than 13 years, chasing after beautiful loose women everywhere.   It took a lot of harassment and **was a recidivist of mortgage fraud**. Once the romantic relationship is over, it will swindle each other. He and Mrs. Mia Matthews also had an unusual special relationship. Straub knew that Matthews had no money, and Matthews borrowed $150,000 from Straub. So how could he mortgage the 160 property to Mathew and get the money immediately? Therefore, it can be inferred that the unfinished old property can be regarded as the equity pledge, so there is no title insurance.

7

**ORDER STRIKING CHAPTER 11 PLAN OF LIQUIDATION FILED BY KK-PB FINANCIAL, LLC (ECF #503)**

For the reasons stated on the record at the hearing, the Court ORDERS and ADJUDGES that the *Liquidation Plan of 160 Royal Palm Way, LLC Under Chapter 11 of the Bankruptcy Code Filed by Plan Proponent KK-PB Financial, LLC* [ECF No. 418] filed by KK-PB Financial, LLC is hereby STRICKEN.

Respectfully submitted,

EB-5 Investor and EB-5 investor representatives
503-2-1, 128 Zhongkang Road Shenzhen, China 518048

Telephone: +86-755-82805800

Effie.Liu@huameiim.com

By:

*Baoping   Liu*