**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 18-19441-EPK |
| | ) | |
| 160 Royal Palm, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**OBJECTION OF THE U.S. SECURITIES AND EXCHANGE COMMISSION**
**TO DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT,**
**AND RELATED ASSET PURCHASE AGREEMENT,**
**WITH KK-PB FINANCIAL, LLC AND GLENN F. STRAUB**

The U.S. Securities and Exchange Commission ("**SEC**"), appearing in this case pursuant to 11 U.S.C. §1109(b), objects to the *Debtor's Motion for Approval of Settlement Agreement, and Related Asset Purchase Agreement, With KK-PB Financial, LLC and Glenn F. Straub* (ECF No. 523, the "**Settlement Motion**"). The Settlement Motion, through an extraordinarily broad bar order and requested factual findings that attempt to exculpate various parties of any wrongdoing, directly infringes upon the SEC's police and regulatory powers, and further, bars pending litigation filed by dozens of defrauded investors. For these and the other reasons discussed below, the SEC requests that the Settlement Motion be denied in its entirety.

## INTRODUCTION

1.      A key dispute in this case has been what rights, if any, KK-PB Financial, LLC ("**KK-PB**") has as a secured creditor with respect to the sale of its alleged collateral, a non-operating hotel property in Palm Beach, Florida. The property is the subject of a massive fraud in which more than 88 investors were duped into investing tens of millions of dollars into the hotel's redevelopment, but in fact, most investor funds were diverted for illegal purposes. The

1

Debtor has sought to sell the property to a "stalking horse" purchaser for $32 million in cash, subject to higher offers pursuant to an auction process. KK-PB has alleged that it has the right to credit bid its claim of more than $39 million at the auction. The Debtor opposed KK-PB's credit bid rights, and argued that KK-PB has no valid secured claim based on various legal theories.

2.    In the middle of the trial on these disputes, the Debtor and KK-PB reached a settlement, which is the subject of the pending Settlement Motion. The settlement allows KK-PB to take title to the property for a cash payment of $5,125,000, plus the assumption of a $3,387,855.55 claim that KK-PB represents it has already purchased for an undisclosed amount, and the forgiveness of its other claims in the case. This transaction (valued by the parties at $10,260,862)[1] is not subject to higher and better offers (so there will be no auction), and requires the Debtor to breach the $32 million stalking horse agreement, causing the estate to incur a $350,000 liability. If the settlement is approved, the Debtor estimates that it will have roughly $2 million in cash from the settlement to distribute to unsecured creditors (consisting primarily of defrauded investors) for a dividend of less than four percent (4%) of their claims.[2]

3.    The proposed settlement goes beyond resolving the issues surrounding the Debtor's sale of the hotel property. It also requires this Court to enter a far-reaching bar order. The order would not only enjoin pending litigation against KK-PB filed by dozens of defrauded investors trying to recover their losses, but the parties also intend for the order to bar the SEC, in its capacity as a federal regulator and law enforcement agency, from filing charges against various non-debtors for securities laws violations. And to even further protect these non-debtors,

---

[1] As discussed below, the stated purchase price under the purchase agreement is $10,260,862 but KK-PB will receive a $5,135,862 credit. The $10,360,862 purchase price was allegedly derived from the county tax records, but is significantly lower than the Debtor's $32 million valuation. Nor does the stated purchase price appear to bear any relation to the true economics of the parties' actual bargain.

[2] The Debtor's projections are based on various assumptions, including that the SEC will either withdraw or not liquidate the proof of claim that the SEC filed in this case based on relief sought against the Debtor in a civil enforcement action currently pending in federal district court.

the settlement requires this Court to make detailed exculpatory findings that none of the non-debtor parties engaged in any improper or illegal acts (such as wire fraud, conspiracy, or money laundering) arising from their relationships with certain individuals, four of whom are currently being prosecuted on various federal criminal charges by the U.S. Attorneys' Office in the District of Connecticut.

