UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| 160 ROYAL PALM, LLC, | : | CASE NO. 18-19441-EPK |
| | : | |
| Debtor | : | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR
APPROVAL OF SETTLEMENT AGREEMENT, AND RELATED ASSET PURCHASE
AGREEMENT, WITH KK-PB FINANCIAL, LLC AND GLENN F. STRAUB**

The United States Trustee for Region 21, in furtherance of the administrative responsibilities

imposed pursuant to 28 U.S.C. §586(a) objects to the *Debtor's Motion for Approval of Settlement*

*Agreement, and Related Asset Purchase Agreement, with KK-PB Financial, LLC and Glenn F.*

*Straub* (the "Motion," ECF #523). The proposed Settlement Agreement contains broad non-debtor

releases and a bar order that are neither equitable nor necessary. Furthermore, the terms violate

public policy.  The terms of the settlement fail to satisfy the *Justice Oaks Factors* and the Motion

should be denied.    In support, the U.S. Trustee states the following:

## BACKGROUND

1.  Debtor filed a voluntary petition for Chapter 11 relief on August 2, 2018.

2.  The Debtor's schedules as amended reflect the following:

    a.  Real property, described as an abandoned construction project consisting of a
        partially constructed hotel/ condominium with an purchase offer value of $32
        million[1];
    b.  Personal property consisting of cash totaling $319,759, office equipment valued
        at $0; framed photos valued at $3,000 and project development approvals
        obtained by the Town of Palm Beach, valued at $25,000 for a total of $347,759[2].
    c.  Secured claims against the property totaling $80,479,788.  Of this amount the
        Debtor lists the following claims as disputed:
        i.  KK-PB Financial, LLC                    $37,337,705.77

---

[1] See ECF #107, Schedule A/B, question 55.
[2] See ECF #107, pages 3-7.

        ii.  New Haven Contracting South, Inc.     $3,387,855.00
       iii.  Palm House Hotel, LLLP           $39,500,00.00[3]

  d.  No Priority unsecured claims[4].
  e.  Nonpriority unsecured claims totaling $86,363,457.63. Of this amount the Debtor lists the following claims as disputed:

|  |  |  |
|---|---|---|
| i. | Connect Auto, Inc. | unknown |
| ii. | David Gorman | unknown |
| iii. | Palm House Hotel, LLLP | $39,500,000.00 |
| iv. | Paul Cleary d/b/a Cleary Plumbing | $82,374.75 |
| v. | Town of Palm Beach | $2,796,000.00 |
| vi. | Wallace Surveying Corp. | $27,013.17 |
| vii. | Xpert Elevator Services | $556,305.50[5] |

3.  The bar date for creditors to file proofs of claim expired October 31, 2018.  The bar date for governmental agencies to file proofs of claim expired January 29, 2019.  To date, 90 creditors filed proofs of claim totaling $121,067,136 in claims, secured, priority and general unsecured.

4.  A review of the claims register reflects that the following disputed claims did NOT file a proof of claim:

    a.  Palm House Hotel, LLLP
    b.  Connect Auto, Inc.
    c.  David Gorman
    d.  Paul Cleary d/b/a Clearly Plumbing
    e.  Wallace Surveying Corp.

5.  The Debtor's most recent monthly operating report reflects cash at the end of December totaling $265,741.91[6].

6.  Pursuant to the Case Management Summary, the Debtor's goal for filing Chapter 11 was to liquidate the Debtor's assets, investigate and pursue causes of actions and ensure "*bona fide creditors*" recover proceeds[7].

---

[3] See ECF #107, pages 8-12.
[4] See ECF #107, pages 14-16.
[5] See ECF #107, pages 16-31.
[6] See ECF #522.
[7] See ECF #14.

7.    The Debtor has no intention of reorganizing and all actions in this Chapter 11 case related to liquidating assets and paying funds to creditors.

8.    Pre-petition, more than 60 foreign nationals ("EB-5 Investors") filed suit in federal court against the Debtor, KK-PB and others[8].  The complaint alleges that the parties used the Debtor's property to perpetrate common law and securities fraud against the EB-5 Investors.

