

**ORDERED in the Southern District of Florida on March 14, 2019.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                          CASE NO. 18-19441-EPK

**160 ROYAL PALM, LLC,**                        CHAPTER 11

      Debtor.

_____/

### ORDER DENYING MOTION TO STAY ORDERS PENDING APPEAL

      In the *KK-PB Financial, LLC's Emergency Motion to Stay Orders Pending Appeal* [ECF No. 646] (the "Motion"), KK-PB Financial, LLC ("KK-PB") seeks a stay pending appeal of two orders of this Court relating to the sale of substantially all assets of 160 Royal Palm, LLC, the debtor in this case. Those orders are the order approving amended sale procedures, entered at ECF number 619 (the "Procedures Order"), and the order approving the sale of substantially all of the debtor's assets, entered at ECF number 651 (the "Sale Order"). The debtor filed a response to the Motion at ECF number 666 and those unsecured creditors referred to as the "Initial EB-5 Claimants" filed a response at ECF number 665. In light of the detailed and thorough arguments presented in the Motion and the responses, and taking into account the timing concerns in this case, the Court determined that a hearing on the Motion would not be helpful.

## SUMMARY OF RULING

KK-PB has only a negligible chance of success on its appeals from the Procedures Order and the Sale Order. The Court's findings of fact in those orders are based on the un-rebutted evidence admitted at the sale hearing. On appeal, the Court's findings of fact are subject to reversal only if they are clearly erroneous. In light of the evidence admitted at the sale hearing, there is no basis to challenge the Court's findings of fact under this standard. In addition, KK-PB has no cognizable economic interest in the appeals and thus no standing. KK-PB's only claim currently subject to allowance in this case, claim number 72-1, is a secured claim that will attach to the proceeds of sale and, if finally allowed, will be paid in full. KK-PB has no right to argue that it or its affiliate is entitled to have an opportunity to present a bid. As an aggrieved bidder, KK-PB has no standing to challenge on appeal the sale contemplated in the Procedures Order and the Sale Order.

KK-PB will suffer no harm if the Court denies its request for a stay. The potential harm to KK-PB must be measured in relation to its status as a party in interest in this case, meaning its right to pursue claims against the bankruptcy estate. KK-PB's only allowable claim in this case is a fully secured claim that is entirely protected under the Sale Order. KK-PB's sole argument that it will be harmed by the failure to grant a stay is that KK-PB will be denied the possibility of buying the debtor's hotel property. Not only is KK-PB not the proposed bidder for that property, which KK-PB identified as Kids2, LLC, but even if KK-PB was the proposed bidder its inability to buy the debtor's hotel property is not the kind of harm contemplated under the law.

If the stay is granted, there is a significant risk of harm to the bankruptcy estate and to unsecured creditors in particular. If a stay is entered and remains in place for more than 60 days, the purchaser approved by the Court may terminate its agreement with the debtor. In spite of the District Court's efficiency in bankruptcy appeals, based on this Court's experience it is unlikely that the appeals would be resolved in 60 days. Thus, there is a substantial chance that the estate and creditors will lose

the benefit of the highly beneficial contract approved in the Sale Order.  Based on the evidence admitted at the sale hearing, there is no guaranty that Kids2, LLC will actually purchase the hotel property.  Delaying the sale to permit Kids2, LLC to bid represents a material risk to the bankruptcy estate and creditors.  In addition, if an affiliate of KK-PB purchases the hotel property, this will result in failure of a settlement between the debtor and the Town of Palm Beach previously approved by the Court.  The Town will then have substantial claims against the estate including potential administrative expense claims that have priority over unsecured claims, thus reducing the distribution to unsecured creditors.  The Court notes that the majority of the unsecured creditors in this case participated in the sale hearing and supported entry of the Sale Order.

Finally, the public interest supports denial of the requested stay.  The debtor has marketed its property extensively, in a manner designed to obtain the best possible bids from parties willing and able to consummate a transaction, consistent with the debtor's fiduciary duty to the estate and creditors.  The debtor's sale process resulted in a highly favorable contract that the Court approved in the Sale Order.  To grant a stay to KK-PB under the circumstances of this case would only encourage parties to interfere with bankruptcy sales in a manner that would discourage participation by *bona fide* bidders.

For these reasons, as more fully addressed below, the Motion will be denied.

## ROLE OF KK-PB RELEVANT TO THE PRESENT MOTION

In the Motion, KK-PB seeks relief "as creditor in the above-captioned chapter 11 case" referring to two separate claims.

KK-PB is a creditor in this case as a result of its acquisition of a claim originally filed by New Haven Contracting South, Inc., which is in the claims register at 72-1.  Claim 72-1 was filed as a fully secured claim in the amount of $3,387,855.55.  It is allegedly secured by a lien on the debtor's hotel property as a result of the recording of a default judgment.  No portion of claim 72-1 is presented as

an unsecured claim. Although there are no objections on file as of this date, the Court has not set an objection deadline and so claim 72-1 remains subject to objection. The debtor has stated that it intends to object to claim 72-1. In the meantime, claim 72-1 is deemed an allowed secured claim. 11 U.S.C. § 502(a). As the Court addressed more fully in the Sale Order, KK-PB had standing to interpose an objection to the sale as a result of this claim. However, as the Court ruled in the Sale Order, in its written objection KK-PB raised no objection that it might have presented as a result of holding claim 72-1, and so any such objection was waived.

