UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In Re:                                          Case No.  18-19441-EPK
                                                Chapter 11

160 ROYAL PALM, LLC,

        Debtor.
_____/


**DEBTOR'S AMENDED PLAN OF LIQUIDATION PURSUANT
<u>TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**


**\*\*\*SECTIONS 10.5 AND 10.6 OF THIS PLAN CONTAIN EXCULPATORY RELEASES
IN FAVOR OF, AND INJUNCTIONS PROHIBITING ACTIONS AGAINST, CERTAIN
PERSONS.  PLEASE READ CAREFULLY\*\*\***

Philip J. Landau, Esq.
SHRAIBERG, LANDAU & PAGE, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: plandau@slp.law

**ATTORNEYS FOR DEBTOR**

# Table of Contents

Introduction..................................................................................................................................1

ARTICLE I Definitions and Construction of Terms ....................................................................1

ARTICLE II Classification of Claims and Interests…………………………………………..13

ARTICLE III Treatment of Administrative Expense Claims, U.S. Trustees Fees, and Priority Tax
Claims ........................................................................................................................................13

ARTICLE IV Treatment of Claims and Equity Interests Under The Plan ...................................16

ARTICLE V Allowance and Disallowance of Claims .................................................................19

ARTICLE VI Provisions For Executory Contracts And Unexpired Leases.................................21

ARTICLE VII Means For Implementation Of The Plan ..............................................................22

ARTICLE VIII Post-Confirmation Litigation ............................................................................41

ARTICLE IX Conditions Precedent To Effectiveness Of Plan ...................................................43

ARTICLE X Effect Of Confirmation .........................................................................................44

ARTICLE XI Cram Down And Modification .............................................................................48

ARTICLE XII Retention Of Jurisdiction....................................................................................49

ARTICLE XIII Miscellaneous ...................................................................................................51

## DEBTOR'S AMENDED PLAN OF LIQUIDATION

## INTRODUCTION

160 Royal Palm, LLC, the above captioned Debtor, proposes this Chapter 11 Plan of Liquidation of the Debtor.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan contemplates a distribution of the proceeds of the sale of the Debtor's assets and other assets in accordance with the priorities mandated by the Bankruptcy Code, and that such assets be transferred to a Liquidating Trust and administered, liquidated, and distributed by the Liquidating Trustee to the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

**A.**    **Definitions.**    All capitalized terms in the Plan shall have the meanings ascribed to them herein. Any capitalized term used in the Plan that is not defined herein or elsewhere in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.1    "Administrative Claim" means any Claim constituting a cost or expense of administration of the Debtor's Chapter 11 Case under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and of operating the business of the Debtor;; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331

of the Bankruptcy Code, (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, and (v) all fees and charges assessed against the Debtor's Estate pursuant to 28 U.S.C. §1930(a).

1.2     "Allow", "Allowed", "Allowance" or words of similar meaning means with respect to a Claim or Equity Interest against the estate of the Debtor that is: (a) either (i) scheduled by the Debtor in its Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

1.3     "Assets" shall mean any and all property of the Estate as defined under and included in Section 541(a) of the Bankruptcy Code, including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of actions, assumed

executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

1.4    "Avoidance Actions" shall mean any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.5    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

1.6    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the Chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to Section 157(d) of Title 28 of the United States Code.

1.7    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.8    "Business Day" means a day other than a Saturday, Sunday or legal holiday.

1.9    "Case" means this chapter 11 case of the Debtor pending before the Court and assigned Case No. 18-19441-EPK.

1.10    "Cash" means legal tender of the United States or its equivalents, including but not limited to bank deposits, checks and other similar items.

1.11    "Causes of Action" means any and all actions, suits, claims for relief, causes of

action, chapter 5 causes of action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

1.12    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.13    "Class" means a group of Claims or Equity Interests described in Article III of this Plan.

1.14    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.15    "Confirmation Order" means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to section 1129 of the Bankruptcy Code.

1.16    "Confirmation Hearing" means the hearing at which the Bankruptcy Court confirms the Plan.

1.17    "Court" means the United States Bankruptcy Court for the Southern District of Florida, or any other court exercising competent jurisdiction over the Case or any proceeding therein.

1.18    "Debtor" means 160 Royal Palm, LLC, the Debtor in Possession in this Chapter 11 bankruptcy proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-19441-EPK.

1.19    "DIP Lender Claim" means the Claim for the amounts owed under the debtor-in-possession financing provided by LR U.S. Holdings, LLC pursuant to the *Final Order Granting Expedited Motion for Order Authorizing Debtor to Obtain Post-Petition Financing for Property Insurance, Maintenance and Protection* [ECF No. 740].

1.20    "Disclosure Statement" means the Disclosure Statement that relates to the Plan, and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.21    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered.  Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.  Claims estimated by the Bankruptcy Court at $0 for all purposes in the Case are disallowed in their entirety, are not Disputed Claims, and are not entitled to any distributions under the Plan.

1.22    "Disputed Claims Fund" shall have the meaning set forth in section 5.1 of the Plan.

1.23    "Distribution" means the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.24    "Distribution Date" means the date that is five days (5) following the date the United States Court of Appeals for the Eleventh Circuit issues its mandate affirming the Sale Approval Order (defined below) entered by the Bankruptcy Court in the Case on March 12, 2019 or dismissing the appeal of such Sale Approval Order.

1.25    "Distribution Address" means the address for a holder of an Allowed Claim as set

forth in a proof of claim, as amended or supplemented.  If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtor's Schedules.

1.26    "EB-5 Creditor" shall mean a foreign national who provided money in an alleged EB-5 visa program involving the Property who has filed a proof of claim against the Debtor that is timely or has been deemed timely by the Bankruptcy Court.  All Allowed Claims filed by EB-5 Creditors shall be treated as Unsecured Claims.

1.27    "Effective Date" shall be described in the Confirmation Order and shall be the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan occurs.

1.28    "Entity" means and entity as defined in section 101(15) of the Bankruptcy Code.

1.29    "Equity Interest" means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

1.30    "Estate" shall mean the estate that was created by the commencement of the Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or the Estate shall have had as of the Petition Date, or which the Debtor or the Estate acquired after the commencement of the Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

1.31    "Final Order" means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal

or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.32    "Holder" means the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

1.33    "Impaired" means an Allowed Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.34    "Litigation Claims" means any and all Causes of Action of the Debtor or any other party-in-interest, in law, equity, or otherwise, which are owned or held by, or have accrued to, the Debtor or the Estate, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estate; (ii) for subrogation and contribution; (iii) for turnover; (iv) Avoidance Actions; (v) to determine the extent, validity, and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code or otherwise Objections or challenges to the validity of any Claims or Interests in any respect (including, without limitation, as to amount, status, priority and whether asserted in an adversary proceeding or not); (viii) related to or arising under federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) director and officer claims – including without limitation Claims and Causes of

Action against any and all current and/or former officers and directors of the Debtor and those persons serving in a functionally equivalent role, including for breach of fiduciary duty; (xi) under and pursuant to any policies of insurance, including for bad faith, maintained by the Debtor, including without limitation, any director and officer insurance policies; (xii) for theft of corporate opportunity; and (xiii) for the right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code.

     1.35    "Litigation Claims Proceeds" shall mean the net proceeds received by the Debtor from the Litigation Claims, less the Liquidating Trustee's fees, attorneys' fees, other professional fees, including but not limited to allowed Post-Confirmation Administrative Claims, costs, U.S. Trustee Fees relating to any proceeds received from the Litigation Claims, and other related expenses, which net proceeds will be disbursed by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

     1.36    "Liquidating Trust" means that certain irrevocable trust created and established pursuant to the Plan for the benefit of Holders of Allowed Claims against the Debtor, into which the Liquidating Trust Assets shall be transferred and vested on the Effective Date for all purposes under the Plan.

     1.37    "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement, the form of which is attached hereto as **Exhibit 1** to the Plan, and which sets forth the terms and conditions of the Liquidating Trust, as well as the duties and responsibilities of the Liquidating Trustee. The final version of the Liquidating Trust Agreement shall be filed prior to the Confirmation Hearing, and its terms shall be treated as if comprising the terms of the Plan.

     1.38    "Liquidating Trust Assets" means all Property of the Estate, which Liquidating

Trust Assets are proposed to be transferred to and vested in the Liquidating Trust under and in accordance with the terms of the Plan and Confirmation Order as soon as reasonably practicable following the entry of the Confirmation Order. The Liquidating Trust Assets shall include all Assets and belongings of the Debtor, including all Assets as may have been created by virtue of the Bankruptcy Code, and expressly includes all Causes of Action, all Litigation Claims, and the rights to prosecute, enforce and settle same.

1.39    "Liquidating Trust Beneficiaries" means the Holders of Allowed Claims who have not received complete payment as provided for under the Plan as of the Effective Date and Holders of any Disputed Claims provided for in the Disputed Claims Fund.   Holders of Claims that have been estimated by the Bankruptcy Court at $0 for all purposes in the Case are not Liquidating Trust Beneficiaries.

1.40    "Liquidating Trust Beneficial Interests" is defined in section 7.4.4(f) of the Plan.

1.41    "Liquidating Trustee" means Cary Glickstein, individually, the Liquidating Trustee named to administer the Liquidating Trust, and all successor Liquidating Trustees.

1.42    "Person" means person as defined in section 101(41) of the Bankruptcy Code.

1.43    "Petition Date" means August 2, 2018, which is the date the Debtor filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

1.44    "Plan" means this plan in its entirety, together with all addenda, exhibits, schedules, and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.45    "POC" means proof of claim.

1.46    "Post Confirmation Debtor Assets" means all property of the Debtor as of the

Confirmation Date, including without limitation, all Causes of Action, and Litigation Claims, to be transferred to the Liquidating Trust.

1.47    "Post-Confirmation Administrative Claims" means Administrative Claims arising after the Confirmation Date.

1.48    "Priority Claim" means a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.49    "Priority Tax Claim" means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.50    "Professional" means a professional employed in the Debtor's Chapter 11 Case under 11 U.S.C. §§ 327, 328, and/or 1103 by the Debtor.

1.51    "Professional Fee Claim" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Debtor's case in accordance with the provisions of Section 327 and 328 of the Bankruptcy Code.

1.52    "Property of the Estate" shall mean the property defined in section 541 of the Code.

1.53    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtor that has not been assumed.

1.54    "Sale Approval Order" means that certain *Order Approving Sale of Assets to LR U.S. Hotels Holdings, LLC Free and Clear of All Liens, Claims, and Encumbrances* [ECF No. 651].

1.55    "Sale Proceeds" shall mean the net proceeds received by the Debtor from the sale of certain of its Assets as approved by the Sale Approval Order, less attorneys' fees, other professional fees, including but not limited to allowed Post-Confirmation Administrative Claims,

costs, U.S. Trustee Fees relating to any proceeds received from such sale, other related expenses and fees, including but not limited to those contemplated in the transaction approved by the Sale Approval Order, and the amounts required for the Sale Proceeds Reserve (defined below) which net proceeds will be disbursed by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

1.56   "Sale Proceeds Reserve" means the amount of $1,000,000 from the proceeds received from the sale of certain of its Assets as approved by the Sale Approval Order, which amount shall be reserved by the Liquidating Trustee for the payment of Allowed Professional fees and expenses, and any other Allowed Post-Confirmation Administrative Claims, that arise after the Confirmation Hearing, and to provide for a source of indemnification and reimbursement for the Liquidating Trustee and other parties entitled to such indemnification and reimbursement as set forth in the Liquidating Trust Agreement, the Plan, and the Confirmation Order, which amounts shall be provided for, and any remaining amounts will be disbursed, pursuant to the terms of the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

1.57   "Schedules" means the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtor with the Court in the Case.

1.58   "Secured Claim" means a Claim that is (a) secured by a valid and perfected lien on property in which the Debtor's Estate has an interest, but only to the extent of the value of the claimant's interest in the Estate's interest in such property as determined pursuant to Section 506(a) of the Bankruptcy Code, or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.59   "Town" means the Town of Palm Beach.

1.60    "Town Claims" is defined in section 4.2 of the Plan.

1.61    "Trade Creditor Secured Claim" means a Secured Claim submitted against the Debtor by James F. Biagi, P.E., Richard's Woodwork, Inc., Place of Tile, Inc., TWG Enterprises Waterproofing & Painting, Inc., Van Linda Ironworks, Inc., New Haven Contracting South, Architectural Precast & Foam, LLC and any other Secured Claim held by a Creditor who provided goods or services to the Debtor.

1.62    "United States Trustee" means the Assistant United States Trustee for the Southern District of Florida.

1.63    "Unsecured Claim" means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

1.64    "U.S. Trustee Fees" is defined in section 3.5 of the Plan.