4.      The proposed bar order, and the requested exculpatory findings, cannot be approved for several reasons.  First, SEC enforcement actions cannot be enjoined because the Court lacks jurisdiction to bar the SEC from enforcing the federal securities laws against non-debtors.  In addition, there is no legal authority in the Bankruptcy Code for the Court to approve a settlement (to which the SEC is not a party) that bars the SEC from bringing enforcement actions against non-debtors.  Such a bar violates the policies of both the bankruptcy and federal securities laws.  But even if the Court had the jurisdiction and authority to enter the proposed bar order, it still cannot be approved because it fails to satisfy the fair and equitable standard applied by courts in this Circuit.

5.      Finally, certain aspects of the transaction appear to be the product of collusion. Specially, the transaction (i) precludes any competing bids, (ii) attempts to shield the purchaser (which the Debtor contends is an "insider"), and several others, from litigation filed by dozens of fraud victims, (iii) attempts to directly undermine would-be federal law enforcement actions through the bar order and unsupported exculpatory findings of no illegal conduct, and (iv) artificially deflates the stated purchase price in an apparent effort to avoid local property taxes. Thus, if the settlement is approved, the Court should not make the requested "good faith" finding under Section 363(m) of the Bankruptcy Code or waive the automatic stay of the Court's order set forth in Bankruptcy Rule 6004(h), to the extent applicable.

## BACKGROUND

### A.      The SEC Enforcement Action

6.      The SEC is the federal agency responsible for regulating the U.S. securities markets and enforcing the federal securities laws.  In that capacity, on August 3, 2018, the SEC filed a civil enforcement action against the Debtor, and others, in the United States District Court for the Southern District of Florida (the "**Enforcement Action**").[3]  The SEC's complaint alleges that defendants Palm House Hotel LLLP, South Atlantic Regional Center, LLC, Joseph J. Walsh Sr. and Robert V. Matthews defrauded at least 88 investors out of more than $43 million.  The defrauded investors were participating in the "EB-5" Immigrant Investor Program administered by the U.S. Citizenship and Immigration Services.  The SEC alleges that the defendants made numerous false and materially misleading statements to investors, including false and misleading statements about the use of investor funds.  The SEC named the Debtor as a relief defendant in the Enforcement Action, alleging that the Debtor improperly received millions of dollars of investor funds that were diverted by the defendants.

### B.      The Bankruptcy Court Dispute Leading to the Settlement

7.      The Debtor filed its Chapter 11 petition in this Court on August 2, 2018.  The Debtor's primary asset is a partially-constructed hotel/condominium (the "**Hotel**") located in Palm Beach, Florida, estimated by the Debtor to be worth at least $32 million. [ECF 107; Sch.

---

[3]  The Enforcement Action is styled *United States Securities and Exchange Commission v. Palm House Hotel LLLP, South Atlantic Regional Center, LLC, Joseph J. Walsh, Sr., and Robert V. Matthews (Defendants); 160 Royal Palm LLC, and United States Regional Economic Development Authority LLC D/B/A EB5 Petition, (Relief Defendants)* Civil Action No. 9:18-cv-81038 (S.D. Fla.).  A copy of the complaint in the Enforcement Action is attached to the SEC's proof of claim filed in this case on October 20, 2018 (Claim No. 71-1).  The Enforcement Action against the Debtor is continuing during this Chapter 11 case as a police and regulatory action by a government agency, pursuant to 11 U.S.C. §362(b)(4). *See Order Granting Debtor's (I) Motion for Determination that the Automatic Stay Does Not Apply to the SEC's Liquidation of its Claim against the Debtor, or in the Alternative, (II) Motion for Relief from the Automatic Stay to Permit the SEC to Liquidate its Claim Against the Debtor in the District Court Enforcement Proceeding* [ECF No. 371].