9.    Post-petition, on November 26, 2018, 13 other and additional foreign nationals filed a complaint in the Fifteenth Judicial Circuit Court in Palm Beach against parties including KK-PB and others also alleging the parties used the property to perpetrate common law and securities fraud against the parties[9].

10. In pursuit of liquidating assets, on October 1, 2018, the Debtor filed its' *Motion for Entry of an Order (I) approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially all of its Assets, (II) Approving Form and Manner of Notice of Sale, (III) Scheduling an Auction and Sale Hearing and (IV) Approving the Sale of Assets Free and Clear of Liens, Claims and Encumbrances* ("Sale Motion," ECF #92).  The Sale Motion disclosed that the Debtor entered into an Asset Purchase Agreement with RREF II Palm House LLC as a stalking horse bidder with a purchase price of $32 million subject to higher and better offers.

11. On October 5, 2018, KK-PB Financial filed its objections[10].

12. The Sale Motion and KK-PB's objections resulted in flurry of motions, objections and discovery disputes, all related to the amount of KK-PB's claim, whether KK-PB can

---

[8] Case No 16-cv-81871-KAM filed in the United States District Court for the Southern District of Florida.
[9] Case No. 2018-CA-01481 filed in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.
[10] See ECF #101.

credit bid in the auction and the amount of such credit bid.

13. Additionally, KK-PB filed objections to claims of the EB-5 investors and the EB-5 investors filed objections to the claim of KK-PB.

14. On December 14, 2018, the Court set the evidentiary hearings on the matters for several days, including January 8, 2019, January 11, 2019 and January 18, 2019[11].

15. On January 7, 2019 the Court entered an order with additional dates for the evidentiary hearing[12].

16. On January 16, 2019, the Court entered a further order allotting the time for parties during the remaining evidentiary hearing dates[13].

17. On January 18, 2019, KK-PB and the Debtor announced to the Court that the parties had reached a proposed settlement.  As a result, the Court cancelled the evidentiary hearings scheduled for January 28 and 29, 2019[14].

18. On January 25, 2019, the Debtor filed the Motion.

19. At a hearing held on January 31, 2019, the Court continued auction to March 8, 2019 and provided further dates to continue the evidentiary hearing should the Court deny approval of the Motion.

20.  On page 9 of 79 of the Motion, the Debtor provides a general summary of the terms of the proposed settlement between the Debtor and KK-PB and Mr. Straub. The terms as stated by the Debtor generally provide that KK-PB will pay the Debtor $5,125,000 in return for a private sale of the property.  The Debtor will use the funds to pay administrative expenses, the Break-Up Fee to the Stalking Horse bidder, the broker

---

[11] See ECF #389.
[12] See ECF #480.
[13] See ECF #511.
[14] See ECF #518

compensation, $250,000 to the Town of Palm Beach and other creditors (secured and unsecured). KK-PB will receive the property free and clear of liens, claims and encumbrances with certain protections.  KK-PB will pay the real property taxes for 2018 and 2019.  KK-PB will withdraw the proof of claim filed by New Haven Contracting South.  The Parties will exchange mutual releases.  Finally, the Court will enter a bar order enjoining and releasing claims by the EB-5 Investors and other parties against KK-PB, Mr. Straub, Mr. Galle and his law firm, Mr. Spano, New Haven Contracting South, Mr. Laudano and related parties and professional with respect to any transactions related directly and/or tangentially to the property, the Debtor and the Debtor's estate.

21. Rather than specifically include a sufficient summary regarding the bar language, the Summary merely refers parties to Section 9 of the Settlement Agreement.