KK-PB also filed its own proof of claim, which is in the claims register at 70-3. Claim 70-3 was filed as a fully secured claim in the amount of $39,684,844.73. It was allegedly secured by a lien on the debtor's hotel property as a result of a mortgage. By order entered at ECF number 603, the Court ruled that KK-PB's alleged mortgage is subject to avoidance, the note it secures is subject to avoidance, and the Court disallowed claim 70-3. The Court assumes familiarity with its order at ECF number 603. That order is not stayed. While KK-PB filed an appeal from the order disallowing claim 70-3, KK-PB did not seek a stay of that order. Thus, the Court's order disallowing claim 70-3 remains effective. For purposes of the Procedures Order, the Sale Order, and the present Motion, KK-PB holds no claim as a result of claim 70-3. As the Court addressed more fully in the Sale Order, KK-PB had no standing to interpose an objection to the sale as a result of its mortgage claim.

In the Motion, KK-PB alleges that it is a potential bidder for the debtor's hotel and related assets. Although the Court itself in its findings of fact in the Sale Order referred to KK-PB as the potential bidder, this is not accurate. KK-PB is owned and controlled by Mr. Glenn Straub. As made clear at the sale hearing, discussed more fully below, counsel for KK-PB argued that the actual bidder was an entity named Kids2, LLC, apparently also owned and controlled by Mr. Straub. Thus, KK-PB is arguing that another entity, Kids2, LLC, should be permitted to bid for the debtor's assets. But whether the potential bidder is KK-PB itself or its affiliate, Kids2, LLC, makes no difference. As the

Court discusses below, in general, an aggrieved bidder at a bankruptcy sale has no standing to object to the sale or appeal the sale order. This is important for purposes of the present Motion as the only harm KK-PB alleges it will suffer as a result of failure to grant the stay is harm to it as a potential bidder for the debtor's assets.

## APPLICABLE LAW

Unless stayed, orders and judgments entered by this Court are immediately enforceable upon entry. Even if an appeal is filed, absent a stay the prevailing party or parties may treat the order or judgment as final. Under the Bankruptcy Rules[1], certain orders and judgments are automatically stayed for a specified period. Execution on judgments is stayed for 14 days under Bankruptcy Rule 7062, and certain other orders are stayed for 14 days under Bankruptcy Rules 3020, 4001, 6004, and 6006. In each such case, the period of stay may be reduced or eliminated by the Court, either under the specific rule providing for the stay or under Bankruptcy Rule 9006(c). If there is no such automatic period of stay applicable to an order or judgment, or if such period has been eliminated or has expired, the non-prevailing party or parties must seek a stay in order to stop enforcement of, or action consistent with, the order or judgment.

The Sale Order is an order authorizing the sale of assets of the estate. Such orders ordinarily are stayed for 14 days under Bankruptcy Rule 6004(h). However, in the Sale Order the Court determined that there was cause for elimination of the stay provided in Bankruptcy Rule 6004(h) and so the Sale Order became effective immediately upon entry.

Bankruptcy Rule 7062, incorporating Civil Rule 62, is not applicable in this contested matter. When applicable, a party seeking a stay of judgment under Bankruptcy Rule 7062, incorporating Civil Rule 62, may obtain a stay upon posting of a bond or other security in an amount, and with conditions,

---

[1] In this order, the term "Bankruptcy Rule" refers to the applicable Federal Rule of Bankruptcy Procedure, and the term "Civil Rule" refers to the applicable Federal Rule of Civil Procedure.

satisfactory to the Court.  In other words, in most cases where Bankruptcy Rule 7062 applies the appealing party has a right to entry of a stay upon posting the bond required by the Court.

In this matter, Bankruptcy Rule 8007 alone governs the potential issuance of a stay pending appeal.  Unlike Bankruptcy Rule 7062 and Civil Rule 62, Bankruptcy Rule 8007 does not provide for the granting of a stay as of right upon the filing of a sufficient supersedeas bond.  Collier on Bankruptcy ¶ 8007.06 (Richard Levin & Henry J. Sommer eds., 16th ed.).  The determination of whether to grant a stay pending appeal is left to the discretion of this Court.  If a stay pending appeal is warranted, the Court may condition the stay on the posting of "a bond or other security."  Fed. R. Bankr. P. 8007(a)(1)(B) (as amended effective December 1, 2018).  The bond or security is intended to protect the opposing party or parties, which may include the bankruptcy estate generally, against loss that may be sustained as a result of a failed appeal.  Because there is no stay pending appeal as of right under Bankruptcy Rule 8007, the Court must first determine whether a stay is warranted and, if so, determine whether a bond or other security will be required as a condition of the stay.

Ordinarily, the appellant must first seek a stay from this Court and, if unsatisfied, may seek relief from the District Court in which its appeal is lodged.  Fed. R. Bankr. P. 8007.  "Failure to first seek a stay or other relief in the bankruptcy court will ordinarily deprive the district court or appellate panel (or the court of appeals in the case of a direct appeal) of jurisdiction over a motion seeking a stay."  Collier on Bankruptcy ¶ 8007.05 (citations omitted); *Rodriguez v. ALS Commer. Funding, LLC*, No. 19-20452, 2019 U.S. Dist. LEXIS 29651 (S.D. Fla. Feb. 21, 2019); *In re Rivera*, No. 15-04402, 2015 U.S. Dist. LEXIS 151860 (N.D. Cal. Nov. 9, 2015).

"A stay pending appeal is an 'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *Woide v. Fannie Mae (In re Woide)*, 730 F. App'x 731,

737 (11th Cir. 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) and citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (involving an appeal from a bankruptcy court order approving a § 363 sale).