**B.    <u>Rules of Interpretation and Construction</u>**.  For purposes of the Plan, (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits to the Plan; (iii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (vi) the rules of construction outlined in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**    **Classification**. Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent the particular Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled before the Effective Date. A Claim or Equity Interest shall be classified in a different Class to the extent that it qualifies within the identification of that different Class.

**2.2**    **Unclassified Claims**. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims and U.S. Trustee Fees, and the treatment of those Claims, is set forth in Article 3.

**2.3**    **Identification of Classes**. Classes of Claims against and Equity Interests in the Debtor are designated as follows:

**Class 1**.        Allowed Trade Creditor Secured Claims

**Class 2**.        Allowed Town Claims

**Class 3.**        Allowed Unsecured Claims

**Class 4**.        Allowed Equity Interest Holders.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.1**    **Administrative Claims Bar Date**. All requests for payment of Administrative Claims and applications for payment of Professional Fee Claims shall be filed with the Bankruptcy Court by the deadline set pursuant to an order of the Bankruptcy Court.  Administrative Claims that have already been filed or approved by the Bankruptcy Court need not be refiled.  Except as

provided herein, any Administrative Claim or Professional Fee Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

      **3.2**     **Treatment of Administrative Claims, including Professional Fee Claims**. The Holders of Allowed Administrative Claims against the Estate (with the exception of the Professionals, including those employed pursuant to Sections 327, 328 or 1103 of the Code or Persons who seek payment pursuant to sections 503(b)(3) and (4) of the Code, who will be paid 100% of the amount allowed of such Administrative Claims by the Debtor's estate upon application to the Bankruptcy Court prior to the applicable deadline for filing such applications and entry of an order(s) thereon) shall be paid 100% of their Allowed Administrative Claims in Cash from the Sale Proceeds, Litigation Claims Proceeds and/or Sale Proceeds Reserve unless otherwise ordered by the Bankruptcy Court or agreed to by the holder of such Allowed Administrative Claim, upon the Debtor receiving the Sale Proceeds, Litigation Claims Proceeds and/or Sale Proceeds Reserve, and the later of: (i) the Effective Date, (ii) the Distribution Date, (iii) the date on which such Administrative Claim becomes an Allowed Administrative Claim, (iv) for Allowed Administrative Claims that represent liabilities incurred by the Debtor in the ordinary course of business after the Petition Date with regard to the Debtor, the date on which each such Claim becomes due in the ordinary course of such Debtor's business and in accordance with the terms and conditions of any agreement relating thereto; or (v) upon such other dates and terms as may be agreed upon by the Holder of any such Allowed Administrative Claim and the Debtor. Notwithstanding the foregoing, the Debtor shall reserve and hold back $19,450,000 from distribution under this Plan until such time as the Court awards, reduces, or disallows such Professional Administrative Claims.

**3.3**     <u>**Treatment of Priority Tax Claims**</u>. Subject to the allowance procedures and deadlines provided herein, as soon as reasonably practicable following the Debtor receiving the Sale Proceeds or Litigation Claims Proceeds and after the later of the: (i) the Effective Date, (ii) the Distribution Date, (iii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (iv) a date agreed upon by the Debtor and the holder of such Allowed Priority Tax Claim, the Holder of an Allowed Priority Tax Claim shall be paid in full in Cash from the Sale Proceeds or Litigation Claims Proceeds in an amount equal to its Allowed Priority Tax Claim.

**3.4**     <u>**Treatment of U.S. Trustee Fees**</u>. Notwithstanding any other provisions of the Plan to the contrary, the United States Trustee shall be paid in Cash the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fourteen (14) days of the entry of the Order confirming the Plan ("<u>U.S. Trustee Fees</u>") or as otherwise required, for pre-confirmation periods by the Debtor, and the Debtor shall simultaneously provide the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  In addition, the U.S. Trustee Fees for post-confirmation periods up to and including the date on which the Effective Date occurs shall be paid in Cash by the Debtor, and the Debtor shall timely provide the United States Trustee with an appropriate affidavit indicating the cash disbursements for the relevant period(s).  Lastly, the Liquidating Trust shall timely pay the U.S. Trustee Fees in Cash for all subsequent post-confirmation periods based upon all post-confirmation disbursements made by the Liquidating Trust, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing this Case or converting this Case to another Chapter under the Bankruptcy Code, and the Liquidating Trust shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

**3.5**     **Treatment of DIP Lender Claim.**    Except to the extent that the holder of the DIP Lender Claim has already been paid by the Debtor prior to the Effective Date or agrees to a less favorable treatment, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the holder of the DIP Lender Claim shall receive Cash from the Sale Proceeds in the full amount of such Allowed DIP Lender Claim, as soon as reasonably practicable following the Debtor receiving the Sale Proceeds and the latest to occur of: (i) the Effective Date, (ii) the Distribution Date; and (iii) a later date or dates agreed to by the Liquidating Trustee and the holder of the DIP Lender Claim.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

**A.  Summary**

**1.**     The Plan constitutes a chapter 11 plan of liquidation for the Debtor.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article III.

**2.**     The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

**3.**     Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | | Entitled to Vote? |
|---|---|---|---|
| 1 | Allowed Trade Creditor Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Allowed Town Claims | Impaired | Yes; Entitled to Vote |

| 3 | Allowed Unsecured Claims | Impaired | Yes; Entitled to Vote |
| 4 | Allowed Equity Interests | Impaired and No Distribution | No; Deemed to Reject the Plan |

**B.**    **Classification and Treatment of Claims and Equity Interests**

**4.1**    **Class 1 – Allowed Trade Creditor Secured Claims.**  Except to the extent that the holder of an Allowed Trade Creditor Secured Claim has already been paid by the Debtor prior to the Effective Date or agrees to a less favorable treatment, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, each holder of an Allowed Trade Creditor Secured Claim shall receive Cash from the Sale Proceeds in the full amount of such Allowed Trade Creditor Secured Claim, as soon as reasonably practicable following the Debtor receiving the Sale Proceeds and the latest to occur of: (i) the Effective Date, (ii) the Distribution Date; (iii) the first Business Day after the date that is fourteen (14) Business Days after the date such Trade Creditor Secured Claim becomes Allowed; and (iv) a later date or dates agreed to by the Liquidating Trustee and the holder of the Allowed Trade Creditor Secured Claim.  Class 1 is Unimpaired, and therefore, the holders of Allowed Trade Creditor Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

**4.2**    **Class 2 – Allowed Town Claims.**  The Claims of the Town are comprised of the Secured Claim in the amount of $4,141,000 set forth in the Town's proof of claim [POC 90] and any other claims against the Debtor held by the Town (together, the "Town Claims").  In full satisfaction, settlement, release, extinguishment and discharge of the Town Claims, the Town shall receive payments consistent with the settlement agreements reached between the Debtor and the Town, which have been approved by the Bankruptcy Court [ECF Nos. 204 and 543], which

consists of: (i) a payment in the amount of $250,000 that the Town has already received in or around April 2019, and (ii) a second payment in the amount of $100,000 that will be provided within 6 days of the Sale Approval Order becoming final and non-appealable.  Class 2 is impaired, and therefore, the holder of the Town Claims in Class 2 is entitled to vote to accept or reject the Plan.

4.3     **Class 3 – Allowed Unsecured Claims.**  In full satisfaction, settlement, release, extinguishment and discharge of such Claim, each holder of an Allowed Unsecured Claim against the Debtor's Estate shall receive Distributions on a *pro rata* basis with the Holders of all Allowed Claims in this Class 3 from available cash on deposit from time to time with the Debtor and/or the Liquidating Trustee, up to the full amount of each Allowed Claim, from: (i) the remaining Sale Proceeds, after the payment in full of all Allowed Trade Creditor Secured Claims and the Allowed Town Claims, (ii) the Litigation Claims Proceeds, subject to the terms below, and (iii) the remaining funds, if any, in the Sale Proceeds Reserve, following the complete administration of the Case.  The foregoing Distributions shall be made as soon as reasonably practicable following the latest to occur of: (i) the Effective Date, (ii) the Distribution Date; (iii) the first Business Day after the date that is fourteen (14) Business Days after the date such Unsecured Claim becomes Allowed; and (iv) a later date or dates agreed to by the Liquidating Trustee and the holder of an Allowed Unsecured Claim.  The foregoing Distributions shall be made in accordance with the terms of the Confirmation Order, the Plan, and the Liquidating Trust Agreement; provided that, no Distribution shall be made to Holders of Unsecured Claims unless and until all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees, and all Allowed Claims in Classes 1 through 2 have been paid in full, reserved or otherwise resolved.  Class 3 is impaired, and therefore, the holders of the Claims in Class 3 are

entitled to vote to accept or reject the Plan. All Claims held by EB-5 Creditors constitute Unsecured Claims.

**4.4** **Class 4 – Equity Interests in the Debtor**. Class 4 are the Equity Interests in the Debtor. Holders of Class 4 Equity Interest will not receive or retain any property under the Plan. All holders of Equity Interests in the Debtor shall be extinguished on the Effective Date. The Debtor will not be soliciting votes from Class 4 Equity Holders and thus the holders of Class 4 Equity Interest are deemed to reject the Plan.

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.1** **Objections to Claims and Equity Interests**. Subject to further order of the Bankruptcy Court, the Debtor or the Liquidating Trustee, as applicable, may file objections to Claims when and as required by Rule 3007-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida or as provided by order of the Bankruptcy Court. The Debtor or Liquidating Trustee, as applicable, shall have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. The failure of any such party to object to any Claim for voting purposes shall not be deemed a waiver of such party's right to object to, or re-examine, any such Claim in whole or in part.

To the extent that an objection to a Claim is filed and remains unresolved as of the Effective Date, Distributions on such Disputed Claim or Disputed Equity Interest shall not be made unless and until a Final Order is entered allowing such Disputed Claim or portion thereof. The Debtor or Liquidating Trustee, as applicable, shall account for all Disputed Claims at such time as a Distribution is made under this Plan through the disputed claims fund (the "Disputed Claims Fund"). On and after the Effective Date, the Liquidating Trustee shall prosecute in the place of

the Debtor any and all outstanding objections to Claims.

      **5.2**    **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a Disputed Claim unless such Disputed Claim is Allowed as provided for in the Plan.

      **5.3**    **Establishment of Disputed Claims Fund**.  On the Effective Date of the Plan, or as soon thereafter as possible, the Liquidating Trustee shall establish the Disputed Claims Fund. Claims estimated by the Bankruptcy Court at $0 for all purposes in the Case are disallowed in their entirety and will not be accounted for in the Disputed Claims Fund.  The Debtor or Liquidating Trustee, as applicable, shall be responsible for making the Distributions to the Holders of Allowed Claims pursuant to the terms of the Plan, provided that the Disputed Claims Fund, if applicable, is maintained and includes sufficient funds to pay and reserve for all Post-Confirmation Administrative Claims, accruing interest on Disputed Claims, if any, and potential fees, costs, penalties or other charges against the Estate that could be incurred in connection with the allowance of a Disputed Claim to the extent permitted in such contract by and between the Debtor and Holder of the Disputed Claim.

      To the extent there exist as of the Effective Date any Disputed Claims in any Class, the Debtor or Liquidating Trustee, as applicable, shall cause Cash to be reserved from any Distribution in an amount equal to the portion of such Distribution to which such Disputed Claim would be entitled if Allowed in the amount asserted by the Holder of such Disputed Claim, inclusive of accruing interest on Disputed Claims, and potential fees, costs, penalties or other charges against the Estate that could be incurred in connection with the allowance of a Disputed Claim to the extent permitted in such contract by and between the Debtor and Holder of the Disputed Claim.  If a Disputed Claim is thereafter Allowed, in part or in full, then the Debtor or Liquidating Trustee, as applicable, shall, from Cash deposited into the Disputed Claims Fund allocable to such Claim,

distribute to the Holder of any such Claim an amount equal to such Holder's permitted share, based on such Allowed Claim, of all Distributions previously made to Holders of Allowed Claims in the Class of Claims at issue. The balance, if any, of the Cash reserved for such Disputed Claim, including in the event the Disputed Claim is disallowed in its entirety, shall be held by the Liquidating Trustee.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Executory Contracts entered into by the Debtor prior to the Petition Date, shall be treated as follows:

**6.1** **Assumption and Rejection**. The Debtor has sold substantially all of its hard Assets pursuant to the Sale Approval Order. The contracts not otherwise assumed, assumed and assigned, or rejected pursuant to §365 of the Bankruptcy Code in connection with the Sale of the Debtor's Assets shall be deemed rejected as of the Effective Date unless rejected by the Debtor sooner or otherwise subject to a pending motion to extend time to assume or reject. However, there shall be no rejection of the director and officer insurance policy, if any.