A/B at Part 9].  KK-PB Financial, LLC ("**KK-PB**") alleges to have a claim of $39,684,844.73[4]

against the Debtor, secured by a first mortgage on the Hotel. [Claim 70]

8.      On September 13, 2018, KK-PB filed a motion for stay relief seeking to exercise

its foreclosure and other rights against the Hotel property. [ECF No. 69, the "**Stay Relief**

**Motion**"].  KK-PB sought stay relief "for cause" pursuant to 11 U.S.C. §362(d)(1).  KK-PB

alleged that "cause" existed to modify the stay because it was not receiving post-petition

payments, construction at the Hotel was not progressing, and KK-PB's interest in the Hotel was

diminishing in value. [Id. at ¶3].  As an alternative to stay relief, KK-PB requested that the Court

dismiss the Debtor's Chapter 11 case.

9.      On October 1, 2018, the Debtor filed a motion to approve the sale of the Hotel to

RREF II Palm House LLC (the "**Stalking Horse Bidder**") for $32 million, subject to higher and

better offers, as well as proposed auction procedures relating to the sale. [ECF No. 92, the "**Sale**

**Motion**"].  KK-PB filed an initial objection to the sale motion in order to preserve its right to

credit bid the value of its secured claim against the Hotel. [ECF No. 101].

10.      On October 5, 2018, the Debtor filed a motion to limit credit bids with respect to

its proposed sale of the Hotel [ECF No. 103, the "**Motion to Limit Credit Bid**"].  In its motion,

the Debtor contends that KK-PB should not be allowed to credit bid because KK-PB does not

have an allowed claim and KK-PB's claim is subject to significant dispute.  The Debtor's

challenges to KK-PB's claim include: (i) KK-PB's note and mortgage are invalid; (ii) the

transfers of the note and mortgage to KK-PB are avoidable fraudulent transfers; (iii) KK-PB's

claim should be equitably subordinated; and (iv) KK-PB's claim should be re-characterized from

---

[4]  The principal amount of the claim is $26,963,384.50.  The claim asserts that an additional $12,721,460 is owed for
interest, taxes, reimbursement of broker's commissions and legal fees and costs.

debt to equity. [Id. at pp. 26-27].  On October 17, 2018, KK-PB filed its objection to the Debtor's Motion to Limit Credit Bid. [ECF No. 164].

11.     On October 10, 2018, KK-PB filed a motion, pursuant to 11 U.S.C. §502(c), to estimate its claim for purposes of credit bidding on the Hotel. [ECF No. 133, the "**Credit Bid Motion**"].  KK-PB requested that the amount of its allowed secured claim, and right to credit bid, be established through the claim estimation procedure of Section 502(c).  On October 17, 2018, the Debtor filed its objection to KK-PB's Credit Bid Motion. [ECF No. 163].

12.     On October 22, 2018, the Debtor filed an objection to KK-PB's proof of claim. [ECF No. 178].  In support of its objection, the Debtor raised the same issues and arguments in support of its Motion to Limit Credit Bid.  The Debtor sought to have KK-PB's claim disallowed in its entirety.

13.     The Court initially set the Motion for Stay Relief, Motion to Limit Credit Bid and Credit Bid Motion for evidentiary hearing on December 6, 2018.  The hearing was postponed to allow the parties to complete discovery.  On January 7, 2019, the Court entered an Order rescheduling the evidentiary hearing on five separate dates between January 8 and January 29, 2019.  During the litigation, the Debtor, KK-PB and Glenn F. Straub (KK-PB's manager ("**Straub**")) entered into a settlement agreement dated January 18, 2019.

14.     On January 25, 2019, the Debtor filed the Settlement Motion to seek approval of the settlement.[5]  On that same day, the Debtor also filed an *ex parte* motion [ECF No. 524] to shorten notice for the hearing on the Settlement Motion, such that it could be heard no later than February 8, 2019.  On January 29, 2019, the Court granted the Debtor's request to shorten notice, and scheduled the Settlement Motion for hearing on February 8, 2019.

---

[5] Because of a lapse in federal appropriations, most of the SEC staff was furloughed during the period from December 27, 2018 through January 25, 2019.