22. The specific language contained in Section 8 states:

> 8.    **Bar Order**. KK-PB's and Straub's entry into this Settlement Agreement is expressly conditioned upon the entry of a Bar Order, which the Parties acknowledge is an integral part of the settlement. In the event the Bankruptcy Court does not enter the Bar Order as set forth below, or if the Bankruptcy Court enters the Bar Order but appellate review is sought and on such review the Bar Order is vacated, modified or reversed, then this Settlement Agreement shall be terminated, unless this provision is waived, in writing, by KK.-PB and Straub. On or before January 25, 2019, the Debtor shall seek entry of a Bar Order by the Bankruptcy Court barring the EB5 Investors and any other creditor or potential creditors from commencing or proceeding with any litigation against the KK.-PB, Straub, The Galle Law Group, P.A., Craig T. Galle, Sal V. Spano, New Haven Contracting South, Inc., Nicholas J. Laudano, and related parties and professionals, with respect to any and all transactions arising from or relating to Debtor 160 Royal Palm, LLC and the real property located at 160 Royal Palm Way in Palm Beach, Florida, the investments made by the EB5 Investors in Palm House Hotel, LLLP, and any and all other matters that were directly, indirectly or tangentially related to "the Property, the Debtor and/or the Estate.[15]

---

[15] See ECF #523, page 26 0f 79.

23.  The specific language contained in Section 9 states:

> 9.     **<u>Good Faith/No Improper or Unlawful Acts</u>**. KK.-PB's and Straub's entry into this Settlement Agreement is expressly conditioned upon the entry of the Settlement Order by the Bankruptcy Court and the Parties agree and acknowledge that the Bankruptcy Court's issuance of the Settlement Order approving the Agreement and containing certain provisions set forth in this paragraph is a material inducement to entering into and of the Settlement Agreement: (i) approving this Settlement Agreement, (ii) finding that the Parties have entered into the Settlement Agreement and the proposed settlement and releases contemplated thereby in good faith; (iii) finding that proper, sufficient, and adequate notice of the Motion seeking approval of the Settlement Agreement and hearing thereon has been provided in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and no other or further notice is necessary; (iv) finding that KK-PB and Straub or their assigns are good faith purchasers under Section 363(m) of the Bankruptcy Code and as such, KK-PB and Straub or their assigns are entitled to all of the protections afforded under Section 363(m); (v) finding that the Settlement Agreement and the terms and conditions of proposed Settlement set forth herein, including; without limitation, the agreements, stipulations, and releases set forth herein, are approved and authorized in all respects in accordance with Sections 105 and 363(b), (k), and (m) of the  Bankruptcy  Code, Rules 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure,  and other applicable law and authority cited in the Motion seeking approval of  this  Settlement Agreement; (vi) finding that there was no fraud, wire fraud, bank fraud, illegal monetary transactions, collusion, aiding or abetting, conspiracy or other improper or unlawful acts on the part of KK-PB, Straub, The Galle Law Group, P.A, Craig T. Galle or Sal V. Spano with, involving or related to the Debtor, Robert V. Matthews, Maria "Mia" Matthews, Joseph Walsh, Palm House Hotel, LLLP, South Atlantic Regional Center, LLC, Leslie Evans, Leslie Robert Evans & Associates, P.A., New Haven, Nicholas J. Laudano, NJL Development Group Inc. or Palm House, LLC, which the Parties acknowledge is an integral part of the settlement. In the event the Bankruptcy Court does not enter the Settlement Order as set forth above, or if the Bankruptcy Court enters the Settlement Order but appellate review is sought and on such review the Settlement Order is vacated, modified or reversed, then this Settlement Agreement shall be terminated, unless this provision is waived, in writing, by KK-PB and Straub. On or before January 25, 2019, the Debtor shall seek entry of a Settlement Order by the Bankruptcy Court containing the findings and rulings set forth above in this paragraph.[16]

24.  On March 12, 2018, in United States District Court, District of Connecticut the United States of America filed an Information against Nicholas Laudano on one count of

---

[16] See ECF #523, page 26 of 79.

Conspiracy to Commit Bank Fraud and one count of Illegal Monetary Transactions[17]. The facts stated in the Information relate to the diversion of EB-5 investor funds earmarked for the Palm House Hotel, the subject property of this bankruptcy case.  On the same date, the United States and Mr. Laudano filed a Plea Agreement. The Court has set sentencing for June 20, 2019.