## FACTS

The sale motion that resulted in the Procedures Order and the Sale Order is a continuation of a sale process started by the debtor on October 1, 2018, when the debtor filed its initial motion for approval of a sale procedure. ECF No. 92. The Court held a hearing on that initial sale motion on October 10, 2018, and entered a sale procedures order on October 16, 2018. ECF No. 154.

The initial sale procedures order set a bid deadline of November 9, 2018, an auction date of November 16, 2018, and a hearing to consider approval of the sale immediately following the auction on the same date. Consistent with regular practice in this district and elsewhere, where an auction procedure is employed, the initial sale procedures motion set up a two-step process. The first step was for the Court to approve the procedure for obtaining qualified bids and the auction itself, and the second step would be for the Court to consider the proposed sale to the winning bidder selected by the debtor. As will be clear from the ensuing discussion, the motion for sale that led to the Procedures Order and the Sale Order was essentially the completion of the original sale procedure approved by the Court more than four months ago.

The initial sale procedure was interrupted by litigation between the debtor and the EB-5 investors[2] on one side and KK-PB on the other regarding, among other things, whether KK-PB would be permitted to credit bid in connection with the sale of the hotel property. The debtor's motion to deny KK-PB any right to credit bid and KK-PB'S mirror image motion to estimate its claim were

---

[2] The EB-5 investors are dozens of foreign investors who claim that tens of millions of dollars they sent to the United States were funneled through the hotel project and allegedly fraudulently misappropriated by persons then in control of the debtor and those in conspiracy with them.

initially set for hearing on October 24, 2018.  Those matters were then set for evidentiary hearing on December 6, 2018.

In the meantime, the debtor negotiated an important settlement with the Town of Palm Beach. ECF No. 204 (order approving settlement entered November 6, 2018).  The debtor and the Town settled two claims of the Town, exceeding $4 million in the aggregate, in exchange for payment of $250,000.00, among other things.  Part of the Town's claim is potentially a secured claim.  It is important to note that, absent consummation of the settlement, the Town's claims continue to grow post-petition and amounts accruing after the petition date likely are administrative expenses with priority over unsecured claims.  The settlement agreement with the Town requires that the settlement amount be paid and certain other actions be undertaken by a qualified buyer, a defined term in the settlement agreement.  The original payment deadline was December 31, 2018, and the qualified buyer could obtain an extension of development approvals through April 30, 2019 provided that not later than that date the qualified buyer pursued with the Town various requirements in connection with the continued development of the hotel project, spelled out in detail in the settlement agreement.  The settlement with the Town is significant for this bankruptcy estate because it does two things.  It greatly reduces claims against the estate and stops the continued accrual of claims that may be administrative expenses.  And it gives the debtor the opportunity to sell the hotel property to a party acceptable to the Town along with the ability of the purchaser, if a qualified buyer, to preserve important development rights.

Because of the litigation with KK-PB over its claim and its claimed right to credit bid, the debtor requested and the Court approved a revised bid procedures order.  ECF No. 273.  The Court set a new bid deadline of December 7, 2018, and set the auction and sale hearing on December 14, 2018.

In light of the extensive discovery undertaken by the debtor, the EB-5 investors, and KK-PB in connection with KK-PB's alleged mortgage claim, the debtor asked to move the evidentiary hearing on the motion to estimate KK-PB's claim and the debtor's motion to deny KK-PB any credit bid right, and also to further delay the previously approved sale procedures.  By order entered on December 14, 2018, the evidentiary hearing was moved to several days in January 2019, the bid deadline was moved to January 21, 2019, and the auction and sale hearing were moved to January 28, 2019.  ECF No. 389.  The Court later entered an order addressing procedures for the evidentiary hearing.  ECF No. 480, later amended by ECF No. 511.

After the first two days of the evidentiary hearing on KK-PB's mortgage claim and whether KK-PB would have a credit bid right, the debtor and KK-PB entered into settlement negotiations and announced a potential settlement.  As a result, the Court entered an order continuing generally the matters that had been set for evidentiary hearing, pending the presentation and potential approval of the settlement by the Court.  ECF No. 518.  At the debtor's request, the Court again moved the bid deadline to January 31, 2019 and the auction and sale hearing to February 5, 2019.  ECF No. 520.

A motion to approve the settlement between the debtor and KK-PB was filed at ECF number 523.  In light of the pending settlement, at the debtor's request the Court again delayed the bid deadline to March 4, 2019 and the auction and sale hearing to March 8, 2019.  ECF No. 537.  This is the most recent order amending the initial sale procedure that was first presented to the Court in October 2018. This revised order was served on all parties in interest, including any and all parties who may have a lien on or interest in the property to be sold, more than 30 days before the hearing that resulted in the Sale Order.  So, while the Court technically shortened notice of the sale approved in the Sale Order, all parties in interest had notice for a month that there would be a hearing on the very same date addressing the sale of the very same assets.  In reality, all parties in interest have had notice of a proposed sale of these assets for more than four months.

The Court held a hearing on the proposed settlement between the debtor and KK-PB on February 8, 2019 and disapproved the settlement by order entered February 11, 2019. ECF No. 560 (incorporating detailed findings of fact and conclusions of law made on the record). Later, at the sale hearing, the Court learned that even as the Court was hearing the debtor's motion to approve the settlement with KK-PB, KK-PB had failed to tender the deposit required under the settlement. KK-PB did not rebut this evidence. In other words, KK-PB was in default of the settlement that KK-PB wanted the Court to approve. If the Court had known this at the time, this would have been additional reason to disapprove the proposed settlement. As the Court will address below, the evidence of KK-PB's default under the settlement bolsters the debtor's determination that it would not be a reasonable exercise of the debtor's business judgment to entertain the last minute offer made by KK-PB on behalf of Kids2, LLC, presented orally at the sale hearing.