**6.2** **Rejection Claims**. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all such rejections hereunder as of the Effective Date. Any Claim for damages arising from any such rejection, which Claim is not otherwise already resolved in the Sale Approval Order or through a settlement between the Debtor and other party to the Executory Contract, must be filed by the earlier of (i) the date set forth in the Confirmation Order or other Final Order of the Bankruptcy Court, or (ii) within 30 days after the mailing of notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtor, the Debtor's Estate, the Liquidating Trust, the Liquidating Trustee, or any of the Assets

of the Debtor's Estate, and shall receive no Distribution under this Plan or otherwise on account of such Claim. All Allowed Rejection Claims shall be treated in Class 3.

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**7.1** **Execution of Liquidating Trust Agreement**. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee and all other necessary steps shall be taken to establish the Liquidating Trust which shall be for the benefit of the Liquidating Trust Beneficiaries, as provided in Section 4.3 of the Plan, whether or not they have Allowed Claims on or after the Effective Date. In the event there is a conflict between the terms of this Section and the terms of the applicable Liquidating Trust Agreement, the terms of this Section shall govern. The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

**7.2** **[Intentionally left blank]**

**7.3** **The Liquidating Trust**

**7.3.1** **Purpose of the Liquidating Trust.** The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust are to collect and liquidate the Assets, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust as Assets and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the Assets pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no

circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Assets.

7.3.2 **Liquidating Trust Assets.** The Liquidating Trust shall consist of the Liquidating Trust Assets after Distribution by the Debtor on the Effective Date. The Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code and any other applicable law. In connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust, such assets, including, without limitation, rights, Litigation Claims, and Causes of Action, shall vest in the Liquidating Trustee on the Effective Date solely in its capacity as such.

7.3.3 **Governance of the Liquidating Trust.** The Liquidating Trust shall be governed by the Liquidating Trustee according to the Liquidating Trust Agreement.

7.3.4 **The Liquidating Trustee.** The Liquidating Trustee shall mean, subject to Bankruptcy Court approval, Cary Glickstein, the Liquidating Trustee named to administer the Liquidating Trust, and all successor Liquidating Trustees. The Liquidating Trustee shall be deemed to have been appointed as the Estate's representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

7.3.5 **Role of the Liquidating Trustee.** In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, among other things, have the rights, powers and duties, subject to the limitations set forth in the

Liquidating Trust Agreement: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets, including investigating, prosecuting and resolving the Litigation Claims and Causes of Action belonging to the Liquidating Trust; (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Liquidating Trust Assets, including rights, Litigation Claims, Causes of Action, or litigation of the Liquidating Trust; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Liquidating Trust or the Debtor; (vi) in the Liquidating Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the applicable Liquidating Trust, and manage, control, prosecute and/or settle on behalf of the applicable Estate and/or Liquidating Trust Objections to Claims on account of which the Liquidating Trustee will be responsible (if Allowed) for making distributions under the Plan; (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and to implement the Plan; (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; (ix) to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtor's Assets; (x) to dispose of the books and records transferred to the Liquidating Trustee in a manner deemed appropriate by the Liquidating Trustee in accordance with applicable law; provided, however, that the Liquidating Trustee shall not

dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtor or its current or former officers or directors are a party without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order closing the Chapter 11 Case; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Liquidating Trust and execute any documents or pleadings related to the liquidation of the Liquidating Trust Assets or other matters related to the Liquidating Trust; (xiii) to establish and maintain bank accounts and terminate such accounts as the Liquidating Trustee deems appropriate; (xiv) to set off amounts owed to the Debtor against distributions to Liquidating Trust Beneficiaries; (xv) to bring suits or defend itself against such suits, if any, as the Liquidating Trustee determines in connection with any matter arising from or related to the Plan or the Liquidating Trust Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Beneficiaries; (xvi) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee; (xvii) to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Liquidating Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Liquidating Trust and are consistent with and are not contrary to the treatment of the Liquidating Trust as a "grantor trust" for United States federal income tax purposes; and (xviii) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust in furtherance of the purposes of the Liquidating Trust.  For the avoidance of doubt,

and without limitation of the foregoing, the Liquidating Trustee shall explicitly have the authority to: (i) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all Claims, Causes of Action, and Litigation Claims, including but not limited to, any and all director and officer claims; and (ii) file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Debtor or the Liquidating Trust, and request a prompt determination of such requests; and (iii) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all other Claims, Causes of Action, and Litigation Claims reserved in Article 8 of the Plan.

### 7.3.6   Liquidating Trustee's Tax Powers.

**(a)** Following the Effective Date, the Liquidating Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtor and the Liquidating Trust all tax returns, reports, certificates, forms or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

**(b)** For all taxable periods ending on or prior to the Effective Date, the Liquidating Trustee shall have full and exclusive authority in respect of all taxes of the Debtor, to the same extent as if the Liquidating Trustee were the Debtor in possession.

**(c)** In furtherance thereof, the Debtor shall execute on or prior to the Effective Date a power of attorney authorizing the Liquidating Trustee to take actions consistent with Section 7.4.6(a) and (b) of the Plan to the same extent as if the Liquidating Trustee were the Debtor.

**(d)** Following the Effective Date, the Liquidating Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise

relating to any taxes (i) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending on or prior to the Effective Date and (ii) of the Debtor to the same extent as the Debtor would otherwise be entitled with respect to any taxable period ending after the Effective Date.

(e) The Liquidating Trustee and the Debtor shall reasonably cooperate with one another, and shall cause their respective Affiliates, officers, employees, agents, auditors and other representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the Debtor. Any information obtained under this Section shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding.

(f) **Non-transferability of the Liquidating Trust Beneficial Interests.** The Liquidating Trust Beneficial Interests shall not be certificated and shall not be transferable or assignable except by will, intestate succession or operation of law.

(g) **Cash**. The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(h) **Distribution of the Liquidating Trust Assets**. The Liquidating Trustee shall make Distributions to the Holders of the Liquidating Trust Beneficiaries of all Cash on hand in accordance with the terms of the Liquidating Trust Agreement and the priorities set forth in this Plan (including any Cash received from the Debtor on the Effective Date)

except such amounts (i) as are retained by the Liquidating Trust on account of Disputed Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets) of the Liquidating Trust, the Liquidating Trustee, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Liquidating Trust or imposed on the Liquidating Trust in accordance with this Plan or the applicable Liquidating Trust Agreement.

(i) **Costs and Expenses of the Liquidating Trust.** The costs and expenses of the Liquidating Trust, and the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's professionals, United States Trustee fees, and the fees and expenses of maintaining the Disputed Claims Fund, shall be paid out of the Liquidating Trust Assets. Those professionals shall continue to file fee applications with the Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

(j) **Compensation of the Liquidating Trustee.** The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

(k) **Retention of Professionals by the Liquidating Trustee**. The Liquidating Trustee may retain and compensate attorneys and other professionals to assist in its duties as Liquidating Trustee on such terms (including on a contingency or hourly basis) as the

Liquidating Trustee deems appropriate without Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any professional that represented the Debtor or other parties in interest in this Chapter 11 Case. Those professionals shall continue to file fee applications with the Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

(l) **Federal Income Tax Treatment of the Liquidating Trust.** For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as: (A) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those Holders of Allowed Class 3 Claims and Holders of Disputed Claims receiving Beneficial Interests in the Liquidating Trust ("Liquidating Trust Beneficial Interests"), followed by (B) the transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for the applicable Liquidating Trust Beneficial Interests.

Accordingly, those Holders of Allowed Class 3 Claims and Holders of Disputed Claims receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and deemed owners of their respective share of the Liquidating Trust Case Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Notwithstanding the

foregoing, (i) in the event that any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, the United States federal income tax consequences shall be determined in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder; and/or (ii) in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidating Trust Assets transferred to the Liquidating Trust hereunder and shall not be deemed as grantors of the Liquidating Trust to the extent of such Disputed Claims, but rather shall be subject to United States federal income taxation in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

(m) **Tax Reporting.** The Liquidating Trustee shall file returns (including United States federal returns) for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with this Section. The Liquidating Trustee shall also annually (but not later than sixty (60) days following the end of each calendar year) send to each Holder of a Liquidating Trust Beneficial Interest a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct all such Holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial Holders with instructions to report such items on their United States federal income tax returns. The Liquidating Trustee shall also file (or cause to be

filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit. Notwithstanding the foregoing, in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims who, as of the Effective Date, are Holders of Disputed Claims shall, to the extent of such Disputed Claims, be subject to United States federal income taxation in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

(n) As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the Liquidating Trustee and the Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(o) In furtherance of the provisions of the Plan, the Liquidating Trust's taxable income shall be allocated annually among the Liquidating Trust Beneficiaries (including Holders of Disputed Claims ) and shall be determined in good faith by the Liquidating Trustee by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Holders of the Liquidating Trust Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the

Liquidating Trust shall be allocated in good faith by the Liquidating Trustee by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements, as determined in good faith by the Liquidating Trustee. Notwithstanding the foregoing, in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims who, as of the Effective Date, are Holders of Disputed Claims shall, to the extent of such Disputed Claims, be subject to United States federal income taxation in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.

(p) Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (A) timely elect to treat any Liquidating Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtor, and the Liquidating

Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(q) The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the trust or its assets, including the Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of the Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(r) The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Disputed Claims Reserve, or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust or the Debtor for all taxable periods through the dissolution of the Liquidating Trust.

(s) **<u>Dissolution and Duration</u>**. The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (a) the Assets have been reduced to Cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Liquidating Trust Beneficiaries to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Assets have been distributed to the Liquidating Trust Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a Final Decree closing the Chapter 11 Case has been entered; provided, however, that the Liquidating Trust shall

not remain in existence more than five years from the date of this Agreement, unless extended pursuant to the terms hereof. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking an extension of the term of the Liquidating Trust as necessary to the purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. Each extension must be approved by the Bankruptcy Court within six months of the beginning of the extended term with notice thereof to all Trust Beneficiaries. Notwithstanding the foregoing, the Liquidating Trust shall in no event remain in existence for more than twenty-one years from the Effective Date.

(t) **Indemnification of Liquidating Trustee and Liquidating Trust Professionals; Bond and Insurance**. The Liquidating Trustee and the Liquidating Trustee's attorneys, employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that person's or entity's or the Liquidating Trustee's actions or inactions regarding the implementation or administration of this Plan, the Liquidating Trust or the Liquidating Trust Agreement or the discharge of their duties

hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Liquidating Trustee and the other parties entitled to indemnification under this section, to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, including but not limited to the Sale Proceeds Reserve, or any applicable insurance coverage. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing or verbally. Notwithstanding the foregoing, the Liquidating Trustee shall not be under any obligation to consult with his retained professionals, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida. For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, its agents, representatives, employees or independent contractors whether as a named insured on the Trustee's policies or otherwise, including, but not limited to, coverage with respect to (a)

appropriate directors and officers/trustee liability insurance,(b) any property that is or may in the future become the property of the Liquidating Trust and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the Liquidating Trust.  The foregoing bond shall be subject to approval by the Court.  Such bond shall be subject to discharge and release upon an appropriate motion and order from the Court upon the Liquidating Trustee's resignation, death or removal, or for other cause.

       7.3.7 **Cancellation and Termination of Existing Agreements and Interests.** Except as otherwise provided in the Plan, on the Effective Date, all certificates, notes, securities, equity interests, and any and all other instruments evidencing any Claim or Interest against or in the Debtor, shall be deemed automatically cancelled and terminated as permitted by section 1123(a)(5)(F) of the Bankruptcy Code without further act or action under any applicable agreement, law, regulation, order or rule; provided, however, that the Interests and any and all other instruments evidencing any Claim or Interest against or in the Debtor shall continue in effect solely for the purposes of (i) allowing a Holder of an Allowed Claim of Interest to receive their distributions under the Plan (if any), (ii) enforcing the terms of the subordination provisions in any such Claim or Interest, (iii) allowing the Liquidating Trustee to make the distributions, if any, on account of Allowed Claims or Interest, (iv) allowing the Liquidating Trustee to perform any necessary administrative functions with respect to the distributions (if any) to be made on account of Allowed Claims and Interests.

       7.3.8 **Settlement of Claims.** Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution, and resolution of Claims or Interests, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute

a good-faith compromise and settlement of all Claims, Interests, or controversies resolved pursuant to the Plan. All Plan Distributions made to Creditors holding Allowed Claims or Interests in any Class are intended to be and shall be final and, except as otherwise provided in Article 4, no Plan distribution to a Holder of a Claim or Interest in one Class shall be shared with or reallocated to the Holders of any Claim or Interest in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency claim.