## THE PROPOSED SETTLEMENT AND BAR ORDER

15.     The parties to the settlement are the Debtor, KK-PB and Straub.  The agreement requires the Debtor to sell the Hotel property to KK-PB for a purchase price of $10,260,862 in a private sale, not subject to higher and better offers.  The Debtor is providing KK-PB with a cash credit of $5,135,862, such that the cash due at closing will be $5,125,000.  Although not reflected as part of the purchase price, the agreement provides that KK-PB will also withdraw, or deem satisfied, its claims in the case.  The Debtor contends that KK-PB is an "insider" for purposes of the transaction.

16.     The settlement is conditioned upon the Court entering a bar order.  The proposed bar order would apply to the EB5 Investors "and any other creditor or potential creditors." [ECF No. 523 at p.26].  The bar order would protect an extensive list of people and entities, including KK-PB, Straub, The Galle Law Group, P.A., Craig T. Galle, Sal V. Spano, New Haven Contracting South, Inc., Nicholas J. Laudano "and related parties and professionals." [Id.].  The bar order would apply to litigation with respect to "any and all transactions arising from or relating to Debtor 160 Royal Palm, LLC and the [Hotel] property…, the investments made by the EB5 Investors in Palm House Hotel, LLLP, and any and all other matters that were directly, indirectly or tangentially related to the Property, the Debtor and/or the Estate." [Id.].

17.     The settlement is also conditioned upon the Court making findings that various parties have not engaged in any improper or unlawful (including criminal) acts relating to various matters.  Specifically, the agreement requires the Court to find that KK-PB, Straub, The Galle Law Group, P.A., Craig T. Galle and Sal V. Spano did not engage in fraud, wire fraud, bank fraud, illegal monetary transactions, collusion, aiding or abetting, conspiracy "or other improper or unlawful acts" involving their relationships with various parties. [ECF No. 523 at p.

27].  Those parties include the Debtor, Robert V. Matthews, Maria "Mia" Matthews, Joseph

Walsh, Palm House Hotel, LLLP, South Atlantic Regional Center, LLC, Leslie Evans, Leslie

Robert Evans & Associates, P.A., New Haven, Nicholas J. Laudano, NJL Development Group,

Inc., and Palm House, LLC.  Four of these individuals (Robert Matthews, Maria Matthews,

Leslie Evans are Nicholas Laudano) have been charged on multiple criminal counts in the U.S.

District Court for the District of Connecticut.[6]  As noted above, the SEC has also charged Palm

House Hotel LLLP, South Atlantic Regional Center, LLC, Joseph J. Walsh Sr. and Robert V.

Matthews with securities fraud.

## LEGAL DISCUSSION

### A.    The Court Lacks Jurisdiction To Bar The SEC From Bringing Police And Regulatory Actions For Violations Of Federal Securities Laws.

18.    Without citing any supporting authority, the settling parties seek extraordinary

relief: a settlement bar order that enjoins the SEC – a federal regulator and law enforcement

agency – from bringing police and regulatory actions against non-debtors.[7]  As an initial matter,

such a bar order is impermissible because this Court's bankruptcy jurisdiction does not extend to

actions by the SEC to enforce violations of the federal securities laws.

19.    The Congressional grant of bankruptcy jurisdiction to the district courts is set

forth in 28 U.S.C. §1334(b).  The bankruptcy court's jurisdiction is derivative of the district

court's jurisdiction under Section 1334(b), by way of the district court's standing order of

---

[6]  Robert Matthews, Maria Matthews and Leslie Evans were charged in various counts for wire fraud, bank fraud, conspiracy, illegal monetary transactions, tax evasion and aiding and abetting in a Superseding Indictment [ECF No. 39] filed in the case *United States of America v. Robert V. Matthews, et. al.*, Criminal Case No. 3:18-CR-48 (VAB) (D. Conn.).  Nicholas Laudano has been charged with conspiracy to commit bank fraud and illegal monetary transactions in a Criminal Information [ECF No. 1] filed in the case *United States of America v. Nicholas Laudano*, Criminal Case No. 3:18-CR-47-VAB (D. Conn.).  Laudano has pled guilty to both charges pursuant to a plea agreement filed in the criminal case [ECF No. 5].
[7]  The settlement bar order does not expressly state that it is intended to apply to federal law enforcement agencies. Instead, it applies generally to all creditors and potential creditors of the Debtor.  Counsel for the SEC contacted counsel for the settling parties requesting language to clarify that the bar order would not apply to the SEC, but to date, the parties have not agreed.

reference, authorized under 28 U.S.C. §157(a). <u>See</u> SDFL Local Rule 87.2 and Order of Reference dated March 27, 2012.