25. On March 14, 2018, a grand jury in New Haven, Connecticut returned a 22 count indictment against Robert Matthews and Leslie Evans.  On August 22, 2018 a grand jury returned a Superseding Indictment adding additional counts against Mr. Matthews and adding Maria Matthews as an indicted party[18].  The indictment alleges wire fraud, bank fraud, and tax fraud and relate to funds and property of individuals in foreign countries being diverted from their intended use. Some of these funds were to be used in the investment and construction of the Palm House Hotel.

26. A review of the *Certificate of Service* reflecting upon whom the Motion was served indicates that the United States Attorney's Office was not served with a copy of the Motion[19].  A review of the *Certificate of Service* reflecting upon whom the *Order Granting Ex Parte Motion to Shorten Notice for Motion for Approval of Settlement Agreement and Related Asset Purchase Agreement* indicates that the United States Attorney's Office was not served with a copy of the order[20].

27. The Settlement Agreement is not signed by the EB-5 investors.

---

[17] See, U.S. vs Laudano, 18-cr-47, filed in the United States District Court, District of Connecticut.
[18] See, US vs. Matthews, et al, Case No. 18-CR-48, filed in United States District Court, District of Connecticut.
[19] See, ECF #525.
[20] See, ECF #532.

## OBJECTIONS

28. While the Court must determine if the proposed settlement is fair and reasonable, the 11th Circuit recognizes that "bar orders ought to not be issued lightly and should be reserved for those unusual cases in which such an order is necessary for the success of the reorganization…" *In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070, 1078 (11th Cir. 2015).

29. Moreover as the Eleventh Circuit noted in *In re Munford, Inc*., 97 F.3d 449 (11th Cir. 1996), "when determining whether to enter a bar order against nonsettling defendants, the court must make a reasoned determination that the bar order is fair and equitable." *Id.*, at 455.

30. As stated in *In re Jiangbo Pharmaceuticals, Inc.*, 520 B.R. 316, (Bankr. S.D.Fla. 2014), "[b]ar orders that are incorporated into settlement agreements are considered to be fair and equitable if the bar order fulfills the long-standing public policy of encouraging pretrial settlements, the settlement satisfies the requirements for the approval of settlements under *Justice Oaks,* the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in *Munford,* including: (i) the non-debtor third-party claims which will be barred are interrelated with the estate's claims; (ii) the parties opposed to the bar order have not presented sufficient evidence of the strength and existence of their claims against the beneficiary of the bar order; (iii) the estate's litigation against the beneficiary of the bar order is complex; and (iv) the continued litigation by the estate and other parties against the beneficiary of the bar order will deplete resources." 520 B.R. at 323.

### *The Proposed Settlement fails to meet the Justice Oaks Factors*

31. The United States Trustee submits that the proposed settlement does not sufficiently meet the four part standard as set forth in *In re Justice Oaks II, Ltd*., 898 F.2d 1544 (11th Cir. 1990). These facters are: (i) the probability of success in the litigation between the settling parties; (ii) the difficulties, if any, to be encountered in collection; (iii) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and, (iv) the paramount interests of the creditors and a proper deference to their reasonable views. *Id*., at 1549.

32. At a minimum, United States Trustee argues that the proposed settlement fails to meet the third and fourth factors above and the Motion should be denied.

33. While the Motion indicates that the Settlement Agreement provides a distribution to creditors as a result of the $5,125,000 payment, the Motion fails to provide any information regarding the amount of distribution the creditors will actually receive. The Motion does not disclose the current administrative claims of the estate or the additional administrative claims that will be incurred in recovering additional assets, reviewing claims or completing the plan process. It is possible that, after payment of various administrative and other claims, unsecured creditors will receive very little recovery.

34. The Motion fails to offer sufficient support that the Settlement Agreement would result in less expense, party inconvenience, and delay than the continued litigation and potential auction.  The Bankruptcy Court has already completed several days of trial and has reserved future trial dates should it not approve the Motion. The parties have already conducted significant discovery and prepared for trial and have cleared

their calendars for the final three hearing dates and a potential auction. Simply stated, there is nominal additional expense to the estate and no inconvenience or delay to the parties were the Motion denied.