Because the settlement was not approved, the parties returned to evidentiary hearing on estimation of KK-PB's claim and the debtor's motion to prohibit KK-PB from credit bidding. The Court set the remaining two days of evidentiary hearing and then closing arguments on a separate day. ECF No. 569. After closing arguments on February 22, 2019, the Court made extensive findings of fact and conclusions of law which are incorporated into a written order. ECF No. 603. In short, the Court determined to estimate the claim of KK-PB on account of its note and mortgage, claim 70-3, as an unsecured claim in the amount of $0 for all purposes in this case. The effect of this ruling, as clearly stated in the order, is that claim 70-3 is disallowed. The Court ruled that KK-PB has no right to credit bid in a sale of the debtor's assets on account of claim 70-3. KK-PB filed an appeal from the estimation order. ECF No. 644. KK-PB did not request a stay of the estimation order. The Court's order disallowing claim 70-3 remains effective.

During all of the delays in the sale procedure, the debtor was actively marketing its hotel property and otherwise attempting to maintain the value of its assets for the bankruptcy estate and

valid creditors.  Not only did the debtor obtain extensions from its original stalking horse bidder to delay the auction and sale to permit litigation with KK-PB, but the debtor negotiated a contract substantially more favorable to the estate than its original stalking horse contract, which new contract was itself subject to additional bidding.  And, the debtor negotiated extensions of the settlement agreement with the Town to permit bidders and, more importantly, the bankruptcy estate to take advantage of that important settlement.  The sale approved by the Sale Order is the culmination of the debtor's significant efforts to achieve the best possible recovery for valid creditors of this bankruptcy estate, including the EB-5 investors.

The debtor's sale motion, filed at ECF number 604, represents the debtor's effort to obtain approval of a sale of the debtor's hotel property and related assets to LR U.S. Hotels Holdings, LLC ("LR"), subject to an over-bid from the original stalking horse bidder, RREF II Palm House LLC ("RREF"), and subject to a potential final bid from LR.  The debtor vetted both of these bidders and determined that they are ready, willing, and able to consummate the contracts they presented.  The purchase price offered by LR is $39.6 million plus certain assumed obligations.  The cash portion of the purchase price offered by LR is $7.6 million, or nearly 24%, higher than the original stalking horse bid presented to the Court in October 2018.

As a first step in the revised process proposed in the debtor's sale motion, on February 28, 2019, the Court considered revised procedures for the sale of the debtor's hotel and related assets and entered the Procedures Order.  In connection with that revised procedure, the debtor technically withdrew its original sale motion. The revised procedure contemplates what the debtor described as a private sale to LR subject to an over-bid from RREF and then, potentially, a final bid from LR.  But, in reality, the revised procedure approved by the Court in the Procedures Order is simply an amendment to the original auction procedure.  Based on Mr. Glickstein's credible testimony at the sale hearing, which was not rebutted, after many months of extensive marketing and communications

with potential buyers of this significant asset, LR and RREF were the only bidders interested in the hotel property at the price levels presented in the sale motion and that were, in the debtor's view after reasonable consideration, likely to close.  Thus, in effect, the revised procedure approved in the Procedures Order was the equivalent of requiring the final two bidders to present their last two offers in a controlled process.  Given the significance of the assets to be sold and the sophistication of the bidders, this arrangement was appropriate.  In the Sale Order, the Court found that this procedure was reasonably designed to obtain the best possible recovery for the estate and was well within the exercise of the debtor's reasonable business judgment.

At the sale hearing, KK-PB argued that its affiliate, Kids2, LLC, should be permitted to present an offer to purchase the debtor's hotel property and related assets.  Although it is not completely unheard of that there will be last minute offers for assets to be sold in bankruptcy, it is extremely unusual for a proposed bid for an asset of this magnitude to be presented orally, without any written proposal, and without the substantial diligence and negotiation that typically precedes such an offer.  In fact, the proposal was in flux during the sale hearing.  Counsel for KK-PB initially suggested that its affiliate, Kids2, LLC, would bid $40.6 million in cash, which counsel represented as $1 million higher than the LR bid.  When it was pointed out that the bidder was not a qualified buyer under the settlement with the Town, which would cause the settlement to fail and the bankruptcy estate to suffer reinstatement of the Town's substantial claims, there was discussion regarding modification to the proposal to cover the Town's claims.  When it was pointed out that providing an indemnity for the Town's claim would present a less favorable bid than the LR bid, as the estate might then need to pursue Kids2, LLC under the indemnity (indeed, it was unclear who would provide the indemnity), KK-PB eventually suggested the bid would provide for an additional $5 million in cash for the Town's claims, subject to allowance of those claims.

In its final proposal during the sale hearing, KK-PB stated that Kids2, LLC would propose a cash purchase price of $40.6 million, plus the assumed liabilities identified in the contract attached to the debtor's sale motion, plus an additional $5 million dollars to cover the claims of the Town to the extent allowed after an opportunity for objections.  Even so, the final proposal made by KK-PB on behalf of Kids2, LLC did not take into account the likelihood that failure of the settlement with the Town will result in administrative expenses with priority over unsecured claims.  At the sale hearing, the Town argued that if the settlement is not consummated, which among other things requires action by a qualified buyer on a short timeline,[3] the Town would retroactively reinstate post-bankruptcy accrual of monthly violation assessments and code enforcement fines.  Thus, even assuming the basic terms of an offer from Kids2, LLC, as described by KK-PB, it would not in fact represent the $1 million increase in value to the estate as KK-PB argues.