**7.3.9** **Resignation, Death or Removal of the Liquidating Trustee.** The Liquidating Trustee may resign at any time; provided, however, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed in accordance herewith, which motion shall be on notice to the top twenty (20) Creditors holding Allowed Claims and the Office of the United States Trustee. The Office of the United States Trustee or any party in interest, by motion filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Liquidating Trustee for cause, including under Section 324 of the Bankruptcy Code, or, if Section 324 is deemed inapplicable, then for the same reasons that would otherwise suffice under Section 324, for the violation of any material provision of the Plan, or in the event the Liquidating Trustee becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately). In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform his duties hereunder until such a time as a successor is approved by a Final Order

of the Bankruptcy Court. In the event the Liquidating Trustee resigns or is removed, the Liquidating Trust Beneficiaries, shall have 90 days to select a successor Liquidating Trustee by filing a motion with the Bankruptcy Court. If the Liquidating Trust Beneficiaries do not select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor.

**7.3.10** **Preservation of Causes of Action.** The Plan provides that, on behalf of the Liquidating Trust, the Liquidating Trustee shall have the right to prepare, file, pursue, prosecute and settle the Claims, Causes of Action and Litigation Claims whether or not such Claims, Causes of Action and Litigation Claims have been asserted or commenced as of the Effective Date, as a representative of the estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code appointed for such purpose for the benefit of Holders of Allowed Claims as set forth in the Plan and Confirmation Order. To the extent that certain Claims, Causes of Action and Litigation Claims are filed by the Debtor and are not resolved prior to the Effective Date, such Claims, Causes of Action and Litigation Claims will be transferred to and vest in the Liquidating Trust pursuant to the terms of the Plan. The Claims, Causes of Action and Litigation Claims, which are all specifically preserved, include specifically the following:[1]

a. Any and all claims and causes of action, including Causes of Action and Litigation Claims, under state or federal law against any and all of the director and officers, including present and former officers, directors, shareholders, principals, employees,

---

[1] Notwithstanding the specificity of the claims and causes of action described herein, nothing in the Plan or Disclosure Statement will limit or restrict in any way the rights of the Liquidating Trustee in connection with pursuing any and all Claims, Causes of Action and Litigation Claims pursuant to the terms of the Plan.

agents and affiliates of, the Debtor and of any affiliates of the Debtor, and any professionals employed by the Debtor, including accountants, auditors and lawyers, including without limitation, in any way related to, including providing aid and assistance in connection with: (i) the operation, management, funding and fund raising of the Debtor against any director and officer, including without limitation, breach of fiduciary duty, negligence, negligent management, fraud, civil theft, civil RICO or conspiracy, conversion, alter ego, misrepresentation, professional malpractice, corporate advantage, theft of corporate opportunities, wasting of corporate assets, equitable subordination of claims, breach of contract and federal or state statutory claims (including securities laws violations), as well as aiding and abetting any of the above; (ii) the sale, transfer, exchange or disposition of any property of the Debtor or any of its affiliates, or any preferred stock, common stock or equity or similar interest or securities therein, either prior to or after the Petition Date; or (iii) the conversion, misappropriation or misapplication of property of the Debtor or any of its affiliates or any products or proceeds therefrom.

b.      Any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor or the estate, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estate of the Debtor under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for

avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtor; (xi) against any and all former officers and directors of the Debtor, including for breach of fiduciary duty or improper distributions; (xii) under and pursuant to any policies of insurance maintained by the Debtor, including without limitation, the directors' and officers' liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; and (xvii) against any lender of the Debtor related in any way to the lending relationship with the Debtor, and further including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtor, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of

mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; and (xviii) all claims against any Person with any connections with or to the Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, federal law or state law, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

      c.     Any and all claims and causes of action involving or in any way related to the collection of accounts receivables, notes receivables, loans receivables or other receivables owed to the Debtor.

      d.     Any and all claims and causes of action seeking to subordinate, equitably or otherwise, Claims filed against the Estate, or to re-characterize such Claims as Equity Interests in the Debtor.

**7.4**    **Sale Proceeds**.  The sale proceeds held in escrow pursuant to the Post-Closing Agreement shall be released by the escrow agent to the Debtor or Litigation Trust on the date the United States Court of Appeals for the Eleventh Circuit issues its mandate affirming the Sale Approval Order entered by the Bankruptcy Court in the Case on March 12, 2019 or dismissing the appeal of such Sale Approval Order.

## ARTICLE VIII

## POST-CONFIRMATION LITIGATION

**8.1**    **Transfer and Enforcement of Litigation Claims and Causes of Action.**
Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, the Liquidating Trustee will have the exclusive right to investigate and

determine the appropriateness of enforcing any and all Causes of Action against any Entity and rights of the Debtor that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever, including but not limited to all avoidance powers granted to the Debtor under the Bankruptcy Code and all Causes of Action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code. Further, the Liquidating Trustee shall have the exclusive right to prosecute and enforce any Litigation Claims as defined in Article 1. The Claims that may be pursued post-Confirmation including Avoidance Actions (described below) and Claims against certain of the Debtor's insiders and their related or affiliated entities, include without limitation the following:

**8.1.1** Any and all director and officer claims, which includes claims or causes of action against the directors and officers. Specifically, and provided those Claims are recognized claims under the Code and/or Florida law, director and officer claims, but are not limited to, alleged breaches of fiduciary duty of the Debtor's former officers and directors. The Liquidating Trustee may also pursue Claims against any professionals, advisors, consultants, or other Persons who may have assisted such former officers in the misconduct that gives rise to such claims, as either principal tortfeasors or under an aiding and abetting theory, provided those Claims are recognized claims under the Code and/or Florida law.

**8.1.2** In addition to any state law and federal law claims outlined above, the Liquidating Trustee may pursue preferential and/or fraudulent transfer claims against persons or entities for avoidance and recovery of certain prepetition transfers made to such

Persons by the Debtors, and such claims shall be preserved for the benefit of the Estate and the Liquidating Trust.

**8.2** Reserved to the Liquidating Trustee shall also be the right to prosecute any available Causes of Action and Objections to Claims, and such rights shall be preserved for the benefit of the Estate and the Liquidating Trust.

**8.3** The Debtor is currently investigating causes of action that may commenced and pursued pre- and post-confirmation against, among others, the Debtor's current and former officers and directors, the Debtor's current and former management, the recipients of payments made by the Debtor in the ninety days preceding the bankruptcy filing as listed on the Debtor's currently filed amended schedules and statement of financial affairs, or any subsequent amendments thereto, and the recipients of payments made by the Debtor in the one year period preceding the bankruptcy filing to insiders of the Debtor as listed on the Debtor's currently filed amended schedules and statement of financial affairs, or any subsequent amendments thereto.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**9.1 Conditions to the Effective Date**. The Plan shall not become effective and the Effective Date shall not occur unless and until:

**9.1.1** The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor;

**9.1.2** The Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code; and

**9.1.3** All documents, instruments and agreements, in form and substance reasonably satisfactory to the Debtor, provided for under this Plan or necessary to

implement this Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

## ARTICLE X

## EFFECT OF CONFIRMATION

**10.1**    **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

**10.2**    **Compromise and Settlement**. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, its Estate and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Court pursuant to Bankruptcy Rule 9019.

**10.3**    **No Discharge of Debtor**. Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor; provided, however, that no holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

**10.4    Final Decree as to Debtor**. Upon substantial consummation of the Plan, the Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**10.5    Exculpation of Fiduciaries and Estate Professionals**. **The Confirmation Order shall provide that (a) Cary Glickstein, (b) the Liquidating Trustee, and (c) professionals employed by the Debtor, the Liquidating Trustee, or the Liquidating Trust, shall neither have nor incur any liability to any person or entity, excluding the Debtor, Liquidating Trust, and Liquidating Trustee, for any and all claims and causes of action arising on or after the Petition Date up through the time this case is closed, involving or relating to any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, or administering the sale of property of the estate, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the administration of the estate; provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any person that results from any such act or omission that is determined to have constituted gross negligence, willful misconduct, or fraud; provided further, that nothing contained in the Confirmation Order shall preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.**

**10.6    Injunction. The Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor**

are, with respect to any such Claims or Equity Interests, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Liquidating Trustee, or the Liquidating Trust or any of its property, including property of the Estate transferred to the Liquidating Trust pursuant to the Plan; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, order, or encumbrance of any kind against the Liquidating Trustee, the Liquidating Trust or any of its property, including property of the Estate transferred to the Liquidating Trust pursuant to the Plan; (iii) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, or any of its property, except as contemplated or allowed by the Plan; (iv) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Liquidating Trustee, or the Liquidating Trust or any of its property, including property of the Estate transferred to the Liquidating Trust pursuant to the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; **provided, however**, that nothing in the Plan or Confirmation Order shall constitute a waiver of any rights or defenses of such persons with respect to such actions, **provided, further**, that such injunction shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan; **provided, furthermore**, that nothing

contained in the Plan or Confirmation Order shall preclude the IRS from pursuing an action against any entity, or preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.

While such exculpatory provisions and injunctions are effective against all persons, by accepting Distributions pursuant to the Plan, each holder of an Allowed Claim shall be deemed to have specifically consented to the Injunctions set forth herein.

Nothing herein shall be construed as enjoining any party's prosecution or defense of any appeal of any order entered by the Court in this Case.

10.7    **Indemnification Obligations**. Except unless expressly provided in any Order of the Court, any and all indemnification obligations in favor of the Debtor pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be deemed not rejected as of the Effective Date, and shall remain in full force and effect.  In addition, and so as not to limit the preceding sentence all rights, if any, of the Debtor and any persons who are insured under the director and officer insurance policy and the Estate in and to any of the Debtor's insurance policies hereby are expressly reserved and are not limited in any way by the Plan.

All other obligations that the Debtor has pursuant to a contract, instrument, agreement, shall be deemed rejected as of the Effective Date unless expressly preserved herein.

10.8    **Terms of Injunctions or Stays**. Unless otherwise provided in the Plan or an Order of the Court, all injunctions or stays provided for in this Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.

# ARTICLE XI

## CRAM DOWN AND MODIFICATION

**11.1** **Utilization of Cramdown.** If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8), are found to have been met with respect to the Plan, the Debtor may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the cramdown provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Code.

**11.2** **Modification of Plan.** The Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation with the leave of the Bankruptcy Court upon notice to parties entitled to receive the same. After confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the Distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

## ARTICLE XII

## **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date, and the transfer of the Post Confirmation Debtor Assets to the Liquidating Trustee, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     determine all controversies and disputes arising under or in connection with the Plan and the Debtor's Estate, including but not limited to, all Litigation Claims.

(b)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Equity Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim or Equity Interest pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Equity Interest (to the extent permitted under applicable law);

(c)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for services provided on or before the Effective Date, and after the Effective Date;

(d)     hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date, including the proceedings with respect to the rights and Claims of the Liquidating Trust to recover property under Sections 542, 543 or 553 of the Bankruptcy Code, or to bring any Litigation Claims, or otherwise to collect or recover on account of any Claim or Litigation Claim;

(e)     determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any of the Debtor is a party or with respect to which the Debtor or the Debtor's Estate may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)      ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to Distributions to Holders of Allowed Claims and/or Allowed Equity Interests pursuant to the provisions of this Plan;

(g)      construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, indentures and other agreements or documents that are part of the Liquidating Trust;

(h)      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all Exhibits to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(i)      consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

(j)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)      determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in this Plan;

(m)      hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(n)      continue to enforce the automatic stay through the date of the final Distribution hereunder;

(o)      hear and determine: (i) disputes arising in connection with the interpretation, implementation or enforcement of this Plan and the Confirmation Order; or (ii) issues presented or arising under this Plan and Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan or the Confirmation Order, or mentioned in the Plan;

(p)  shorten or extend, for cause, the time fixed for performance of any act or thing under this Plan or the Confirmation Order, on notice or *ex parte*, as the Bankruptcy Court shall determine to be appropriate;

(q)  enter any order, including injunctions, necessary to enforce the title, rights and powers of the Liquidating Trust and the Liquidating Trustee, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(r)  review any action taken or not taken by the Liquidating Trustee and to appoint a successor Liquidating Trustee, if necessary;

(s)  adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan or the Confirmation Order and all other matters contained herein;

(t)  enter a Final Decree closing the Chapter 11 Case or converting the case to a Chapter 7 case; and

(u)  enter any orders necessary to effectuate the Confirmation Order and the Plan.

## ARTICLE XIII

## MISCELLANEOUS

**13.1    Allowed and Disallowed Claims**. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for Distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

**13.2    Headings**. Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

**13.3    Defects, Omissions and Amendments**. This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code and as set forth in Article XI herein and Article XI of the Disclosure Statement.