20.    In general, Section 1334(b) empowers the Court with jurisdiction over proceedings that "arise in" or "arise under" the Bankruptcy Code, or that "relate to" a case under the Bankruptcy Code. 28 U.S.C. §1334(b).  In most bar order cases, courts find that the barred action "relates to" the bankruptcy case because of the "conceivable effect" that the underlying settlement, which is conditioned upon the bar order, has on the bankruptcy estate. <u>See</u> <u>e.g.,</u> <u>Matter of Munford, Inc.</u>, 97 F.3d 449, 454 (11th Cir. 1996).

21.    The unique nature of SEC enforcement actions, however, precludes this Court from exercising bankruptcy jurisdiction over those matters.  By its terms, Section 1334(b) applies only to matters for which Congress did not otherwise confer exclusive jurisdiction to the federal district courts:

> Except as provided in subsection (e)(2), ***and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts***, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. §1334(b) (emphasis added).  The highlighted phrase states Congress's intent to exclude from the grant of bankruptcy jurisdiction those matters that Congress has elsewhere granted exclusive jurisdiction to the district courts.  As explained by one court interpreting this provision:

> Congress negated its grants of exclusive jurisdiction to courts other than the district courts.  It did not negate any Act which confers exclusive jurisdiction in a specific district court.

<u>See</u> <u>In the Matter of Gates Engineering Co., Inc.</u>, 104 B.R. 655, 656 (Bankr. D. Del. 1989).

22.     Congress has passed an Act that confers exclusive jurisdiction of SEC

enforcement actions in the district courts.  Section 27(a) of the Securities Exchange Act of 1934

(15 U.S.C. §78a, et seq., the "**Exchange Act**") provides in pertinent part:

> ***The district courts*** of the United States and the United States
> courts of any Territory or other place subject to the jurisdiction of
> the United States ***shall have exclusive jurisdiction*** of violations of
> this chapter or the rules and regulations thereunder, and of all suits
> in equity and actions at law brought to enforce any liability or duty
> created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa(a) (emphasis added).  Because the bankruptcy court's jurisdiction is derivative

only of the district court's bankruptcy jurisdiction under Section 1334(b), and not the district

court's exclusive jurisdiction under Section 27(a) of the Exchange Act, it follows that this Court

lacks jurisdiction to bar SEC actions that are governed by Section 27(a).  For the same reason,

the Court lacks jurisdiction to enter the requested exculpatory findings to the extent that those

findings would be binding upon, or otherwise impair any claim or right by, the SEC in any

enforcement proceedings.

**B.      The Bankruptcy Code Does Not Authorize The Court To Bar The
         SEC From Bringing Police And Regulatory Actions For Violations Of
         Federal Securities Laws.**

23.     In addition to the jurisdictional flaw, the bar order cannot be approved because the

Bankruptcy Code does not authorize the Court to bar the SEC from bringing actions for

violations of federal securities laws.  The Eleventh Circuit Court of Appeals has held that barring

claims between non-debtors is authorized, when appropriate, under the bankruptcy court's

general equitable powers codified in Section 105(a) of the Bankruptcy Code. See Munford, 97

F.3d at 455; accord In re Seaside Eng. & Surv., Inc., 780 F.3d 1070, 1077-78 (11th Cir. 2015)

(reaffirming Munford's holding that Section 105(a) authorizes bar orders in bankruptcy cases).

Because Section 105(a) confers only general equitable powers to the Court, it is settled that

10

Section 105(a) "cannot be used to authorize relief inconsistent with a more specific provision of the Bankruptcy Code." In re Transit Group, Inc., 286 B.R. 811, 816 (Bankr. M.D. Fla. 2002).