35.  Additionally, while the Court has only heard about the Stalking Horse Bidder who has offered $32 million, the Debtor has not presented to the Court any information regarding whether there may be other parties interested in purchasing the property. Due to the location of the property and its potential future source of significant revenue, the possibility exists that an auction could bring robust bidding.  In an auction, creditors may receive well in excess of the potential 1% or 2% return under the scenario contemplated in the Motion. Because there are alternatives that could provide significant recovery to creditors in excess of the amount proposed by the settlement, the Motion does not establish that the settlement is in the best interest of the creditors.

36. The United States Trustee submits that the Debtor and KK-PB fail to establish non-debtor releases and bar order are fair and necessary. Because the Debtor is liquidating, there is no need to protect the parties receiving protection under the Settlement Agreement from future litigation. Certainly, were this case converted to a Chapter 7, none of these parties would receive such protection.  Therefore, allowing these releases and bar order is not essential to any reorganization of this entity.

### The Settlement Agreement Fails to Satisfy In re Munford

37. The proposed bar order fails to satisfy all four factors set forth in *Munford*.  First, the parties to benefit from the bar language are not creditors of this estate. In fact, the estate, creditors and non-creditors may have significant claims against these parties.  Second,

the third party claims include governmental entities that, if allowed to proceed on their claims, would have no effect on the administration of the bankruptcy estate and will not deplete estate funds. Granting the broad releases does not benefit the administration of this bankruptcy case.

38. The United States Trustee submits that the proposed releases and bar order overly broad and appear to preclude claims of third parties in violation of public policy. The extraordinary breadth of the releases and bar order may be beyond the scope of this Court's authority.

39. If approved, the Court will be granting releases and bar orders in favor of parties who made no contribution or paid no consideration for these extraordinary benefits. The releases would be against other non-debtor third parties, possibly including governmental agencies, who have no notice of this bankruptcy case or the proposed terms of settlement.

40. The Motion fails to provide any argument to support a finding that various parties did not commit "fraud, wire fraud, bank fraud, illegal monetary transactions, collusion, aiding or abetting, conspiracy or other improper or unlawful acts." The United States Trustee notes that several of the parties have already been criminally indicted for and/or entered a plea agreement to these exact acts.

41. Neither the Debtor nor KK-PB have disclosed all known or potential causes of action nor have they noticed all potential parties whose claims would be barred by the proposed settlement. Barring criminal investigation and/or prosecution is not within the bankruptcy court's jurisdiction. The jurisdiction granted to bankruptcy courts under 28 U.S.C. §§ 1334 and 157, does not extend to the determination of criminal matters.

While the bankruptcy court has authority to hear and determine cases filed under title 11 and all core proceedings arising under title 11, the parties cannot, in good faith, argue that the granting of such broad and extraordinary relief to parties who are not creditors of this estate or the debtor and against unknown parties is a core issue to this case. *U.S. vs. Vandrovec*, 76 B.R. 725 (D. N.D. 1987). "The purpose of bankruptcy is to protect those in financial, not moral, difficulty." *Barnette v. Evans* 673 F.2d 1250 (11th Cir. 1982).

42. The proposed injunctions, third party releases and bar order and other findings being sought are not included within a plan and do not provide parties appropriate opportunity to accept or reject the clauses through a determination of the reorganization process. Outside of the plan process, the approval of these clauses is not fair and equitable when parties being barred have no notice or ability to object.

43. Finally, the Debtor admits it is liquidating its assets. As such the Debtor is not entitled to a discharge of its debts under 11 U.S.C. §1141(d).  Were this case converted to a Chapter 7, no party would receive a release. Therefore, the language contained in paragraphs 8 and 9 of the Settlement Agreement including the broad releases of claims of non-debtor entities is not appropriate.

**CONCLUSION**

44.  Because the factors adopted by the Eleventh Circuit Court of Appeals are not satisfied, the Motion should be denied.