In addition, the proposal of Kids2, LLC as presented by KK-PB includes as a required component that there be an auction of the hotel, set out 30 days, at which other parties would be permitted to bid.  The Kids2, LLC proposal contemplates a delay of at least a month.

In the Sale Order, the Court ruled that KK-PB's presentation of a proposed bid on behalf of Kids2, LLC was an untimely objection to the sale.  KK-PB makes much of the fact that, during the sale procedures hearing, counsel for KK-PB suggested that KK-PB could make a bid that it perceived to be higher than the LR offer, but KK-PB provided no detail on such a potential bid at that time.  In the resulting Procedures Order, the Court set an objection deadline.  KK-PB filed a timely objection. ECF No. 629.  In KK-PB's filed objection there is no hint that it would interpose a last minute bid

---

[3] The settlement agreement with the Town provides for extension of development approvals through April 30, 2019, provided that, among other things, a qualified buyer undertakes certain actions by that same date.  But these actions require substantial activity before April 30, 2019 and depend entirely on a qualified buyer working constructively with the Town.

on behalf of Kids2, LLC.  In the Sale Order, the Court ruled that KK-PB's last minute proposal on behalf of Kids2, LLC was due to be overruled for this reason alone.

In the Sale Order the Court also ruled that, even if KK-PB's proposal on behalf of Kids2, LLC does not amount to an untimely objection, the debtor exercised its reasonable business judgment consistent with its fiduciary duty to the estate in not pursuing the proposal.  The debtor offered the testimony of Mr. Cary Glickstein, the debtor's manager, to support the debtor's view that the Kids2, LLC proposal does not in fact represent a more favorable offer to the estate than the sale agreement with LR.[4]  In the Sale Order, the Court credited all of Mr. Glickstein's testimony on this issue, which was thorough and credible.  Among other things, Mr. Glickstein testified that the potential for about a $1 million increase in the overall sale price was not worth the risk that Kids2, LLC, and its principal Mr. Glenn Straub, would take action that would greatly increase the costs to the estate, thereby reducing creditor recovery.  Mr. Glickstein pointed to specific experience with Mr. Straub in this case to support Mr. Glickstein's view that the potential increase in recovery was far outweighed by the risk of additional litigation.  Mr. Glickstein stressed the strength of LR as a purchaser of the debtor's assets. In addition, Mr. Glickstein testified that a delay in the sale process would require the debtor to attempt to obtain debtor in possession financing, as the debtor has run out of funds, and that he believes he is unlikely to be able to find such financing.  KK-PB makes two arguments regarding the debtor's access to capital.  First, KK-PB argues that the debtor did not ask KK-PB for debtor-in-possession financing.  But KK-PB did not offer to provide financing to the debtor to bridge the auction KK-PB says Kids2, LLC will require.  More importantly, given Mr. Straub's position in this case, it is unlikely the Court would approve financing provided by Mr. Straub or an entity controlled by him.  In any

---

[4] In the Motion, KK-PB states that the Court took a recess during the sale hearing to permit the debtor and KK-PB to negotiate regarding the proposal KK-PB made on behalf of Kids2, LLC.  This is not accurate.  The Court took a recess at the debtor's request to permit the debtor time to consider what evidence it would present to support the debtor's determination not to pursue the potential bid of Kids2, LLC.  When Court resumed, the debtor immediately called Mr. Glickstein to the stand to address this issue.

case, any such financing would need to be repaid with interest ahead of unsecured claims.  Second, KK-PB argues, based on one monthly operating report filed by the debtor in this case, that the debtor has sufficient assets to await a delayed auction.  Not only did KK-PB fail to offer this evidence at the sale hearing, but a monthly operating report filed by the debtor indicates only past financial activity of the debtor during a single month.  It provides no information with regard to the debtor's ensuing financial needs.  The only evidence admitted at the sale hearing on the issue of the debtor's financial status was the testimony of Mr. Glickstein, which was credible.  Based on the evidence before the Court, the Court found that the debtor exercised its reasonable business judgment, consistent with its fiduciary duty to the estate, in determining not to pursue the proposal made by KK-PB on behalf of Kids2, LLC.  Nothing in the present Motion would cause the Court to retract from this finding.

KK-PB argues that the debtor and Mr. Glickstein are motivated by animosity toward Mr. Straub.  KK-PB argues that the debtor is racing to consummate a sale with its selected buyer specifically to prevent Mr. Straub from purchasing the hotel property.  There is no evidence that would cause the Court to reach either conclusion.  The only relevant evidence admitted at the sale hearing was the testimony of Mr. Glickstein to the effect that he has no confidence that any entity controlled by Mr. Straub will follow through on a sale proposal in good faith.  Mr. Glickstein based this conclusion on his experience with Mr. Straub in this case, including Mr. Straub's failure to cause KK-PB to make a payment required under the settlement presented to the Court for approval, and repeated statements made by Mr. Straub to Mr. Glickstein regarding Mr. Straub's self-proclaimed litigious nature.  It is important to note that Mr. Glickstein differs from most managers of debtors-in-possession who come before this Court.  In most cases, a debtor's management comprises the same persons who managed the debtor prior to the bankruptcy.  Such management typically had interaction with the debtor's creditors when their claims arose and has a personal connection with creditors that may permeate management's views.  Mr. Glickstein, in contrast, is a professional manager, a neutral

party, who was appointed by a Florida state court to manage the debtor. Based on Mr. Glickstein's actions before this Court, and in particular his testimony in this matter, the Court finds Mr. Glickstein to be uniquely unbiased.