**13.4    Governing Law**. Except to the extent that the Bankruptcy Code or Florida

Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

**13.5    Severability**. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

**13.6    Regulatory Approval.** No regulatory approval is necessary for the confirmation of this Plan.

**13.7    Revocation of the Plan**. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (b) constitute an admission of any fact or legal conclusion by the Debtor or any other Entity; or (c) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

**13.8    No Admissions**. If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Debtor with respect to any matter set forth herein or therein including, without limitation, liability on any Claim or the propriety of any Claims classification.

**13.9    Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, Liquidating Trustee, successor or assign of such Entity.

**13.10    Exemption from Certain Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in

relation to this Plan, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, in connection with a transfer of any sale or transfer of any Asset, including but not limited to real property owned by the Debtor, shall not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax. Any sale of any Asset occurring after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

     **13.11  Defenses with Respect to Unimpaired Claims**. Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

     **13.12  Entire Agreement**. This Plan sets forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents. The Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein.

     **13.13 Notices**. Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

          **If to Debtor:**

          Cary Glickstein, as Manager
          1118 Waterway Lane
          Delray Beach, FL 33483
          Tel 561-279-8952
          cg@ironwoodproperties.com

          cc:

Philip J. Landau, Esq.
Shraiberg, Landau & Page, P.A.
2385 N.W. Executive Center, Dr., Suite 300
Boca Raton, Florida 33431
Tel 561-443-0800
plandau@slp.law

The Plan is respectfully submitted by:

160 Royal Palm, LLC

By: _____

CARY GLICKSTEIN, MANAGER



SHRAIBERG, LANDAU & PAGE, P.A.
*Attorneys for the Debtor*
2385 N.W. Executive Center, Dr., Suite 300
Boca Raton, Florida 33431
Tel 561.443.0800

By: /s/ *Philip J. Landau*
       Philip J. Landau, Esq.
       Florida Bar No. 504017
       plandau@slp.law
       Eric Pendergraft, Esq.
       Florida Bar No. 91927
       ependergraft@slp.law

# Exhibit 1

# LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT ("**Agreement**"), dated as of this 1st day of August, 2019, is by and among 160 Royal Palm, LLC, as a debtor and debtor-in-possession (the "**Debtor**") and Cary Glickstein, individually, the liquidating trustee (the "**Liquidating Trustee**") appointed under and pursuant to the *Debtor's Amended Plan of Liquidation* (the "Plan")*,* as may be amended by the *Order Confirming Debtor's Plan of Liquidation*, dated _____, _____, 2019 (the "**Confirmation Order**") (collectively the Plan and Confirmation Order shall hereinafter be referred to as the "**Plan**.").

## WITNESSETH:

**WHEREAS**, the Debtor filed a voluntary relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") in a bankruptcy case (Case No. 18-19441-EPK) (the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), and the Debtor's Plan has been confirmed;

**WHEREAS**, the Bankruptcy Court has approved the Plan under Chapter 11 of the Bankruptcy Code to provide for the creation of a liquidating trust, as described herein, and the transfer of assets as described herein;

**WHEREAS**, the Plan provides for the creation of a grantor trust for the benefit of the Liquidating Trust Beneficiaries (as defined herein) under and pursuant to the terms of the Plan;

**WHEREAS**, this Agreement is executed by the parties hereto in order to establish a liquidating trust, which trust is to be known as the "160 Royal Palm Liquidating Trust" (the "**Liquidating Trust**"), in accordance with Treasury Regulation Section 301.7701-4(d), whose primary purpose is to provide a mechanism for the liquidation of the assets of the Estate,[1] and to distribute the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and

---

[1] Capitalized terms not defined herein shall have the definitions provided for in the Plan or Confirmation Order.

obligations of the Liquidating Trust, to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan, and not to continue or engage in the conduct of any trade or business, except to the extent necessary to accomplish the liquidation of assets of the Estate (as defined herein);

**WHEREAS**, the corpus of the Liquidating Trust and all income earned thereon remaining after the satisfaction of all trust expenses and liabilities shall be used solely for the purpose of discharging the legal obligations of the Debtor;

**WHEREAS**, the parties to this Agreement desire that the Liquidating Trust created pursuant to this Agreement qualify as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) and that on qualification, the Liquidating Trust shall be taxed as a "grantor trust" under and in accordance with the relevant provisions of the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**" or "**I.R.C.**") and the Treasury Regulations pertaining thereto, except as otherwise provided for United States federal income tax purposes in the event that (i) any portion of this Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, or (ii) the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims/Equity Interests Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.

**NOW, THEREFORE**, in consideration of the premises and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the terms and conditions of this Agreement and the Plan, the Debtor and the Liquidating Trustee have executed this Agreement for the sole benefit of the Liquidating Trust Beneficiaries and no other party as follows:

## ARTICLE I GRANT, ACCEPTANCE, NAME, AND DEFINITIONS

**1.1** **Grant.** (i) The Debtor hereby grants, assigns, transfers, conveys, delivers, delegates and sets over the Assets (as defined herein) to the Liquidating Trustee to be held in trust for the benefit

of the Liquidating Trust Beneficiaries and subject to the terms and provisions set out below and in the Plan. Additionally, the Estate irrevocably grants, assigns, transfers, conveys, delivers, delegates and sets over to the Liquidating Trustee all of the authority, rights, powers and duties previously vested in the Debtor under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, the power to bring, defend or settle all claims, charges and litigation to which the Estate is or hereafter may become subject. To the extent that any law, regulation or contractual provision prohibits the transfer of ownership of any of the Assets from the Estate to the Liquidating Trust or the Liquidating Trustee, or if for any reason the Estate shall retain or receive at any point any property which is included in, or intended under the Plan and this Agreement to be included in, the definition of Assets, then the Estate shall and is hereby deemed to hold such property (and any proceeds or products thereof) in trust for the Liquidating Trust Beneficiaries of the Liquidating Trust and shall promptly notify the Liquidating Trustee of the existence of such property and shall promptly take such actions with respect to such property as the Liquidating Trustee shall direct in writing. It is intended that the Assets transferred pursuant to this Section 1.1 shall provide the Liquidating Trust Beneficiaries with distributions on account of their Allowed Claims or Allowed Equity Interests pursuant to and in accordance with the Plan.

(ii)   This transfer will be treated for federal income tax purposes as a deemed transfer by the Debtor to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Trust, in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684. The taxation of the deemed transfers from the Debtor to the Beneficiaries will be treated as if the Debtor distributed the Assets to the Beneficiaries in liquidation of their interests in the Debtor under IRC §§731 and 736.

(iii)   The Liquidating Trustee hereby accepts the Assets and the Liquidating Trust created hereunder, subject to the terms and provisions set out below and, in the Plan, on behalf of and for the benefit of the Liquidating Trust Beneficiaries.

**1.2**    __Name__.  The trust created pursuant to the terms hereof shall be known as the "160 Royal Palm Liquidating Trust" and shall be referred to herein as the "Liquidating Trust."

**1.3**    __Certain Terms Defined__.  For all purposes of this Agreement, the capitalized terms used herein shall have the following meanings:

(i)  "Agreement" shall mean this Liquidating Trust Agreement as originally executed and as it may from time to time be amended pursuant to the terms hereof;

(ii)  "Assets" or "Liquidating Trust Assets" means all Assets of the Estate, which Liquidating Trust Assets are proposed to be transferred to and vested in the Liquidating Trust under and in accordance with the terms of the Plan on the Effective Date.  Liquidating Trust Assets shall include all property and belongings of the Debtor not previously sold to Purchaser, including all property as may have been created by virtue of the Bankruptcy Code, and expressly includes all Post Confirmation Debtor Assets, all other unencumbered property of the Debtor, all property of the Committees in this Chapter 11 Case, as well as all other Causes of Action, all Litigation Claims, and the rights to prosecute, enforce and settle same;

(iii)  "Alternate" shall have the meaning set forth in Section 12.2 of this Agreement;

(iv)  "Disputed Claims Fund" as  soon  as  practicable  following  the  entry  of  the Confirmation Order, the Liquidating Trustee shall establish the Disputed Claims Fund. The Liquidating Trustee shall be responsible for making the Distributions to the  Holders of Allowed Claims pursuant to the terms of the Plan, provided that the  Disputed Claims Fund, if applicable, is maintained and includes sufficient funds  to pay and reserve for accruing interest on Disputed Claims, and potential fees, costs, penalties or other charges against the Estate that could be incurred in connection with the allowance of a Disputed Claim to the extent permitted in  such contract by and between the Debtor and Holder of the Disputed Claim.  Claims estimated by the Bankruptcy Court at $0 for all purposes in the Bankruptcy Case are disallowed in their entirety, are not Disputed

Claims, and are not entitled to any distributions under the Plan.

(v)   "Distribution Record Date" means a date selected by the Liquidating Trustee preceding each distribution date (other than the initial distribution date), as the record date for determining the holders of Allowed Claims entitled to participate in the distribution on such distribution date;

(vi)  "Effective Date"  shall be described in the Confirmation Order and shall be the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan occurs.

(vii)  "Estate" means the bankruptcy estate of the Debtor;

(viii)  "Liquidating Trust" shall have the meaning set forth in Section 1.2 hereof;

(ix)  "Liquidating Trust Beneficiaries" or "Beneficiaries" means the Holders of Allowed Claims who have not received complete payment as provided for under the Plan as of the Effective Date and Holders of any Disputed Claims provided for in the Disputed Claims Fund. Holders of Claims that have been estimated by the Bankruptcy Court at $0 for all purposes in the Bankruptcy Case are not Liquidating Trust Beneficiaries.

(x)   "Liquidating Trustee" shall mean, subject to Bankruptcy Court approval, Cary Glickstein, individually, the Liquidating Trustee named to administer this Liquidating Trust, and all successor Liquidating Trustees;

(xi)  "Material Action" shall mean any action proposed to be taken, or proposed not to be taken, by the Liquidating Trustee under the authority vested in him under this Agreement to the extent such action or inaction could or would have a material effect on the Liquidating Trust, the Liquidating Trust Assets or the Liquidating Trust Beneficiaries. The Material Actions shall include, without limitation, (a) the retention or dismissal of professionals by the Liquidating Trustee, on behalf of the Liquidating Trust, or modification of the terms of any such retention, (b)

any decision regarding abandonment of any Asset with a value the Liquidating Trustee determines, in his sole discretion, has a value in excess of $100,000, (c) the prosecution of any Litigation Claims (including the appeal of any adverse judgment entered in connection therewith), (d) the settlement of any Litigation Claims (including whether the Liquidating Trustee should seek Bankruptcy Court approval of any such settlement pursuant to Bankruptcy Rule 9019), (e) the sale of any Litigation Claims, and (f) any transaction in excess of $100,000 that is not specifically set forth in the Plan. For the avoidance of doubt, any act in compliance with the terms of the Plan, and entry into any transaction less than $100,000 shall not be a material action.

(xii) "Post Confirmation Debtor Assets" shall means all Assets belonging to the Debtor and Property of the Estate as of the Confirmation, including, without limitation, all Causes of Action and Litigation Claims.

(xiii) "Sale Proceeds Reserve" as soon as practicable following the entry of the Confirmation Order, the Liquidating Trustee shall establish the Sale Proceeds Reserve and in the amount of $1,000,000 from the proceeds received from the sale of certain of its Assets as approved by the Sale Approval Order, which amount shall be reserved for the payment of allowed professional fees and expenses, and any other allowed Post-Confirmation Administrative Claims, that arise after the Confirmation Hearing, which amounts shall be provided for, and any remaining amounts will be disbursed as needed for the foregoing claims, fees and expenses, pursuant to the terms of the Plan and Confirmation Order.

To the extent there exist as of the Effective Date any Disputed Claim, if applicable, the Liquidating Trustee shall cause Cash to be reserved from any distribution in an amount equal to the amount or *pro rata* portion of such distribution to which such Disputed Claim would be entitled if allowed in the amount asserted by the Holder of such Disputed Claim, inclusive of potential fees, costs, penalties or other charges against the Estate that could be incurred in

connection with the allowance of a Disputed Claim to the extent permitted in such contract by and between the Debtor and Holder of the Disputed Claim. If a Disputed Claim is thereafter allowed, in part or in full, then the Liquidating Trustee shall, from Cash theretofore deposited into the Disputed Claims Fund distribute to the Holder of any such Claim an amount equal to such Holder's payment or *pro rata* share, based on such Allowed Claim and the terms of the Plan, of all distributions previously made to Holders of Allowed Claim in the Class of Claim at issue. The Liquidating Trustee shall hold the balance, if any, of the Cash reserved for such Disputed Claim, including in the event the Disputed Claim is disallowed in its entirety. Notwithstanding any other provisions of the Plan, to the extent an Claim Holder is entitled to a partial distribution on account of its interest, the Claim Holder will receive an undisputed distribution, regardless of the outcome of a pending objection to its Claim, the Liquidating Trustee, as applicable, may make a partial distribution of such undisputed portion of such Claim prior to entry of a Final Order on the Claim.