24.     The Debtor's reliance on Section 105(a), to authorize a bar order prohibiting the SEC from bringing actions for violations of securities laws, is inconsistent with other provisions of the Bankruptcy Code.  Congress has expressed a clear intent that SEC enforcement actions, and liabilities for securities law violations, should not be affected by a bankruptcy filing.  Section 362(b)(4) of the Bankruptcy Code allows the SEC to file, or continue, any police and regulatory action against a debtor, notwithstanding the automatic stay. 11 U.S.C. §362(b)(4).  This stay exception includes all types of relief against the debtor, including the appointment of a receiver,[8] obtaining (but not enforcing against estate property) a judgment for disgorgement and civil penalties,[9] and obtaining an asset freeze order.[10]  Section 362(b)(4) applies even if the debtor is named by the SEC as a relief defendant and is not alleged to have violated securities laws. In re Wyly, 808 F.3d 623 (2nd Cir. 2015).  Congress has also made clear that debts for violations of federal securities laws should not be discharged in most individual bankruptcy cases. 11 U.S.C. §523(a)(19).  In a Chapter 11 reorganization, corporate debtors may not discharge fraud-based debts owed to domestic governmental units, including the SEC. 11 U.S.C. §1141(d)(6).

25.     Collectively, these Code provisions reveal a clear Congressional mandate that a bankruptcy filing does not impede the SEC from enforcing the federal securities laws.  A debtor's bankruptcy filing will not stay an SEC enforcement case, or discharge a debt owed to the SEC for securities violations.  As such, a bankruptcy court is not authorized by Section

---

[8]   S.E.C. v. First Financial Group of Texas, 645 F.2d 429 (5th Cir. 1981) (binding in the Eleventh Circuit).
[9]   S.E.C. v. Towers Financial Corporation, 205 B.R. 27 (S.D.N.Y. 1997); In re Bilzerian, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992).
[10]   In re Wyly, 808 F.3d 623 (2nd Cir. 2015).

105(a) to grant to a non-debtor the protections that Congress has expressly denied to the debtor, who has subjected all of its assets to the jurisdiction of the bankruptcy court.

26.     In addition, allowing the Debtor (a private citizen) to negotiate a settlement that bars the SEC from bringing police and regulatory actions also violates fundamental principles of the federal securities laws.  SEC enforcement actions are not for the SEC's own pecuniary gain; rather, they serve a public purpose by remedying and deterring securities laws violations:

> When the SEC sues to enforce the securities laws, it is vindicating public rights and furthering public interests, and therefore is acting in the United States' sovereign capacity.  This is so even when the SEC seeks disgorgement as a remedy of the violation and even though the disgorged proceeds may be used to compensate the defendant's victims.

SEC v. Diversified Corporate Consulting Group, 378 F.3d 1219, 1224 (11th Cir. 2004); accord SEC v. Rind, 991 F.2d 1486, 1491 (9th Cir. 1993) ("Congress entrusted the [SEC] with the vital mission of ensuring the honesty and fairness of the capital markets.").  The equitable powers under Section 105(a) are not broad enough to approve a bar order that directly undermines the governmental regulatory scheme of the federal securities laws. Cf. In re Carlson, 126 F.3d 915, 920 (7th Cir. 1997) (Section 105(a) cannot be used to circumvent the requirements of the Internal Revenue Code).

### C.     The Proposed Bar Order Is Not Fair And Equitable.

27.     In arguing in favor of the bar order, the Debtor relies upon the Eleventh Circuit's analysis in Munford. [Settlement Motion at pp. 13-16].  The facts in Munford are distinguishable from this case because the bar order in Munford was limited to contribution and indemnification claims between co-defendants, each of which were parties to a pending adversary proceeding.

12

Munford, 97 F.3d at 452.[11]  The proposed bar order here is much broader than contribution and indemnification claims between co-defendants.  Instead, it covers all types of claims that could be asserted by all of the Debtor's creditors and potential creditors.