45. The United States Trustee preserves his right to raise additional objections to the Motion.

WHEREFORE, the United States Trustee objects to the Motion and respectfully requests to be heard at a hearing set on this matter and that the Court grant such other and further relief as the Court deems just.

DANIEL M. MCDERMOTT
United States Trustee

_____/S/_____
HEIDI A. EINMAN
Trial Attorney
Florida Bar No. 0879460

Office of the U.S. Trustee
51 S.W. First Avenue
Room 1204
Miami, FL 33130
(305) 536-7285

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT, AND RELATED ASSET PURCHASE AGREEMENT, WITH KK-PB FINANCIAL, LLC AND GLENN F. STRAUB** was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system and via U.S. Mail, First Class to the following parties.

| | |
|---|---|
| David W Baddley | baddleyd@sec.gov |
| Steven C Jones | steven.jones@wilsonelser.com, anna.nowakowska@wilsonelser.com; vivian.fusco@wilsonelser.com; EService.Miami@wilsonelser.com |
| Philip J Landau | plandau@slp.law, msmith@slp.law; blee@slp.law; pdorsey@slp.law; dwoodall@slp.law; ematteo@slp.law; ependergraft@slp.law; cdraper@slp.law |
| Bernice C. Lee | blee@slp.law, dwoodall@slp.law; ematteo@slp.law; cdraper@slp.law |
| Peter J Malecki | pmalecki@riccalawyers.com, bricca@riccalawyers.com; lkendrick@riccalawyers.com |
| Edward A Marod | emarod@gunster.com, dpeterson@gunster.com |
| Orfelia M Mayor | omayor@ombankruptcy.com, legalservices@pbctax.com; carmen@ombankruptcy.com; cmbk@ombankruptcy.com; omayor@ecf.inforuptcy.com |
| Eric S Pendergraft | ependergraft@slp.law, dwoodall@slp.law; ematteo@slp.law; bshraibergecfmail@gmail.com; cdraper@slp.law |
| Cristopher S Rapp | rapp@alumni.princeton.edu, IRGeservice@kelleykronenberg.com |
| Luis Salazar | Luis@Salazar.Law, Ceide@Salazar.Law; Aguilar@Salazar.Law; Cabrera@Salazar.Law; Lee-Sin@Salazar.Law; Osorio@Salazar.Law |
| Jeffrey I. Snyder | jsnyder@bilzin.com, eservice@bilzin.com; lflores@bilzin.com |
| Allen R Tomlinson | atomlinson@jonesfoster.com, mbest@jonesfoster.com |
| Harry Winderman | harry4334@hotmail.com, lynoramae@gmail.com, lm@whcfla.com, filings@whcfla.com |

Jeffrey S. Brown
Cushman & Wakefield of Georgia, Inc.
1180 Peachtree Street, Suite 3100
Atlanta, GA 30309

Robert V. Cornish
Wilson, Elser, Moskowitz, Edelman et al.
700 11th Street, NW, #400
Washington, DC 20001

David J. George
c/o George Gesten McDonald, PLLC
9897 Lake Worth Rd, #302
Lake Worth, FL 33467

Gregg H Glickstein
Gregg H. Glickstein, P.A.
54 SW Boca Raton Blvd
Boca Raton, FL 33432

Daniel A. Hershman
c/o Hershman Law PA
2240 Palm Beach Lakes Blvd, Ste 101
West Palm Beach, FL 33409

Christopher Kammerer
1601 Forum Place Suite 500
West Palm Beach, FL 33401

Robert Matthews
101 Casa Bendita
Palm Beach, FL 33480

David R. Miller
David Miller and Associates, P.A.
319 Clematis St., Suite 802
West Palm Beach, FL 33401

Devin S. Radkay
c/o Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL 33401

Larry Richey
Cushman & Wakefield U.S., Inc.
515 E Las Olas Blvd, #900
Fort Lauderdale, FL 33301

Maria M Yip
Yip Associates
2 S Biscayne Blvd #2690
Miami, FL 33131

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and the I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090-1(A).

DONE this the 6th of February, 2019.

/s _____
HEIDI A. FEINMAN
Trial Attorney