KK-PB argues that the potential purchase offer of Kids2, LLC is "clearly higher and better" than the offer the Court approved in the Sale Order. This argument is based on three faulty assumptions. First, KK-PB argues that the Kids2, LLC offer has a value of $1 million greater than the LR offer. As discussed above, in light of the likely default of the settlement with the Town and the accrual of administrative expenses, this is not the case. Second, KK-PB argues that there may be other, higher offers at the auction that Kids2, LLC would require after an additional delay of 30 days. There is no evidence to support the suggestion that there would be any bidders other than those who have already come forward. Based on the evidence admitted at the sale hearing, the only bidder likely to present a bid at the present level is LR. But under the debtor's contract with LR, LR would not be bound to bid at such an auction, but could immediately terminate its contract with the debtor. Based on Mr. Glickstein's testimony at the sale hearing, which was not rebutted, it is unlikely that LR would participate in such an auction, and so the estate would risk losing LR's highly favorable contract. Third, there is no credible evidence that Kids2, LLC could close on the sale. The only evidence KK-PB offered on this issue was a photocopy of a cashier's check, in the amount of $50 million, payable to Glenn Straub. This is a highly unusual method of indicating an ability to purchase an asset. Typically, a bidder will provide its own audited financial statements accompanied by confirmation from its bank or lender that there is cash available to close in the bidder's name. Sometimes counsel for a bidder will represent that funds are held in trust. In this case, KK-PB proposed that another entity, Kids2, LLC, would make an offer, and provided a cashier's check payable not to Kids2, LLC or to KK-PB but to Mr. Straub individually. This is not evidence of assets in the name of Kids2, LLC, the proposed bidder. This is evidence only that Mr. Straub, if he so desires, could make cash available

to Kids2, LLC.  The Court notes that at no time did Mr. Straub agree on the record, personally or through counsel, that he would make cash available to Kids2, LLC to consummate a potential acquisition of the hotel.  Based on the Court's experienced with Mr. Straub in this case, the Court would not make the assumption that Mr. Straub's assets are Kids2, LLC's assets for this purpose.

KK-PB argues that, in light of the shortened time periods provided for the hearing on approval of the revised sale procedure and the sale hearing, due process was not served.  KK-PB is the only party that raised this concern.  It is hard to see how KK-PB was harmed by the timing of the sale as KK-PB has been actively involved in this case since its inception and took part in both hearings.  In any case, as the Court has summarized, the revised sale process set out in the Procedures Order is, in actuality, a continuation of the process previously in place, and all parties in interest had ample notice of the debtor's intent to sell substantially all of its assets at a hearing to be held on exactly the day the Court approved the sale to LR.  Even if the Procedures Order and the revised process it approved are measured on their own, there was adequate notice to parties in interest of both the sale procedures hearing and the sale hearing.  Indeed, every party that has been involved in this case appeared at those hearings and was heard.  The EB-5 investors, who hold most of the unsecured claims in this case, supported the revised sale process and oppose this Motion.  The Town, who seeks a party who will complete construction of a highly visible property that has remained dormant for years, supported the revised sale process.

For more than four months, KK-PB and its principal Mr. Straub have known that the debtor was attempting to sell substantially all of its assets in this case.  KK-PB knew that the debtor had retained appropriate professionals, that the debtor had widely solicited interest from potential buyers and had been contacted by many potential bidders, and that the debtor had made extensive due diligence materials available to a large number of potential bidders.  KK-PB knew that the debtor had negotiated an initial stalking-horse contract with RREF.  KK-PB spent most of the past four months

litigating with the debtor and the EB-5 investors in an attempt to credit bid for the debtor's assets using a mortgage that is avoidable as a fraudulent transfer.  Neither KK-PB nor Kids2, LLC contacted the debtor to discuss a potential cash offer.  KK-PB did not respond to the revised sale motion prior to the procedures order and present a formal, written offer on behalf of itself or Kids2, LLC.  It does not appear that Kids2, LLC did any due diligence in connection with the potential purchase of the hotel.  KK-PB makes it sound as though it would have been reasonable for KK-PB, or Kids2, LLC, to present a bid on the deadline under the initial sale procedures order without even contacting the debtor prior to doing so.  But, as counsel for KK-PB well knows, with assets such as the debtor's hotel property this would not be a reasonable approach to making a bid.  While there was a deadline for bids on the hotel property under the initial sale procedure, it would be improbable that the debtor could properly vet a proposal it saw for the first time on that date.  With an asset as large as the one at issue here, a bidder coming to the table at the last minute takes the risk that its bid will not be chosen solely because the debtor is unable to judge the strength of the bidder and the bid.  At a minimum, the debtor would need to determine whether the offer was a serious offer for the assets and ascertain the bidder's ability to close.  Here, the initial proposal made by counsel for KK-PB on behalf of Kids2, LLC, at the sale hearing itself, did not take into account the fact that if an entity controlled by Mr. Straub were to purchase the hotel, the settlement with the Town would fail and the estate would be harmed.  This is just one of the issues that Kids2, LLC and the debtor would have needed to address if Kids2, LLC presented a last minute offer under the initial sale procedure.  Thus, even if the sale procedure had retained the ability for other parties to present bids as set out in the initial sale procedure, KK-PB, or Kids2, LLC, would not have been successful in presenting this last minute bid without first working through the offer with the debtor.