     **1.4  Other Definitions.**  All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**ARTICLE II NATURE OF TRANSFER**

     **2.1**     <u>**Purpose of Liquidating Trust**</u>.  The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust are to collect and liquidate the Assets, pursue those claims and causes of actions transferred to, and vested in, the Liquidating Trust as Assets and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the Assets pursuant to the terms of the Plan. Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or in the Plan or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Assets.

     **2.2**     <u>**Representative of the Estate**</u>.  If and to the extent the conveyance or assignment of any of the Litigation Claims to the Liquidating Trust would preclude or impair the prosecution

thereof by the Liquidating Trustee under the Bankruptcy Code or otherwise, then the Liquidating Trust is intended to and shall be deemed to be a "representative of the Estate" approved to retain and enforce such Litigation Claims pursuant to 11 U.S.C. §§ 1123(b)(3)(A) and (3)(B).

**2.3    Grantor Trust.** The Liquidating Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust in favor of the Liquidating Trust Beneficiaries pursuant to the relevant provisions of the Code and the Treasury Regulations pertaining thereto; and (ii) to comply with the requirements of a liquidating trust as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684, except as otherwise provided for United States federal income tax purposes in the event that (A) any portion of this Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, or (B) the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.  Subject to the immediately preceding sentence, the Liquidating Trustee is hereby authorized and directed: (i) to take any and all actions necessary to maintain the Liquidating Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45 and as a "grantor trust" under and in accordance with the relevant provisions of the Code and Treasury Regulations pertaining thereto unless otherwise required; and (ii) to take any and all actions permitted or required to be taken by the Liquidating Trustee pursuant to this Agreement and the Plan.

**2.4    Liabilities of the Debtor.** The Liquidating Trustee, solely for and on behalf of the Liquidating Trust, shall utilize all or such part of the Assets as may be necessary to, and shall, pay any and all Allowed Claims in the Debtor and all Disputed Claims  in the Debtor in accordance with and pursuant to the terms of the Plan.

**2.5    Court Approval Not Required.** The Liquidating Trustee shall, subject to the terms

of this Trust Agreement or the Plan, be empowered to exercise all rights and powers granted to the Liquidating Trustee in this Agreement without need of further Bankruptcy Court approval.

## ARTICLE III BENEFICIARIES

**3.1** **Rights of Beneficiaries.** Each Liquidating Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Liquidating Trust Beneficiary hereunder. The interest of each Beneficiary in the Liquidating Trust is hereby declared and shall be in all respects personal property of such Beneficiaries and upon the death of an individual Beneficiary, his or her interest shall pass to his or her legal representative and such death shall not terminate the Liquidating Trust or otherwise affect the validity of this Agreement. Each Beneficiary shall have the rights with respect to the Assets as are provided by this Agreement and the Plan.  No widower, widow, heir, or devisee of any person who may be a Beneficiary shall have any right of power, homestead, inheritance, or partition, or any other right, statutory or otherwise, in any property whatsoever forming a part of the Assets, but the whole title to all the Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Agreement.

**3.2** **Transfer of Interests of Beneficiaries.** No interest of a Beneficiary may be transferred either by the Beneficiary or by a duly authorized agent or attorney, or by the properly appointed legal representatives of the Beneficiary except as otherwise provided for by the Plan and in accordance with Bankruptcy Rule 3001. In the event of any such transfer, the transferee shall take and hold such interest subject to the terms and provisions of this Trust Agreement and shall give prompt written notice of such transfer to the Liquidating Trustee. The Liquidating Trustee shall not be liable to any transferee of an interest of a Beneficiary for any distributions provided for hereunder unless such transfer is valid under the terms of the Plan and in accordance with Bankruptcy Rule 3001 and until the Liquidating Trustee receives written notice of such transfer together with

appropriate assignment and transfer documents signed by the applicable Beneficiary.

**3.3** **Beneficiary Information.** The Liquidating Trustee may rely upon information relating to each Beneficiary as it appears in the books and records of the Liquidating Trust upon the Distribution Record Date. As of the close of business on the date the Confirmation Order is entered there shall be no further changes in the record Holders of Equity Interests. The Liquidating Trustee shall have no obligation to recognize any transfer of any such Interests occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes with only those Holders of record as of the close of business on the Distribution Record Date.

**3.4** **Certification of Interests.** The Liquidating Trustee shall not be required to issue certificates or other instruments representing or evidencing the interests of the Beneficiaries in the Liquidating Trust, but nothing contained herein shall prohibit him from doing so.

## ARTICLE IV DURATION OF ASSETS

**4.1** **Duration.** The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (a) the entirety of the Assets have been reduced to cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Beneficiaries of the Liquidating Trust to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Assets have been distributed to the Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a final decree closing the Bankruptcy Case has been entered; provided, however, subject to the immediately succeeding sentence, the Liquidating Trust shall not remain in existence more than five years from the date of this Agreement. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking an extension of the term of the Liquidating Trust as necessary to the

purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. The Bankruptcy Court must approve each extension within six months of the beginning of the extended term with notice thereof to all Liquidating Trust Beneficiaries. Notwithstanding the foregoing, the Liquidating Trust shall in no event remain in existence for more than twenty-one years from the date of this Agreement.

## ARTICLE V ADMINISTRATION OF LIQUIDATING TRUST ESTATE

**5.1    Right and Powers.**  The Liquidating Trustee shall have all rights and powers of a trustee under section 1106 and 704 of the Bankruptcy Code and, in accordance with section 1123(b) of the Bankruptcy Code, and as set forth in the Plan, and shall be designated and serve as the sole representative of the Debtor's Estate.  Subject to the terms of the Plan and this Agreement, the Liquidating Trustee may, at such times and in such manner as he may deem appropriate, transfer, assign, or  otherwise dispose of all or any part of the Assets.

**5.2    Payment of Interest to Beneficiaries.**  The Liquidating Trustee shall hold the Assets without provision for or the payment of interest to any Beneficiary except to the extent provided for under the Plan.

**5.3    Payment of Claims, Expenses, and Liabilities and the Reserve Amounts**.  The Liquidating Trustee shall pay from the Assets all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, whether civil or otherwise, and all liabilities and obligations which the Liquidating Trustee, on behalf of the Liquidating Trust, has specifically assumed and agreed to pay pursuant to the terms of this Agreement, including any post-confirmation claims arising from the administration of the Liquidating Trust, together with such transferee liabilities  which the Liquidating Trust may be obligated to pay as transferee of the Assets, including among  the foregoing, and without limiting the generality of the foregoing, interest, taxes, assessments,  and public charges of every kind and nature and the costs, charges, and expenses connected with  or  growing  out  of

the execution or administration of this Liquidating Trust and such other payments and disbursements as are provided in this Agreement or which may be determined to be a proper charge against the Assets by the Liquidating Trustee or by any court of competent jurisdiction. In addition, the Liquidating Trustee may, pursuant to the terms of the Plan, make provision or reserve out of the Assets to meet present or future claims, expenses and liabilities of the Liquidating Trust, whether fixed or contingent, known or unknown.

   **5.4**  **Federal Income Tax Information.** By the annual tax return filing due date including extension, if applicable, the Liquidating Trustee shall mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, gain, loss, deductions and credits for federal income tax purposes in accordance with §§1.671-4(a) and 1.671-4(b)(3) of the United States Treasury Regulations. The Liquidating Trustee shall not be required to report such tax information to any Beneficiary unless such Beneficiary provides to the Liquidating Trustee a complete form W-9 or acceptable substitute signed under penalty of perjury. In determining each Beneficiary's share of income, gain, loss, deductions and credits, the Liquidating Trustee shall not allocate such items to any Beneficiary who is the Holder of an Equity Interest, which has no value until such time, if at all, as a value of the Equity Interest arises. For this purpose, an Equity Interest shall have no value for any taxable year in which the Beneficiary who is the holder of the Equity Interest would receive no distribution from the Liquidating Trust if the Liquidating Trust terminated and distributed all of its assets on the last day of the taxable year.

   **5.5**  **Required Filing.** The Liquidating Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns and Forms 1099) as the Liquidating Trustee shall, with the advice and assistance of his post-confirmation professionals, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection

with the creation, existence, operation or termination of the Trust. The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. §§ 1.671-4(a) and 1.671-4(b)(3)(ii).

**5.6** **Tax Attributes and Tax Characteristics of the Trust.** The Beneficiaries of the Liquidating Trust shall be treated as its grantors and deemed owners. The Liquidating Trustee shall file or cause to be filed tax returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a), or (b), as appropriate. Accordingly, the taxable income or loss of the Liquidating Trust, including taxable income attributable to any reserves, if any, will be allocated to the Beneficiaries on an annual basis, pro rata or as otherwise in accordance with their respective entitlement to receive distributions from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year (taking into account all prior and concurrent distributions from the Liquidating Trust during such taxable year), subject to the terms herein, and the Beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Liquidating Trust taxable income, whether or not any amounts are actually distributed by the Liquidating Trustee to the Beneficiaries. The value of the Assets transferred into the Liquidating Trust shall be the fair market value of such Assets at the time of such transfer, as reasonably determined by the Liquidating Trustee, in consultation with the Trustee and such advisors as the Liquidating Trustee deems appropriate, within a reasonable period of time after the Effective Date. Such valuation shall be binding on all parties including, but not limited to, the Debtor, the Debtor's Estate, the Trustee, the Liquidating Trustee, and all Beneficiaries, and these valuations will be used by such parties for all federal income tax purposes.

**5.7** **Revenue Ruling Requests.** The Liquidating Trustee on behalf of Beneficiaries may, but shall not be required to, file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the

Liquidating Trust classified as a liquidating trust as described in Treas. Reg. §301.7701-4(d).

**5.8** **Necessary Documents.** On the Effective Date, the Liquidating Trustee shall execute and deliver all documents reasonably required by the Liquidating Trustee including the endorsement of any instruments, all business records of the Debtor, and authorizations to permit the Liquidating Trustee to access all bank records, tax returns, and other files and records of the Debtor, including files held by the Liquidating Trustee's professionals, the Debtor's Estate or the Liquidating Trustee as necessary for the administration of the Liquidating Trust. The Liquidating Trustee's professionals shall provide the Liquidating Trustee any and all documents or information reasonably requested by Liquidating Trustee for the administration of the Liquidating Trust.

**5.9** **Privileges Transferred to Liquidating Trustee.** The Liquidating Trustee, as set forth in the Plan, shall control all applicable legal privileges of the Debtor and its Estate, including control over all work product and attorney-client privilege for matters arising from or relating to transactions or activity occurring, in whole or in part, prior to the Effective Date.

**5.10** **Disposition of Interests and Litigation Claims.** Subject to the terms of this section, the Liquidating Trustee shall have the authority to initiate, prosecute, settle, resolve, dismiss, object to, reconcile or otherwise dispose of any Interest, Administrative Expense Claim, or Litigation Claims (collectively, the "**Claims/Litigation Claims Resolution**"), subject to notice to the Beneficiaries or to such lesser list of parties ordered by the Bankruptcy Court.  All settlements shall be guided by the principles of the settlement standards set forth by Bankruptcy Rule 9019 and the legal standards for settlement set forth in the Eleventh Circuit for such settlements, including *In Re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert den.*, 498 U.S. 959, 1126 L.Ed. 398, 111 S.Ct. 389 (1990), or such other prevailing, binding law.

**5.11** **Standing.** Subject to Sections 5.10 and 5.13 of this Agreement and Section 5.1 of the Plan, the Liquidating Trustee shall have the sole standing and authority to file objections to

Administrative Expense Claims, Interests, or prosecute, settle, liquidate, dispose of, and/or abandon Litigation Claims, and to defend against any and all counterclaims asserted in connection therewith.

**5.12** **Qualified Settlement Fund; Disputed Ownership Fund**. Notwithstanding anything in this Agreement to the contrary, in the event that (i) any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to Treas. Reg. § 1.468B-1, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claim or Disputed Equity Interests as a "disputed ownership fund" pursuant to Treas. Reg. § 1.468B- 9(c)(2)(ii), any federal income tax consequences shall be determined under IRC § 468B and the Treasury Regulations thereunder.