28.     Further, the Munford court found that the bar order was appropriate because the settling defendant (to be protected by the bar order) had no other assets, and the barred non-settling defendant received the benefit of a dollar-for-dollar offset against any liability it may have to the plaintiff. Id. at 456.  Here, however, there has been no showing about the protected parties' other assets or their inability to pay judgments if the barred claims were successful.  Further, the overall benefit to the barred parties from the settlement (i.e., proceeds sufficient to make less than a 4% distribution) is minimal.  Under facts like these, courts in this Circuit have rejected proposed bar orders as not being fair and equitable. See In re GunnAllen Financial, Inc., 443 B.R. 908 (Bankr. M.D. Fla. 2011) (denying approval of bar order that would enjoin securities claimants from pursuing litigation against non-debtors when the settlement, which would bar their claims, generated proceeds sufficient to pay less than 25% of the claimants' claims); In re Covington Properties, Inc., 255 B.R. 77 (Bankr. N.D. Fla. 2000) (refusing to approve settlement between trustee and defendant where settling parties sought to bar claims by all creditors against settling defendant, the barred creditors were not parties to the adversary proceeding, the barred creditors would see minimal benefit from the settlement and there had been no showing that the assets of the settling defendant would be depleted by the settlement such that no further recovery by the creditors was likely).[12]

---

[11] The non-bankruptcy case upon which the Munford court relied in its analysis also involved a bar order that was limited to claims between settling and non-settling co-defendants in a pending litigation matter. In re Oil & Gas Litigation, 967 F.2d 489 (11th Cir. 1992).

[12]  The Debtor also cites In re Rothstein Rosenfeldt Adler, PA, 2010 WL 3743885 (Sept. 22, 2010, Bankr. S.D. Fla.) for support.  That case is distinguishable because the trustee testified that the settlement payment being made by the party protected by the bar order exceeded 90% of the party's total assets. Id. at p. 6.

29.     The bar order also is not fair and equitable because it seeks to protect individuals and entities, plus unidentified "related parties and professionals," who are not contributing any consideration to the settlement.  The disputes to be settled only involve the Debtor and KK-PB, and it appears that only KK-PB is providing any consideration under the settlement.  Without the released parties contributing significant consideration, a bar order of this breadth is not fair and equitable. See GunnAllen, 443 B.R. at 916 ("The absence of the payment of any meaningful consideration by the released parties has been a key consideration by courts in considering whether to approve bar orders.") (citations omitted).

D.      **The Debtor Has Not Established That The Settlement Is Reasonable.**

30.     Turning to the merits of the settlement itself, the Debtor contends that the proposed settlement is reasonable because it satisfies the four Justice Oaks factors applicable to bankruptcy settlements in the Eleventh Circuit.  The Debtor may be able to establish that the complexity of the litigation, and the probably of success in the litigation, support a settlement. But depending upon the amount and nature of objections to the settlement that are filed, it remains to be seen whether the settlement is supported by the paramount interest of creditors taking into account a "proper deference to their reasonable views." In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990).  Furthermore, the Debtor's assertions about encountering difficulties in collection are misguided, since the dispute against KK-PB only relates to the allowance of its purportedly secured claim.  There would be no money judgment to collect.

31.     Even if the Debtor can establish that the uncertainty and complexity of its litigation against KK-PB warrants a reasonable settlement, it is highly questionable whether *this* settlement is, in fact, reasonable.  The litigation to be settled involves the extent to which KK-PB should be allowed to credit bid at an auction of the Hotel property.  But the settlement does not

14

result in KK-PB having a secured claim in a reduced, compromised amount, to bid at the auction.

Rather, it allows KK-PB to take the property without there being any auction at all (and in doing

so, triggering a $350,000 liability to the estate for terminating the stalking horse agreement).

The settlement chills all bidding for the Debtor's most valuable asset because it will no longer be

marketed to the public or subjected to higher and better offers.  That, coupled with the

overreaching bar order and requirement for exculpatory findings, along with the fictitious

purchase price designed to evade property taxes,[13] renders the proposed settlement unreasonable.