KK-PB did not interpose any objections under section 363 of the Bankruptcy Code in its written objection or during the sale hearing.  Nor does KK-PB now argue that the sale authorized in

the Sale Order was subject to objection under any provision of section 363.  In the Sale Order, the Court ruled that the sale to LR, free and clear of liens and other interests in property, was authorized under each of section 363(f)(3), section 363(f)(4), and 363(f)(2).  The Court ruled that the sale to LR would be approved.

As required by section 363(e), in the Sale Order the Court addressed the provision of adequate protection to parties with liens on or other interest in the property to be sold.  The most common form of adequate protection is to provide that each such party has a lien on the proceeds from the sale consistent with its pre-bankruptcy lien priority.  Because KK-PB's claim 70-3 is not secured by a valid mortgage, and the claim itself was disallowed, the Court ruled that KK-PB was not entitled to adequate protection on account of that claim.[5]  The Court ruled that KK-PB would receive adequate protection for its secured claim 72-1 in the form of a lien on the sale proceeds equal in priority to the lien on property to be sold, subject of course to objections to that claim.

In the Sale Order, the Court found that the sale procedure approved by the Court in the Procedures Order had been implemented in good faith by the debtor.  The debtor and LR requested that the Court make good faith findings consistent with sections 363(m) and (n).  The effect of a good faith finding under these provisions is that an appeal from a sale order is moot if the appellant fails to obtain a stay of the sale order and the sale closes.  In order to preserve the sanctity of bankruptcy sales, such a finding is routinely requested.  The Bankruptcy Code does not provide a definition of good faith for this purpose.  Under the case law, it is generally held that good faith involves the integrity of the purchaser in the course of the sale proceedings.  Typically, lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the debtor, or an attempt to take grossly unfair advantage of other bidders.  After considering the evidence admitted at the sale hearing,

---

[5] This ruling in the Sale Order is without prejudice to KK-PB requesting a lien on the proceeds of sale as a result of any reversal or modification of the Court's estimation order on appeal, if any.

including the proposed testimony of a corporate representative of LR and the testimony of Mr. Glickstein, the Court found that LR and the debtor acted in good faith in all regards in connection with the sale proceedings.  LR and the debtor negotiated the sale contract at arm's length.  LR has no prior connection with the debtor, any previous owner of the hotel property, or any other bidder, except for a minor interaction with a prior minority owner in the debtor which is not material in this case.  There was not even a suggestion that LR acted in collusion with the debtor or other bidders or in any way acted to the detriment of other potential bidders.  The Court found that all aspects of the proposed sale, including without limitation the negotiations undertaken by the debtor and LR, the negotiation of the sale contract, and the activity before the Court, indicated that LR and the debtor acted in good faith in all regards.

Finally, the debtor had requested that the automatic stay of the Sale Order under Bankruptcy Rule 6004(h) not apply and that the Sale Order become enforceable immediately upon entry.  In light of the settlement with the Town, any purchaser of the debtor's hotel property must immediately undertake action to fulfill the requirements of the Town so as to retain certain development rights, among other things.  There is significant time pressure in this regard.  In addition, based on the unrebutted testimony of Mr. Glickstein, which was the only evidence offered on the issue at the sale hearing, the debtor has insufficient funds on hand to continue maintaining, securing, and insuring the property to be sold.  In light of these facts, the Court found sufficient cause to waive the automatic stay of the Sale Order under rule 6004(h).  Thus, the Sale Order was effective immediately upon its entry.

## ANALYSIS

KK-PB has a negligible likelihood of success on its appeals from the Procedures Order and the Sale Order.  As the Court discussed in detail above, based on the evidence admitted at the sale hearing, the debtor has properly exercised its business judgment consistent with its fiduciary duty to

the bankruptcy estate and creditors.  Under the circumstances of this case, it was proper for the debtor to pursue the revised process approved in the Procedures Order.  There was adequate notice of both the sale procedures hearing and the sale hearing and all parties wishing to be heard were heard.  Taking into account its extensive marketing of the hotel property and negotiations with potential bidders, the debtor narrowed down the field of bidders to two, LR and RREF, whom the debtor determined were able and willing to consummate a sale.  Through its extensive marketing process, the debtor identified no other potential buyer willing to bid at the price level the sale process had attained, and thus the debtor determined to permit those two parties a final opportunity to outbid each other.  This was a reasonable exercise of the debtor's business judgment, aimed at satisfying its fiduciary duty to creditors.  Indeed, the EB-5 investors, who are the vast majority of the unsecured creditors in this case, supported the revised sale process.  The debtor properly determined that it would not pursue the last minute proposal of Kids2, LLC, presented by KK-PB at the sale hearing, as the debtor reasonably determined that the risk of pursuing that proposal, which would result in a default under the settlement with the Town, expose the estate to additional claims including administrative expenses, and potentially expose the estate to additional litigation, was outweighed by the potential increased value, which was unclear.  In the Sale Order, the Court's findings on these issues were based on credible evidence that was not rebutted at the sale hearing.  The Court's findings of fact will be accorded deference on appeal, where they may be overturned only if they are clearly erroneous.  Given the evidence before the Court at the sale hearing, KK-PB is extremely unlikely to be successful on its appeal from the Procedures Order and the Sale Order.