## ARTICLE VI DISTRIBUTIONS TO BENEFICIARIES

**6.1** **Distribution of the Liquidating Trust Assets.** The Liquidating Trustee shall make an initial distribution (the "**Initial Distribution**") as soon as practicable after the Effective Date. The Liquidating Trustee shall, in his sole discretion, make further Distributions to the Liquidating Trust Beneficiaries of all Cash on hand in accordance with the terms of the Liquidating Trust Agreement and the priorities set forth in this Plan (including any Cash received from the Debtor on the Effective Date) except such amounts (i) as are retained by the Liquidating Trust on account of Disputed Claims/Equity Interests, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets) of the Liquidating Trust and the Liquidating Trustee, and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Liquidating Trust or imposed on the Liquidating Trust in accordance with this Plan or the applicable Liquidating Trust Agreement.

**6.2** **Assets Retained on Account of Disputed Claims/Equity Interests.** After the

Effective Date, the Liquidating Trust Assets shall include sufficient funds to pay in full any Disputed Claims, and such funds will constitute the Disputed Claims Fund, which will be held for the benefit of the Holder of the Disputed Claims. When the claims are resolved, the Allowed Claim, if any, shall be paid from the Disputed Claims Fund pursuant to the terms of the Plan.

**6.3    No Distributions Pending Allowance.**  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**6.4    Distributions After Allowance.**   To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Allowed Claim Holder in accordance with the provisions of the Plan. Upon allowance, an Allowed Claim Holder shall receive any Distributions that would have been made up to the date of allowance to such Allowed Claim Holder under the Plan had the Disputed Claim been allowed on the Effective Date plus any actual earnings on such distribution from the date that such distribution would have been made had the Disputed Claim been allowed on the Effective Date through the date of allowance.

**6.5    Tax Identification Numbers.**  The Liquidating Trustee may require any Beneficiary with an Allowed Claim entitled to a Distribution under the Plan to furnish its, his or her employer or taxpayer identification number (the "**TIN**") assigned by the Internal Revenue Service. Any Distribution under the Plan may be conditioned on the receipt of such TIN. If any such Holder of an Allowed Claim entitled to a Distribution hereunder fails to provide a requested TIN within forty-five (45) days after the request thereof, then such failure shall be deemed to be a waiver of such Holder's interest in any future Distributions, including the right to receive any future Distributions.

**ARTICLE VII**
**POWERS OF AND LIMITATIONS ON THE LIQUIDATING TRUSTEE**

**7.1    Limitations on Liquidating Trustee.**  The Liquidating Trustee shall not do any act or

undertake any activity unless he determines, in good faith, that such act or activity is desirable, necessary, or appropriate for the management, conservation, and protection of the Liquidating Trust Assets and is in compliance with this Trust Agreement and the Plan. The investment powers of the Liquidating Trustee are limited to the powers to invest temporarily cash portions of the Estate in demand and time deposits in banks or savings institutions, temporary investment such as short-term certificates of deposit, investments in United States Treasuries, or money market funds. The Liquidating Trustee shall be restricted to the holding, liquidation, and collection of Liquidating Trust Assets and the payment and distribution thereof for the purposes set forth in the Plan, and to the conservation and protection of the Liquidating Trust and the Liquidating Trust Assets, and administration thereof in accordance with the provisions of this Trust Agreement and the Plan.

**7.2    Specific Powers of Liquidating Trustee.**  Subject to the provisions of the preceding paragraph, the Plan and this Agreement, the Liquidating Trustee shall have the following specific powers in addition to any powers granted by 11 U.S.C. §§ 1106 and 704 or  conferred upon him by any other provision of this Agreement or the Plan; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized by any other provisions of this Agreement or the Plan, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to discharge all obligations of or assumed by the Liquidating Trustee or provided herein or in the Plan and to conserve and protect the Liquidating Trust and the Liquidating Trust Assets or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Agreement or the Plan, at all times subject to the terms of this Agreement and the Plan:

> (a)    To determine when or on what terms Assets should be sold, liquidated or otherwise disposed of;
>
> (b)    To collect and receive any and all money and other Assets of whatsoever kind or nature due to or owing or belonging to the Liquidating Trust;

(c)    Pending sale or other disposition or distribution, to retain all or any Assets regardless of whether or not such Assets are, or may become, unproductive or a wasting asset. The Liquidating Trustee shall not be under any duty to reinvest such part of the Liquidating Trust as may be in Cash, or as may be converted into Cash; nor shall the Liquidating Trustee be chargeable with interest thereon except to the extent that interest may be paid to the Liquidating Trust on such Cash amounts;

(d)    To retain and set aside such funds out of the Assets as the Liquidating Trustee shall deem necessary or expedient to pay, or provide for the payment of (i) Allowed Claims pursuant to the Plan; and (ii) any Reserve amounts;

(e)    Subject to section 5.10 of this Trust Agreement, to do and perform any acts or things necessary or appropriate for the management, conservation and protection of the Liquidating Trust, including acts or things necessary or appropriate to maintain Liquidating Trust Assets pending sale or other disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith to employ such agents, including post-confirmation professionals as provided for in this Agreement or the Plan, and to confer upon them such authority as the Liquidating Trustee may deem expedient, and to pay fees and expenses therefor;

(f)    To cause any investment of the Liquidating Trust to be registered and held in the name of the Liquidating Trustee or in the names of a nominee or nominees, or in the names of a nominee or nominees of another entity, without increase or decrease of liability with respect thereto;

(g)    Subject to the terms of this Agreement, to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all Litigation Claims, as the Liquidating Trustee may determine to be of value and benefit to the Liquidating Trust and the Beneficiaries;

(h)    Subject to the terms of this Agreement, to institute or defend actions or declaratory judgments, to substitute the Liquidating Trustee for the Debtor or the Debtor's Estate as the real party in interest in pending litigation, and to take such other action, in the name of the Liquidating Trust if required, as the Liquidating Trustee may deem necessary or desirable to enforce any instruments, contracts, agreements, or causes of action relating to or forming a part of the Liquidating Trust;

(i)    Subject to the terms of this Agreement, to cancel, terminate, or amend any instruments, contracts or agreements relating to or forming a part of the Liquidating Trust to the full extent permitted by such instruments, contracts or agreements and to execute new instruments, contracts, or agreements;

(j)    To perform any act authorized, permitted, or required under any instrument, contract, agreement, or cause of action relating to or forming a part of the Liquidating Trust whether in the nature of an approval, consent, demand, or notice thereunder or otherwise;

(k)    Subject to the terms of this Agreement, to deal in and with all accounts receivable, promissory notes and contracts which form a part of the Liquidating Trust Assets with full

authority to compromise, settle and otherwise deal in and with such Liquidating Trust Assets as the Liquidating Trustee shall deem appropriate, in his sole discretion and without further order of the Bankruptcy Court;

(l)    To take all actions for and on behalf of the Debtor and the Debtor's Estate, including but not limited to, the preparation, execution and filing of documents, as the Liquidating Trustee shall deem necessary, desirable or appropriate in order to complete, conclude and finalize any filing, reporting or other obligations which the Debtor, the Debtor's Estate, the Liquidating Trustee, or the Liquidating Trust may have to any state or federal governmental authority, including the Liquidating Trustee's required completion and filing of all of the Debtor's final or otherwise required federal, state, and local tax returns, which shall be done by the Liquidating Trustee;

(m)   Subject to the terms of this Agreement, to enter into such consulting or employment arrangements or otherwise retain such accountants, agents, attorneys, consultants or independent contractors as the Liquidating Trustee shall deem necessary, desirable and appropriate to enable the Liquidating Trustee to accomplish the purposes enumerated in this Agreement and the Plan;

(n)    To make the distributions provided for in this Agreement or the Plan;

(o)    Subject to the terms of this Agreement, to have control and management of the Liquidating Trust;

(p)    To make the election described in Treas. Reg. § 1.468B-9(c)(2)(ii) to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" for federal income tax purposes;

(q)    To establish one or more "qualified settlement funds" within the meaning of IRC § 468B and the Treasury Regulations thereunder for any interests for which a "qualified settlement fund" is required or permitted by law;

(r)    To request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(s)    To destroy any records of the Debtor as authorized by the Bankruptcy Court (including, without limitation, the client files) and to request authority to destroy any records of the Debtor not previously authorized by the Bankruptcy Court; and

(t)    To take any action reasonably necessary to effectuate the wind down and dissolution of the Debtor in all respects without further corporate action under applicable law, regulation, order or rule required.

**7.3    Preservation, Prosecution, and Defense of Causes of Action.**    Subject to the terms

of this Agreement, the Liquidating Trustee shall have the right to pursue any and all Litigation

Claims of the Debtor or the Debtor's Estate, whether or not such causes of action had been

commenced as of the Effective Date, and shall be substituted as a real party in interest in any actions commenced by or against the Debtor or the Debtor's Estate. Also subject the terms of this Trust Agreement, the Liquidating Trustee shall be authorized at any point in any litigation (a) without Bankruptcy Court approval, to enter such settlements as the Liquidating Trustee deems to be in the best interest of the Beneficiaries, or (b) to abandon, dismiss, and/or decide not to prosecute any such litigation if the Liquidating Trustee deems such action to be in the best interest of the Beneficiaries provided, however, that any such proposed settlement or other action described in subparts "(a)" and "(b)" of this section that (i) exceeds $1,000,000 with respect to Liquidating Trust Assets; (ii) involves a Liquidating Trust Asset that has an alleged claim amount exceeding $1,000,000; or (iii) involves a professional claim shall be subject to approval by the Bankruptcy Court, upon notice and opportunity for hearing in accordance with Bankruptcy Rule 9019.

**7.4** **Indemnification of Liquidating Trustee.** The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, his respective employees and respective actuaries, agents, attorneys, consultants, designees, directors, employees, financial advisors, investment bankers, managers, members, officers, professionals, partners, and shareholders (collectively, all of the above are the "**Liquidating Trust Protected Parties**") from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses, which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, demand, claim, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or any consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust, the Plan, or the discharge of their duties hereunder or otherwise related to the Liquidating Trust or the Liquidating Trustee ("**Related Matters**") provided, however, that no such indemnification will be provided to any such Liquidating Trust

Protected Party for actions or omissions finally and judicially determined to have arisen solely and directly from such Liquidating Trust Protected Party's willful misconduct, gross negligence, or actual fraud. In the sole discretion of the Liquidating Trustee, the Liquidating Trustee may authorize available Cash of the Assets, including but not limited to the Cash in the Sale Proceeds Reserve, to be advanced to satisfy any documented out-of- pocket costs and expenses (including attorneys' fees and other costs of defense) incurred by any Liquidating Trust Protected Party who is threatened to be named or made a defendant or a respondent, or is served with formal or informal discovery, in connection with any proceeding, claim, investigation, or demand, concerning the administration, business, and affairs of the Liquidating Trust; provided, however, that all such payments are subject to disgorgement in the event the expenses relate solely to an underlying claim against the Liquidating Trust Protected Party which has been finally and judicially determined to have resulted solely and directly from the Liquidating Trust Protected Party's own willful misconduct, gross negligence, or actual fraud. In the event that, at any time whether before or after termination of this Trust Agreement, as a result of or in connection with this Trust Agreement, any Liquidating Trust Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Liquidating Trust Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Liquidating Trust Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Liquidating Trust Protected Party shall be reimbursed by the Liquidating Trust for its out of pocket expenses, including the fees and expenses of its counsel, and will be compensated by the Liquidating Trust for the time expended by its personnel based on such personnel's then current standard hourly rate. Any claim of the Liquidating Trustee and the other parties entitled to be indemnified, held harmless, or reimbursed shall be satisfied solely from the

Liquidating Trust Assets, including but not limited to the Sale Proceeds Reserve, or any applicable insurance coverage.

As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Plan's Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida. For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, its agents, representatives, employees or independent contractors whether as a named insured on the Trustee's policies or otherwise, including, but not limited to, coverage with respect to (a) appropriate directors and officers/trustee liability insurance,(b) any property that is or may in the future become the property of the Liquidating Trust and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the Liquidating Trust.  The foregoing bond shall be subject to approval by the Court.  Such bond shall be subject to discharge and release upon an appropriate motion and order from the Court upon the Liquidating Trustee's resignation, death or removal, or for other cause.

**7.5**    **Liability of Liquidating Trust Protected Parties.**  No Liquidating Trust Protected Party shall have any liability to any party for any Related Matters, unless it shall be proven that such liability arose solely and directly from the gross negligence, willful misconduct or actual fraud of such Liquidating Trust Protected Party. None of the Liquidating Trust Protected Parties shall be deemed to make any representations or warranties as to the value or condition of the Trust Assets or any part thereof, or as to the validity, execution, enforceability, legality, or sufficiency of this

Agreement or the Plan, and none of the Liquidating Trust Protected Parties shall incur any liability or responsibility to any party in respect of such matters.