### E.    If The Settlement Is Approved, Section 363(m) Should Not Apply.

32.    Section 363(m) of the Bankruptcy Code provides that the reversal or modification

on appeal, of an order authorizing a sale under Section 363(b) or (c), does not affect the validity

of the sale to an entity that purchased the property in good faith. 11 U.S.C. §363(m).  Although

"good faith" is not defined, it has been stated that "[m]isconduct that would destroy a purchaser's

'good faith' status at the sale proceedings include fraud, collusion between the purchaser and

other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

Matter of Perona Bros., Inc., 186 B.R. 833 (D. N.J. 1995).

33.    To the extent that the Court's order would constitute a sale order under Section

363(b), a finding of good faith under Section 363(m) should not be made in this case.  First, the

proposed sale is to an entity that the Debtor contends is an "insider."  Second, the sale involves

the Debtor's most valuable asset, and will take place outside of a Chapter 11 plan and without

any opportunity for higher and better offers.  Third, the purchase price (as stated in the

agreement) is more than $21 million lower than the stalking horse agreement filed by the Debtor

---

[13]  It is undisputed by the Debtor that the property is worth in excess of $32 million.  Yet, the stated purchase price in the KK-PB purchase agreement is only $10,260,862. [ECF No. 523, p. 36].  Further, KK-PB's actual paid amount for the property will be only $5,125,000 because the agreement requires that KK-PB receive, without any explanation, a credit of $5,135,862.  KK-PB is agreeing to waive its claims as part of the settlement, but the value of those waivers is not included as part of the purchase price.

earlier in this case.  Fourth, the purchase price appears to have been intentionally reduced to help the purchaser (should this Court bless it) evade local property taxes.  Fifth, the purchaser (by requiring the bar order) is attempting to unilaterally eliminate non-bankruptcy litigation filed by dozens of fraud victims, and to impede any law enforcement actions by state or federal authorities.  And finally, the purchaser requires that this relief be granted on shortened notice at an expedited hearing, minimizing the amount of time that affected parties have to protect their interests.[14]

      **F.**    **Cause Does Not Exist Under Rule 6004(h) To Waive The Stay Of Any Order Approving The Sale.**

      34.      The SEC requests that any order approving the Settlement Motion, along with any corresponding bar order, be stayed to the extent it falls within the scope of Rule 6004(h).  Based on the facts, as described above, cause does not exist for a waiver of the 14-day stay in Rule 6004(h).

      WHEREFORE, the U.S. Securities and Exchange Commission requests the entry of an Order denying the Settlement Motion, and providing such other relief as the Court deems appropriate.

      Dated:  February 6, 2019

---

[14]  In the alternative, if a good faith finding under Section 363(m) is warranted, the SEC requests that such a finding not apply to any reversal or modification on appeal of the bar order or any exculpatory findings regarding illegal or improper acts.  Section 363(m) only applies to a sale order under Sections 363(b) or (c).  The authority for a bar order and the proposed exculpatory findings is Section 105(a) and Rule 9019(a).  Thus, any reversal or modification of an order premised on Section 105(a) and Rule 9019(a) should not receive protection under Section 363(m).

Respectfully Submitted,

 /s/ *David W. Baddley*
David W. Baddley
Florida Bar No. 0148393
Illinois ARDC 6282466
Telephone:  (404) 842-7625
E-mail:  baddleyd@sec.gov

**Counsel for**:

**U. S. SECURITIES AND EXCHANGE COMMISSION**
Atlanta Regional Office
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA  30326-1382

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Objection was furnished to all ECF Participants via Notice of Electronic Filing and additionally emailed on February 6, 2019 to the following parties:

Counsel to Debtor
Philip J. Landau
Eric Pendergraft
**Shraiberg, Landau & Page, P.A.**
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
plandau@slp.law
ependergraft@slp.law

Counsel to KK-PB Financial, LLC
Luis Salazar
Celi S. Aguilar
**Salazar Law**
2000 Ponce de Leon Blvd., PH Suite
Coral Gables, Florida 33134
luis@salazar.law
aguilar@salazar.law

   /s/ *David W. Baddley*

17