In support of KK-PB's argument that it will be successful on appeal, KK-PB relies heavily on *In re Financial News Network, Inc.*, 980 F.2d 165 (2d Cir. 1992).  KK-PB argues that this Court should have entertained the late proposal of Kids2, LLC, just as the bankruptcy court in *Financial News Network* entertained offers received after the bid deadline.  In that case, the court did not immediately

rule following an evidentiary hearing on valuation of certain assets, and bids were revised, including after bidding was officially closed.  In *Financial News Network* the court ruled that the "involved and somewhat speculative nature of the assets being sold required the bankruptcy court to adopt a fluid bidding process," a process which the appeals court approved stating that the sale "process best balanced the competing considerations of finality in the bidding process and fairness to the bidders against the interests of creditors in securing the highest sales price.  There are cases where the bankruptcy court's discretion must be sufficiently broad so that in making its decision it can compass these competing considerations as best it can.  We think this is such a case." *In re Financial News Network, Inc.*, 980 F.2d at 170.  In this case, the debtor sought to sell real estate, the value of which was not speculative, and LR submitted the highest and best bid.  The circumstances present in *Financial News Network* are not present here.  Indeed, the Court's ruling in the Sale Order exhibits exactly the proper exercise of discretion described in the *Financial News Network* case.

KK-PB is also likely to lose in its appeal from the Procedures Order and Sale Order because KK-PB has no cognizable financial interest in the appeal and thus no standing to pursue the appeal.  KK-PB's only current interest as a creditor in this case is represented by its fully secured claim 72-1.  Under the Sale Order, KK-PB will receive payment in full of that claim assuming it is allowed.  KK-PB is not a proposed bidder for the debtor's assets, as KK-PB brought the proposal on behalf of its affiliate, Kids2, LLC.  But even if KK-PB was a bidder on the debtor's property, generally an aggrieved bidder has no standing to challenge a bankruptcy sale on appeal.  *In re Gulf States Steel*, 285 B.R. 739, 742-43 (Bankr. N.D. Ala. 2002); *see also Stark v. Moran (In re Moran)*, 566 F.3d 676 (6th Cir. 2009).

KK-PB will not suffer irreparable injury if the stay is not granted.  Indeed, KK-PB will suffer no cognizable injury at all.  KK-PB does not argue that it is injured as a creditor of this bankruptcy estate, as KK-PB knows that its only currently allowable claim, claim 72-1, will be protected by a lien on the sale proceeds and, if finally allowed, paid in full.  That is all that KK-PB is entitled to as a result

of its claims in this case.  Instead, KK-PB argues that it will be injured because, if the sale closes, "appeal of the Orders may be moot and KK-PB Financial would be foreclosed from bidding on a unique asset.  Such a result would cause KK-PB Financial significant irreparable harm that cannot be undone by appeal or by monetary remedy."  In other words, KK-PB argues that it will be harmed by being prevented from bidding on the hotel.  This is not the kind of harm contemplated by the law.  A stay pending appeal under Bankruptcy Rule 8007 is intended to protect an appellant from harm to its rights as a party in interest in the bankruptcy case.  KK-PB's rights as a party in interest in this case are limited to its rights as a creditor, and those rights are fully protected.

Entry of a stay of the Procedures Order and the Stay Order will create a substantial risk of harm to the bankruptcy estate and creditors.  The District Court in this district is typically very efficient in resolution of bankruptcy appeals.  However, based on this Court's experience with appeals, it is unlikely that KK-PB's appeals will be completed within 60 days.  Under the debtor's agreement with LR, if a stay is entered and remains in place for more than 60 days, LR would have the ability to terminate the contract, denying the estate the benefit of the offer that Mr. Glickstein described as higher than any offer the debtor expected to receive.  The estate would then be left only with the tenuous proposal of Kids2, LLC.  Contrary to KK-PB's suggestion, based on the only evidence admitted at the sale hearing, the bankruptcy estate will not benefit from the fruitless auction that Kids2, LLC would require, and creditors risk losing the highly valuable contract already approved by the Court.  In addition, based on the only relevant evidence offered at the sale hearing, the debtor is running out of money and will be unable to maintain its property if the sale to LR does not close in a timely way.  As discussed above, KK-PB's argument based on a single monthly operating report filed by the debtor is both untimely and unconvincing.  KK-PB argues that the Town "has already agreed to extend the deadlines contained in its settlement with the Debtor."  While the Town has agreed to

extend certain deadlines in the past, at the request of the debtor, the Town is under no obligation to do so again.  The Town is also harmed by the continued delay in construction of the hotel property.

The public interest would be served by denying the Motion.  The debtor undertook a thorough and extended sale process.  Consistent with the debtor's fiduciary duty, the sale process was designed to encourage the strongest bids from parties who are willing and able to consummate a purchase of an asset worth upwards of $40 million.  That process was more successful than even the debtor hoped.  It resulted in a contract with an international developer of hotel properties at a price level significantly higher than any prior offer.  KK-PB has inserted itself into this carefully structured sale process, at the last minute, with a proposal on behalf of an affiliate that is not even reduced to writing, and without any evidence to support the contention that the actual proposed bidder has any ability to close.  To permit KK-PB to make such a proposal when it did, under the circumstances of this case, and thus stymie a sale supported by every other party in interest including a substantial majority of unsecured creditors, would only serve to discourage *bona fide* bidders from becoming involved in bankruptcy sales.  It is not in the public interest to encourage such behavior.

For the foregoing reasons, it is ORDERED AND ADJUDGED that *KK-PB Financial, LLC's Emergency Motion to Stay Orders Pending Appeal* [ECF No. 646] is DENIED.  The Clerk is directed to transmit a copy of this order to the District Court in connection with the previously docketed appeals from the Procedures Order [ECF No. 619] and the Sale Order [ECF No. 651].

### ###

Copy to:
James N. Robinson, Esq.

*James N. Robinson, Esq. is directed to serve a copy of this order on all appropriate parties and file a certificate of service.*