## ARTICLE VIII CONCERNING THE LIQUIDATING TRUSTEE

**8.1    Generally.** The Liquidating Trustee accepts and undertakes to discharge the trust created by this Agreement upon the terms and conditions hereof and of the Plan. In performing his duties hereunder, the Liquidating Trustee may rely on information reasonably believed by him to be accurate and reliable.

**8.2    Reliance by Liquidating Trustee.** Except as otherwise provided in Sections 7.1 or 8.1: (i) the Liquidating Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties; a n d (ii) the Liquidating Trustee may consult with and retain legal counsel and other professionals to be selected by him, and the Liquidating Trustee shall not be liable for any actions taken or suffered by him in accordance with the advice of such counsel, and may also consult with former counsel, former accountants, and former consultants or advisors of the Debtor or present and former officers, directors and consultants of the Debtor. The fees of such legal counsel and other professionals for the Liquidating Trustee shall be paid from the Assets in accordance with the Plan.

**8.3    Counsel and Advisors for Liquidating Trustee.** (a) The Professionals currently employed by the Debtor are deemed to be employed by the Liquidating Trust, without further order of the Bankruptcy Court. The Liquidating Trustee shall not be liable for any actions taken or suffered by him in accordance with the advice of such Professionals, and may also consult with and retain current and former accountants, consultants or other professionals of the Debtor, the Debtor's Estate, present and former officers and directors of the Debtor, the Debtor's Estate and each of

their respective affiliates or subsidiaries. The actual fees and expenses of post- confirmation professionals retained by the Liquidating Trustee shall be paid from the Trust Assets and in accordance with the Plan and the Confirmation Order.

Post-confirmation professionals retained by the Liquidating Trustee need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, the Liquidating Trustee's firm (should the Liquidating Trustee be a part of a professional services firm (the "**LT Firm**")) and its affiliates, as well as counsel, employees, interim management, financial advisors, independent contractors or agents of the Trustee or the LT Firm. The Liquidating Trustee is hereby expressly authorized to utilize the services of the LT Firm, its affiliates and personnel as post-confirmation professionals (rather than utilizing other similarly situated or available personnel or professional services firms) notwithstanding that (a) the Liquidating Trustee may benefit (directly or indirectly) from the compensation paid to the LT Firm, and (b) other persons or entities may be available to provide the same or similar work at similar or more competitive prices. In no event shall the Liquidating Trustee, the LT Firm or their affiliates be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

**8.4** **Liquidating Trust's Funds.** No provision of this Agreement or the Plan shall require the Liquidating Trustee to expend or risk his own funds or otherwise incur any financial liability in the performance of any of his duties as Liquidating Trustee hereunder, under the Plan, or in the exercise of any of its rights or powers, if the Liquidating Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to him against such risk or liability is not reasonably assured to him. For the avoidance of doubt, the Liquidating Trustee shall not be required to rely on the security, reimbursement or indemnity of the LT Firm, its affiliates or their respective insurers in determining whether the assurances

described in the preceding sentence are available.

## ARTICLE IX PERSONS DEALING WITH THE LIQUIDATING TRUSTEE

**9.1**  **Liquidating Trustee Not Personally Liable**.  Persons dealing with the Liquidating Trustee shall look only to the Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Liquidating Trust or the Plan.  Neither the Liquidating Trust nor the Liquidating Trustee shall have any personal or individual obligation to satisfy any such liability unless it is proven that the Liquidating Trustee breached his fiduciary duty, was grossly negligent, acted with willful misconduct or fraud in ascertaining the pertinent facts or in performing any of the rights, powers or duties herein or in the Plan.

**9.2**  **Authority of Liquidating Trustee**.  Any person dealing with the Liquidating Trustee shall be  fully  protected in relying  upon  the Liquidating  Trustee's  certificate signed by  the Liquidating Trustee that such Liquidating Trustee has authority to take any action under this Agreement.

## ARTICLE X COMPENSATION

**10.1**   **Compensation of Liquidating Trustee**.  The Liquidating Trustee shall be entitled to compensation in connection with fulfilling his duties hereunder at customary hourly rate, plus reasonable out of pocket expenses, to be paid monthly from the Liquidating Trust Assets. The Liquidating Trustee shall not receive or be entitled to receive any other compensation on account of the performance of his duties hereunder.

**10.2**   **Payment of Costs/Expenses**.  All costs and expenses incurred by the Liquidating Trust shall be the obligation of the Liquidating Trust and be payable from the Liquidating Trust Assets of the Liquidating Trust in accordance with this Trust Agreement and the Plan. Compensation of the Liquidating Trustee shall be paid from the Trust Assets pursuant to the terms of this Trust Agreement. Notwithstanding anything herein to the contrary, the Liquidating Trustee shall be

authorized pursuant to this Trust Agreement to pay the fees and expenses incurred after the Effective Date by the Liquidating Trustee and his post-confirmation professionals from Trust Assets without further order of the Bankruptcy Court.  The Liquidating Trustee shall be authorized pursuant to the terms of the Plan, the Liquidating Trust, and any other order of a court of competent jurisdiction to pay the compensation due to the Liquidating Trustee.

## ARTICLE XI
### LIQUIDATING TRUSTEE AND SUCCESSOR LIQUIDATING TRUSTEE

**11.1** __Resignation and Removal.__ The Liquidating Trustee may (i) resign and be discharged from the Liquidating Trust hereby created only by filing an appropriate motion in the Bankruptcy Court setting forth the reason therefor and the entry of an order by the Bankruptcy Court granting such motion; or (ii) be removed, upon proper motion, notice and a hearing, including a motion of the Office of the United States Trustee or by the Bankruptcy Court on its own order to show cause, for cause, including, but not limited to, under Section 324 of the Bankruptcy Code, for the violation of any material provision of the Plan (including, without limitation, by reason of providing intentionally false or misleading reports), or in the event the Liquidating Trustee becomes incapable of acting as the Liquidating Trustee as a result of physical or mental disability and such physical or mental disability continues for a period in excess of 30 days (except in the case of death, in which instance, the procedures for replacement will begin immediately), and the Bankruptcy Court entering an order authorizing such removal. In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform his or her duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court as provided below.

**11.2** __Appointment of Successor.__  Should the Liquidating Trustee resign or be removed, or die or become incapable of action, a vacancy shall be deemed to exist. In the event of such a vacancy, the Liquidating Trust Beneficiaries shall have 90 days to select a successor Liquidating Trustee by the filing of a motion with the Bankruptcy Court in connection therewith. If the

Liquidating Trust Beneficiaries do not so select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor. Notwithstanding Section 10.1 hereof, the compensation, if any, of the successor Liquidating Trustee shall be (i) stated in the instrument evidencing such successor Liquidating Trustee's appointment and (ii) included in the motion filed with the Bankruptcy Court.

**11.3** <u>Acceptance of Appointment by Successor Liquidating Trustee</u>.   Each successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon such successor Liquidating Trustee shall, without any further act, become vested with all the Estate's properties, rights, powers, trusts, and duties as were held by his or her predecessor in the Liquidating Trust hereunder, with like effect as if originally named in such instrument; but the retiring Liquidating Trustee shall nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor Liquidating Trustee upon the Liquidating Trust herein expressed, all the Estate's properties, rights, powers, and trusts of such retiring Liquidating Trustee, and shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held by him or her hereunder, including the Assets.  Notwithstanding the appointment of a successor Liquidating Trustee, the retiring Liquidating Trustee shall, without limitation, continue to be entitled to the indemnity provided herein for acts and omissions through the effective date of his resignation.

**ARTICLE XII**
**<u>CONCERNING THE BENEFICIARIES</u>**

**12.1 <u>Limitation on Suits by Beneficiaries</u>.**  No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon or under or with respect to the Assets.

**12.2 <u>Expenses in Connection with Litigation</u>.**  In connection with any lawsuit or action

by or against the Liquidating Trustee regarding any rights, actions, or omissions under this Trust Agreement or the Plan, the Liquidating Trustee may request any court to require, and any court may in its discretion require, that a party to such action other than the Liquidating Trustee pay all costs and fees associated with such action.

**ARTICLE XIII AMENDMENTS**

**13.1 <u>Amendments</u>.** The Liquidating Trustee may make and execute such declarations amending this Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or amendments hereto; <u>provided</u>, <u>however</u>, that no such amendment shall permit the Liquidating Trustee to act in any manner which is inconsistent with the Plan or engage in any activity prohibited by this Agreement or affect the Beneficiaries' rights to receive their share of any Distributions under this Agreement or the Plan.

**13.2 <u>Notice and Effect of Amendment</u>.** Promptly after the execution by the Liquidating Trustee of any declaration of amendment permitted by and pursuant to this Agreement, the Liquidating Trustee shall give notice of the substance of such amendment to (a) all Beneficiaries who request such amendment in writing, and (b) the Office of the United States Trustee. Upon the execution of any such declaration of amendment by the Liquidating Trustee, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities of the Liquidating Trustee and the Beneficiaries under this Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of this Agreement for any and all purposes.

**ARTICLE XIV MISCELLANEOUS PROVISIONS**

**14.1 <u>Further Assurances</u>.** The Debtor and the Liquidating Trustee shall promptly execute

and deliver such further instruments and do such further acts as may be necessary or proper to more effectively transfer to the Liquidating Trustee any portion of the Assets intended to be conveyed pursuant to the Plan and this Agreement to otherwise carry out the intentions of this Agreement and the Plan.

**14.2    Invalid Acts.** Any act or omission by the Liquidating Trustee in violation or derogation of any term of this Agreement or otherwise of the Plan shall be *void ab initio*.

**14.3    Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust established hereby as set forth in the Plan, including, without limitation, the enforcement, modification and interpretation of its provisions, for the purpose of determining all amendments, applications, claims or disputes with respect to this Agreement, the substitution of the Liquidating Trustee, and all applications, claims and disputes related thereto.

**14.4    Filing Documents.** This Agreement shall be filed or recorded in such office or offices as the Liquidating Trustee may determine to be necessary or desirable. A copy of this Agreement and all amendments thereof shall be maintained in the office of the Liquidating Trustee and shall be available during regular business hours for inspection by any Beneficiary or his, her, or its duly authorized representative. The Liquidating Trustee shall file or record any amendment of this Agreement in the same places where the original Agreement is filed or recorded. The Liquidating Trustee shall file or record any instrument which relates to any change in the office of the Liquidating Trustee in the same places where the original Agreement is filed or recorded and shall maintain a copy of any such instrument in his, her or its office.

**14.5    Intention of Parties to Establish Trust.** This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership, or joint venture of any kind.

**14.6    Laws as to Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of

law.

 **14.7** **Severability.** In the event any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

 **14.8** **No Assignment.** Except as otherwise provided herein, the obligations, duties, or rights of the Liquidating Trustee under this Agreement shall not be assignable, voluntarily, involuntarily, or by operation of law, and any such attempted assignment shall be void *ab initio*.

 **14.9** **Calendar Year.** The Trust will utilize the calendar year for tax and financial accounting purposes.

 **14.10** **Inconsistency with Plan.** To the extent of any inconsistency: (i) the provisions of this Agreement shall control over the provisions of the Disclosure Statement; (ii) the provisions of the Plan shall control over the contents of this Agreement, and the Disclosure Statement; and (iii) the provisions of the Confirmation Order shall control over the contents of the Plan.

 **14.11** **Effectiveness.** This Agreement shall become effective on the Effective Date.

 **14.12** **Notices.** Any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, if given by being deposited, postage prepaid, in a post office or letter box addressed to the Beneficiary at his, her or its address as shown on the records of the Liquidating Trustee (in the case of notices to a Beneficiary) and addressed to the Liquidating Trustee, at the address set forth below (in the case of a notice to the Liquidating Trustee), except that notice of change of address shall be effective only upon receipt thereof. Any notice given by mail in accordance with this paragraph shall be deemed to be effective three days following its

deposit in the mail.

**14.13  Confidentiality.**  The Liquidating Trustee and any respective successor (each a "**Covered Person**") shall, during the period that they serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's  removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal  gain any material, nonpublic information of or pertaining to any entity to which any of the assets  of the Liquidating Trust relates or of which it has become aware in its capacity (the "**Information**"),  except to the extent disclosure is required by applicable law, order, regulation or legal process. In  the event that any Covered Person is requested or required (by oral questions, interrogatories,  requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person will furnish only that portion of the  Information, which the Covered Person, advised by counsel, is legally required and exercise all  reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the  Information.

**14.14  Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute  one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed and acknowledged as of the date set forth in the opening paragraph hereof.

| **MANAGER of 160 Royal Palm, LLC** | **LIQUIDATING TRUSTEE** |
|---|---|
| Cary Glickstein | Cary Glickstein |
| _____ | _____ |
| Cary Glickstein | Cary Glickstein |
| _____ | _____ |
| Date | Date |