## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re 160 Royal Palm, LLC,

      Debtor.

Chapter 11 Case
Case No. 18-19441-EPK

### KK-PB FINANCIAL, LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

KK-PB Financial, LLC ("KK-PB"), by and through its undersigned counsel, files this objection (the "Objection") to confirmation of the *Debtor's Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 968] (the "Plan"),[1] in the above-captioned chapter 11 case (the "Chapter 11 Case") of 160 Royal Palm, LLC (the "Debtor"), and in support thereof states as follows:

### PRELIMINARY STATEMENT

1.     Why would the Debtor waste limited estate resources ***now*** to push confirmation of a Plan that: (a) is predicated on the Debtor winning not one but two appeals still up in the air that will determine if the Plan can be funded and if the Debtor's largest secured claim will be reinstated; (b) contains no contingencies if the Debtor loses on either one or both of the appeals; (c) relies on funds to make Plan distributions that will not be available for months, if ever; and (d) provides blanket exculpation for the Debtor's manager and counsel for their future post-confirmation acts? There is no valid bankruptcy purpose. The Debtor's insistence on jamming through a chapter 11 liquidating plan ***now*** to make distributions to its creditors—when it admittedly has absolutely

---

[1]     Capitalized terms used herein but not otherwise defined have the meaning ascribed to them in the Plan.

nothing to distribute at this time—is nothing more than camouflage for the following ulterior objectives: (a) facilitating payment of fees to the Debtor's sole manager and his brother, as well as to the Debtor's Boca Raton, Florida bankruptcy counsel (who is seeking an unconscionable and almost $16 million contingency fee in a liquidating chapter 11 case for a single asset real estate case of less than $40 million of potential distributable value to creditors); (b) making distributions to EB-5 claimants—who are not creditors of the Debtor; and (c) admittedly trying to moot KK-PB's pending appeal before the United States District Court of the Estimation Order (defined below) [ECF 989, at 18 n.10] ("If the Debtor substantially consummated the Plan, it would seek dismissal of the Estimation Appeal on mootness grounds.").

2.      Confirmation of the Plan is entirely premature because the Debtor currently has ***no funds*** to make distributions under the Plan. The primary source of funds is the Sale Proceeds (defined below) from the sale of the Debtor's Hotel to LR (both defined below). Those Sale Proceeds are currently held in escrow pursuant to a Post-Closing Agreement (defined below) between the Debtor and LR and will be released only if the Debtor prevails in the Sale Appeal (defined below). But, the Eleventh Circuit has scheduled oral argument in the Sale Appeal for the week of November 18, 2019, thus rendering the earliest distribution date as many months away (if the Debtor prevails in the Sale Appeal at all).

3.      The Plan also should not be confirmed because the Plan is not feasible under section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). Should the Debtor lose in the Estimation Appeal, KK-PB's Mortgage Claim (defined below) may be reinstated as an allowed secured claim against the Debtor. However, the Plan does not provide for this contingency and—if the contingency occurs—cannot be consummated without material modifications.

2

4.      Moreover, the Plan contains improper nonconsensual third-party releases for the benefit of Cary Glickstein, the Liquidating Trustee, and their professionals.  There is no evidence that such nonconsensual third-party releases are either necessary to the Debtor's liquidating Plan, nor that they sufficiently satisfy the <u>Dow Corning</u> factors.  To the extent that any third-party release is appropriate—which it is not—the Plan releases must be modified to limit themselves to pre-confirmation activity and must provide a sufficient carveout to protect KK-PB's interests in the event it prevails in one or both of the appeals.

5.      Accordingly, for the reasons that follow, confirmation of the Plan must be denied.

## BACKGROUND

### I.    Filing for Bankruptcy

6.      On August 2, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and has continued to manage its business as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtor's principal asset is a partially-constructed hotel/condominium located at 160 Royal Palm Way, Palm Beach, Florida 33480 (the "<u>Hotel</u>").  Disclosure Statement 3.  The Debtor has acknowledged that the purpose of its Chapter 11 Case is to liquidate the Hotel, its only significant asset, and make a distribution to creditors.  [ECF No. 14 ¶ 5].

### II.    The Estimation Order and Subsequent Appeal

8.      In October 2018, this Court approved formal bid procedures for a public auction of the Hotel, with third party RREF II Palm House, LLC to act as the stalking horse bidder with a bid of $32 million plus certain assumed liabilities.  [ECF No. 154].

9.      In August 2013, in connection with the sale of the equity interest in the Debtor to Palm House LLC for $36 million, KK-PB extended seller financing, with the Debtor (a party to

the sale transaction) granting a note and a mortgage to KK-PB.  The note and mortgage form the basis for KK-PB's Claim No. 70-3 (the "Mortgage Claim").  The Debtor later objected to KK-PB's Mortgage Claim.  [ECF No. 178].

10.    However, because the Hotel was encumbered by KK-PB's mortgage, the most likely result of a sale would either be: (a) that KK-PB could credit bid its Mortgage Claim and obtain the Hotel with little or no cash; or (b) that the sale proceeds from a third-party purchaser would go almost entirely to satisfy the Mortgage Claim.

11.    Accordingly, the Debtor would only be able to sell the Hotel and distribute proceeds to creditors *other* than KK-PB if it: (a) prevented KK-PB from winning the auction with a credit bid; or (b) prevented the proceeds from flowing to KK-PB's mortgage.

12.    In pursuit of the former, the Debtor filed a motion to limit KK-PB's credit bid under section 363(k) of the Bankruptcy Code, which provides that a bankruptcy court can limit credit bidding "for cause."  [ECF No. 103].

13.    In response to the Credit Bid Motion, KK-PB filed its own motion under sections 363(k) and 502(c) of the Bankruptcy Code.  [ECF No. 133].  In the Estimation Motion, KK-PB requested estimation of its Mortgage Claim for the limited purpose of credit bidding.  Id. at 1.

14.    On February 26, 2019, following an evidentiary hearing, this Court entered an order (the "Estimation Order") estimating KK-PB's Mortgage Claim at $0 for all purposes in this Chapter 11 Case. [ECF No. 603].

15.    KK-PB timely appealed the Estimation Order (the "Estimation Appeal").  The Estimation Appeal has been fully briefed and is pending before the District Court.  See KK-PB Fin., LLC v. 160 Royal Palm, LLC (In re 160 Royal Palm, LLC), Case No. 9:19-cv-80342-RLR

(S.D. Fla.) [D. Ct. ECF Nos. 23, 27, 31]. Also pending before the District Court is a motion to stay the Estimation Order pending appeal. [D. Ct. ECF No. 36].

### III.    The Sale Order and Appeal

16.    On the same day that the Estimation Order was entered, the Debtor withdrew the public auction bid procedures and sought to conduct an expedited, private sale of the Hotel to LR U.S. Hotels Holdings LLC ("LR"), at a price of $39.6 million plus assumed liabilities. [ECF No. 604]. The Court approved the private sale procedures and set a final sale hearing for March 8, 2019. [ECF No. 619].

17.    At the final sale hearing, KK-PB presented an all-cash offer to purchase the Hotel, with title to vest in its designee. E.g., 3/8/2019 Hr'g Tr. 8-15, 79-82. Payment was to be held in escrow pending closing of the sale. Id. at 79. Nonetheless, the Debtor rejected KK-PB's offer and the Court approved the sale of the Hotel to LR. [ECF No. 651].

18.    KK-PB timely appealed (the "Sale Appeal") the order approving the private sale procedures and the final order approving the private sale (collectively, the "Sale Orders") of the Hotel to LR. The Sale Appeal has been fully briefed and is pending before the Eleventh Circuit. KK-PB Fin., LLC v. 160 Royal Palm, LLC (In re 160 Royal Palm, LLC), Case No. 19-11402 (11th Cir. reply filed July 11, 2019).

19.    On May 15, 2019, over two months after this Court's approval, the Debtor and LR purported to "close" the sale as approved by the Sale Orders and in accord with the LR purchase agreement. Subsequently, however, the Debtor disclosed that in connection with the purported "closing," it had entered into a post-closing agreement with LR (the "Post-Closing Agreement"). The Post-Closing Agreement materially modifies and adds conditions to the LR purchase agreement, the only purchase agreement approved by this Court, and thus is a material, unauthorized amendment to the LR purchase agreement. While $39,379,500 in sale proceeds (the

5

"Sale Proceeds") are tied up in escrow with the title company, the Post-Closing Agreement allows the Debtor up to one year to obtain a final order affirming the sale-related orders. Post-Closing Agreement § 4.a. If that condition is not met, there is no closing, and the agreement mandates that the escrow agent refund the purchase price to LR and revert the deed back to the Debtor. Post-Closing Agreement § 4.a.ii. In fact, the papers necessary to unwind the transaction have already been executed and are being held by the title company. Post-Closing Agreement § 3.d. Thus, if the Sale Order is reversed, the purported "closing" evaporates. Post-Closing Agreement § 4.a.ii. Based on the purported "closing", the Debtor moved to dismiss the Sale Appeal as statutorily moot, to which KK-PB responded. On August 6, 2019, the Eleventh Circuit issued an order carrying the substance of the motion to dismiss with the merits of the appeal. See Order (Aug. 6, 2019) (attached hereto as Exhibit A). Thus the motion to dismiss remains pending before the Eleventh Circuit. Oral argument in the appeal has been scheduled for the week of November 18, 2019.

## IV.    Approval of the Disclosure Statement

20.    On June 27, 2019, the Debtor filed its proposed Plan and disclosure statement. Following objections by KK-PB, and significant modifications by the Debtor, the amended disclosure statement [ECF No. 969] was approved by this Court on August 5, 2019. [ECF No. 975]. Subsequently, the Debtor solicited votes for its Plan.

21.    The liquidating Plan essentially "contemplates a distribution of the proceeds of the sale of the Debtor's assets and other assets in accordance with the priorities mandated by the Bankruptcy Code, and that such assets be transferred to a Liquidating Trust and administered, liquidated, and distributed by the Liquidating Trustee to the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement." Plan 1.

22.    However, as of the date of this Objection, the Debtor has virtually no assets on hand for distribution. [ECF No. 1155, at 2] (Debtor's monthly operating report showing that Debtor

had approximately $41,000 on hand as of July 31, 2019). Instead, as noted above, the Sale

Proceeds from the sale—which allegedly closed *four* months ago—continue to be held in escrow.

While the Plan does contemplate certain additional proceeds from the Debtor's litigation claims to

be brought against third-parties, see Plan § 1.35 ("Litigation Claims Proceeds"), such recoveries

have not yet occurred and are not certain to ever occur.

## OBJECTION

**I.      The Plan Should Not Be Confirmed Because It Is Infeasible.**

23.      Section 1129(a)(11) of the Bankruptcy Code imposes a "feasibility" requirement

onto chapter 11 plans.  "The purpose of this so-called feasibility requirement is to 'prevent

confirmation of visionary schemes which promise creditors and equity security holders more under

a proposed plan than the debtor can possibly attain after confirmation.'" In re Calvanese, 169 B.R.

104, 107 (Bankr. E.D. Pa. 1994) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129-59 (15th

ed. 1993)) (denying confirmation).  Courts have also applied the feasibility requirement to chapter

11 plans of liquidation, though "the feasibility analysis under such plans will vary somewhat from

that used in 'true' reorganizations." In re Wood, Case No. 89-0111, Civil Action No. 90-0042-C,

1991 U.S. Dist. LEXIS 20083, at *9 (W.D. Va. Nov. 11, 1991) (holding liquidating plan was

feasible).  Accordingly, the focus of the analysis is whether the liquidation and distribution itself,

as proposed in the plan, is feasible.  In re Yates Dev., Inc., 258 B.R. 36, 42-44 (Bankr. M.D. Fla.

2000) (holding liquidating plan was not feasible where plan could not be effectuated absent a

future, favorable appellate ruling); see also In re Louden, 69 B.R. 723, 725 (Bankr. E.D. Mo. 1987)

("[The] liquidating plan is not feasible because it is predicated on an unrealistically high valuation

of the real estate . . . .").

24.      The Debtor's Plan is predicated on the Debtor winning the Estimation Appeal to

eliminate KK-PB's Mortgage Claim and the Sale Appeal to receive the Sale Proceeds to fund the

Plan—all with no contingencies built into to the Plan.  With both appeals pending and far from certain victory for the Debtor, the Plan is infeasible and premature.  Should the Debtor fail to prevail in either the Estimation Appeal or the Sale Appeal, or both, the Plan would have to be abandoned or materially modified, which would require restarting the confirmation process.  The Debtor is unnecessarily incurring administrative expenses for the Debtor's estate and wasting the Court's and the creditors' time and resources to accomplish little more than hurry up to confirm a Plan that will collect dust for months and may ultimately be thrown into the trash.

**A.  The Plan Is Infeasible While the Estimation Appeal Is Pending.**

*i.    The Plan Is Infeasible Where It Is Predicated on the Debtor Prevailing in the Estimation Appeal.*

25.    The Plan is predicated on the Debtor prevailing on the Estimation Appeal and thus should not be confirmed while the Estimation Appeal is pending.  The decision in In re Yates Development, Inc. is analogous and should be followed.  In Yates, the court denied confirmation of a chapter 11 liquidating[2] plan as (among other reasons) infeasible because it was contingent on the debtor prevailing on a pending appeal.  In re Yates, 258 B.R. at 44.  In that case, the debtor filed an adversary proceeding against a creditor to determine that the creditor's claim did not include a $5,000.00 per day accruing amount.  Id. at 39.  The bankruptcy court ruled against the debtor, and the debtor appealed.  Id.  Thereafter, the debtor sought confirmation of a liquidating plan which was "contingent upon an appellate court ruling" that the $5,000.00 per day accruing amount "is not enforceable."  Id. at 41; see also id. ("[T]he effective date of the plan would occur when an appellate court issues a ruling that the $5,000.00 per day increase in the purchase price is not enforceable.").  The court denied confirmation on, *inter alia*, the ground that the plan was infeasible because the "only circumstance under which the plan can be effectuated is a future

---

[2]        7 Collier on Bankruptcy ¶ 1129.02[11] & n.200 (16th ed. 2019) (describing Yates as a liquidating plan).

appellate ruling that the $5,000.00 per day increase is not enforceable." Id. at 44. Other courts have similarly held that a feasibility analysis requires consideration of pending litigation or appeals against the debtor. In re Pizza of Haw., Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) ("[T]he bankruptcy court's finding of feasibility was clearly erroneous because the plan failed to provide for the possibility that [a creditor] would recover a large judgment in the civil case.").

26.    Similarly here, the Plan is predicated on an assumption that the Debtor will prevail in the Estimation Appeal and that KK-PB's Mortgage Claim will not be reinstated. If, however, KK-PB's Mortgage Claim was allowed, then as a secured claim, the Mortgage Claim must be included in a class and be paid in full from the Sale Proceeds. 11 U.S.C. § 1123(a). The Plan currently does not classify the Mortgage Claim in any class, specifically KK-PB's Mortgage Claim is excluded from the definition of "Trade Creditor Secured Claim". Plan § 1.61. So the Plan must be materially modified to account for the classification of the Mortgage Claim and distributions to other creditors. Also, because the amount of the Mortgage Claim constitutes effectively all of the Sale Proceeds and the Debtor has to reserve for the Mortgage Claim in the Disputed Claim Fund, the Debtor may be left administratively insolvent as a result of the reinstatement of the Mortgage Claim. Accordingly, like the Yates court, this Court should deny confirmation of the Plan because it is predicated on the Debtor succeeding in the Estimation Appeal.

9

> ii.    *The Court Should Defer Plan Confirmation Until After the*
> *Estimation Appeal.*

27.    Alternatively, this Court should follow In re Demarco and defer confirmation of the Plan until after the Estimation Appeal concludes.  258 B.R. 30, 36 (Bankr. M.D. Fla. 2000).  In Demarco, the Bankruptcy Court for the Middle District of Florida was faced with the issue of whether to "consider confirmation of the Debtor's . . . [p]lan, in view of the appeal of the Order disallowing the IRS's secured claim that is currently pending in the United States District Court." The court ultimately decided to "defer such consideration pending resolution of the appeal," because "confirmation of the Debtor's . . . plan may have the effect of depriving the IRS of 'effective judicial relief' in the event that the IRS prevails on its appeal."  Id.  The plan had "expressly provide[d] that the IRS will not receive any distribution on its tax lien, and that the lien will be released upon confirmation," and that "the property subject to the IRS's lien may be vested . . . free and clear of the lien."  Id.  As a result, "the IRS would have no effective remedy in the event that the District Court allowed its secured claim on appeal."  Id.

28.    Similarly here, KK-PB's secured Mortgage Claim was estimated at $0, which ruling KK-PB has appealed to the District Court.  The Hotel has purportedly been sold and so to the extent KK-PB's lien survives, it has attached to the Sale Proceeds.  But, the Debtor's Plan has made clear that it makes no provision for distribution to KK-PB and, as a result, even if KK-PB prevails on appeal of the Estimation Order, KK-PB could be left with no effective remedy if distributions have been made under the Plan.  This Court previously recognized this in its order denying KK-PB's motion to stay the Estimation Order pending the appeal.  [ECF 1056, at 9 ("If all of the proceeds from the sale of the [H]otel are distributed to other creditors, KK-PB would have no way to recover from the bankruptcy estate if it is successful on its appeal from the Estimation Order (and is also able to defeat the objections to its claim).")].

29.     Accordingly, the Court should defer confirmation of the Debtor's Plan until after the Estimation Appeal has concluded.

### B. The Plan Is Infeasible While the Sale Appeal Is Pending.

#### i.     The Plan Is Infeasible Where It Is Predicated on the Debtor Prevailing in the Sale Appeal.

30.     The Debtor's Plan is also not feasible under section 1129(a)(11) of the Bankruptcy Code because it is predicated on the Debtor prevailing in the Sale Appeal. The Plan's primary source of funding comes from the Sale Proceeds which are being held in escrow pending the outcome of the Sale Appeal. Plan § 7.4. Should the Debtor lose in the Sale Appeal, title in the Hotel will revert back to the Debtor, and the Sale Proceeds will be released back to LR. Post-Closing Agreement § 4. As noted above, the Eleventh Circuit has carried the Debtor's motion to dismiss with the merits, and oral argument has been scheduled for the week of November 18, 2019. Thus, any decision in the Sale Appeal—let alone the Debtor prevailing—would not occur until December 2019 or early next year, leaving the Debtor with no Sale Proceeds to fund the Plan until that time.

31.     The decision in In re Holmes, illustrates how a debtor's lack of control over a key claim or asset renders a liquidating plan infeasible in a situation such as in this Chapter 11 Case. Holmes v. U.S. (In re Holmes), 301 B.R. 911 (Bankr. M.D. Ga. 2003). In Holmes, the United States as a creditor objected to the debtor's liquidating plan as not feasible. Id. at 912-13. After reviewing the case law, the court ruled that even with a liquidating plan the "Debtor must be able to perform the obligations called for by his proposed Chapter 11 plan." Id. at 915. The plan, however, was predicated on the IRS accepting the Debtor's offer to compromise his tax debt to less than 6% of its original amount. Id. at 913. But because it was "uncertain whether the IRS will so agree," the court implicitly found that the plan was not feasible at that time. Id. at 915.

11

Here, there is no certainty that the Debtor will prevail on the Sale Appeal, especially after the Eleventh Circuit already refused to decide the Debtor's motion to dismiss independently and instead carried it with the merits. As such, the Debtor may not be able to perform its obligations under the Plan, and thus the Plan is infeasible.

> ii.   *The Plan Should Not Be Confirmed When There Are No Imminent Distributions.*

32.   It is also inappropriate to confirm a Plan when the earliest possible distribution will not occur for several months. Indeed, courts have denied confirmation of plans with effective dates months into the future. In re Potomac Iron Works, Inc., 217 B.R. 170, 171 (Bankr. D. Md. 1997) (denying confirmation of a plan with an effective date one year in the future); In re Krueger, 66 B.R. 463, 465-66 (Bankr. S.D. Fla. 1986) (denying confirmation where effective date was four months into the future, when the only required condition was that the debtor sell and receive the proceeds to its only significant property). Similarly here, distributions under the Plan will not occur until the Debtor receives the Sale Proceeds, which as discussed above will likely not occur until December 2019 or early next year.[3]

33.   The Debtor tries to move up the effective date of the Plan by not conditioning the effective date on receipt of the Sale Proceeds. Plan § 9.1. This drafting choice, however, is at odds with the general understanding of what an effective date is: "Although the Bankruptcy Code does not define effective date, it is generally understood to be the date upon which distributions begin." In re Yates Dev., Inc., 258 B.R. at 42. Allowing the Plan to become effective before the Sale Proceeds are released to the Debtor could lead to the absurd result of an "effective" Plan

---

[3]   Even if the Debtor received funds from one or more of the fraudulent transfer adversary proceedings it has filed before the Sale Proceeds are released, such funds would be likely insufficient to pay the approximately $16 million of contingency fees the Debtor's counsel seeks and the approximately $19 million in total the Debtor requests to set aside for all professional fees.

sitting idly for months and possibly failing if the Debtor loses the Sale Appeal. With no proceeds available for distribution within the next few months, the Plan cannot be confirmed now.

34.     With no legitimate bankruptcy purpose for ramming through the confirmation of the Plan, the only party that benefits from the early confirmation and effective date of the Plan is the Debtor's manager and counsel who wish to receive approval of their fees, including an astounding, approximately $16 million contingency fee, and to hide behind the shield of the Plan's exculpation provision. E.g., Plan § 10.5 ("Exculpation of Fiduciaries and Estate Professionals."); Disclosure Statement 14-15. However, in the words of one court, "Chapter 11 is not a game to be used for sport against creditors for the benefit of insiders." In re Sal Caruso Cheese, Inc., 107 B.R. 808, 818 (Bankr. N.D.N.Y. 1989). Accordingly, confirmation should be denied.

## II.     The Non-Consensual Third-Party Releases Are Improper and Overly Broad.

35.     The Plan contains third-party releases in the form of an exculpation clause and an injunction.[4] Plan §§ 10.5, 10.6. As described below, the exculpation clause should not be confirmed at all. Further, as described below, for any third-party release contained within the Plan, appropriate carveouts must be added to protect KK-PB in the event it prevails in one or more of the pending appeals.

### A. The Exculpation Clause Cannot Be Confirmed.

36.     Section 10.5 of the Plan exculpates Cary Glickstein, the Liquidating Trustee, and professionals employed by the Debtor, the Liquidating Trustee or the Liquidating Trust

---

[4]     KK-PB does not consent to the exculpatory provisions or injunctions contained within the Plan. The language in Section 10.6 of the Plan, deeming receipt of a distribution to be consent, is impermissible. Conditioning a creditor's right to a distribution on the creditor giving up rights pursuant to third party releases violates fundamental principles of the Bankruptcy Code. In re Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) ("[T]he Plan . . . releases all claims against [a third party] of creditors . . . who are to receive a distribution under the Plan. . . . [T]his is not appropriate. . . . [A third party release] cannot be accomplished without the affirmative agreement of the creditor affected."); In re Conseco, Inc., 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003) ("[A] creditor's mere acceptance of a distribution under the plan cannot be construed as a voluntary consent to the release.").

(collectively, the "Exculpated Parties"), from "any liability to any person or entity, excluding the Debtor, Liquidating Trust, and Liquidating Trustee, for any and all claims and causes of action arising on or after the Petition Date up through the time this case is closed, involving or relating to" the administration of the Debtor's estate.  Plan § 10.5.

37.    The Debtor has failed to produce any legal or factual support for the exculpation and injunction provision.  "[E]xculpation clauses are not per se unreasonable, although they do require scrutiny on a case-by-case basis."  See In re Simplot, 2007 WL 2479664 at *20 (Bankr. D. Idaho Aug. 28, 2007) (citing United Artists Theatre Co. v. Walton, 315 F.3d 217, 229 (3d Cir. 2003)).  In order for releases and exculpation provisions to be approved, the Debtor must provide support for such releases.  See, e.g., Behrmann v. Nat'l Heritage Found., 663 F.3d 704, 712-13 (4th Cir. 2011) (holding that a bankruptcy court must make specific factual findings to support release and exculpation provisions in a plan).  The Eleventh Circuit has adopted the Dow Corning factors for considering non-consensual third-party releases.  SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.), 780 F.3d 1070, 1079 (11th Cir. 2015) ("[W]e commend for the consideration of bankruptcy courts the factors set forth by the Sixth Circuit in Dow Corning.").  However, "[t]he rationale for granting third-party releases is far less compelling, *if it exists at all*, in a liquidation than in a reorganization." In re Berwick Black Cattle Co., 394 B.R. 448, 461 (Bankr. C.D. Ill. 2008) (emphasis added).  The Eleventh Circuit has advised that bankruptcy courts should "keep[] in mind that such bar orders should be used 'cautiously and infrequently.'" Seaside, 780 F.3d at 1079; see also 2/8/2019 Hr'g Tr. 112:24-113:12, 123:10-16 (noting that bar orders should "be reserved for those unusual cases in which such an order is necessary for the success of the reorganization" and should be "very closely scrutinized").

38.     Here, both the disclosure statement and the Plan lack any evidence in support of the exculpation.  Indeed, five of the seven of the <u>Dow Corning</u> factors weigh ***against*** exculpation[5]:

(a)     "[I]dentity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate."  <u>Dow Corning</u>, 280 F.3d at 658.  There is no evidence of a prepetition relationship between the Debtor and the Exculpated Parties nor that a suit against the Exculpated Parties would essentially be a suit against the Debtor or would deplete the assets of the estate.  <u>See</u> <u>In re A.H. Robins Co.</u>, 880 F.2d 694, 701 (4th Cir. 1989) (approving plan injunction which shielded from Daikon Shield litigation the directors and officers of the reorganized debtor, which had assumed its prepetition indemnification obligations of the directors and officers).

(b)     "The non-debtor has contributed substantial assets to the reorganization."  <u>Dow Corning</u>, 280 F.3d at 658.  The Exculpated Parties have not contributed any assets to the Debtor's liquidation.

(c)     "The injunction is essential to reorganization . . . ."  <u>Id.</u>  There is no evidence the exculpation clause is essential to the Debtor's liquidation.   To the contrary, if the exculpation clause is removed from the Plan, even if no person would be willing to serve as Liquidating Trustee with the exculpation clause, the case can be converted to Chapter 7 for liquidation by a Chapter 7 trustee.  <u>Gillman v. Cont'l Airlines (In re Cont'l Airlines)</u>, 203 F.3d 203, 216-17 (3d Cir. 2000) ("Even if the D&O defendants' obligations . . . were indemnifiable, the fact that the reorganized [debtor] ***might*** face an indemnity claim ***sometime*** in the future, in some ***unspecified*** amount, does not make the release and permanent injunction of Plaintiffs' claims '***necessary*' to ensure the success of the Continental Debtors' reorganization. . . .  We conclude that granting permanent injunctions to protect non-debtor parties on the basis of theoretical identity of interest alone would turn bankruptcy principles on their head.").

(d)     "The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction."  <u>Dow Corning</u>, 280 F.3d at 658.  Class 3, the general unsecured creditors, is expected to have a final distribution in the range of 15-30%; not all or substantially all of their claims.  And the Debtor expects to pay KK-PB's Mortgage Claim $0.

(e)     "The plan provides an opportunity for those claimants who choose not to settle to recover in full."  <u>Id.</u>  The Plan provides no opportunity for KK-

---

[5]     The only factor in support of the exculpation is the fourth factor: "The impacted class, or classes, has overwhelmingly voted to accept the plan."  <u>Dow Corning</u>, 280 F.3d at 658.  The seventh factor, regarding "a record of specific factual findings that support [the bankruptcy court's] conclusions," does not apply.  <u>Dow Corning</u>, 280 F.3d at 658.

PB—or any other general unsecured creditor who chooses not to settle—to recover in full. The Debtor expects to pay KK-PB's Mortgage Claim $0. And, KK-PB unsecured claim in Class 3 is only expected to have a final distribution in the range of 15-30%.

39.    Accordingly, the Plan should not be confirmed with the included exculpation clauses.

### B. Any Third-Party Releases Should Be Limited and Include Appropriate Carveouts.

40.    However, if the Plan is confirmed with third-party releases, such releases must be properly limited and include certain carveouts to protect KK-PB.

41.    Exculpation provisions must be "properly limited and not overly broad." In re Nat'l Heritage Found., Inc., 478 B.R. at 233 (citing In re PWS Holding Corp., 228 F.3d 224, 246 (3d. Cir. 2000)). Here, the exculpation clause is overly broad because it includes post-confirmation conduct. See In re Friedman's, Inc., 356 B.R. 758, 763 (Bankr. S.D. Ga. 2005) (finding that exculpation in the plan was overly broad to the extent it related to post-confirmation conduct); cf. In re Quincy Med. Ctr., Case No. 11-16394, 2011 Bankr. LEXIS 4405, at *8 (Bankr. D. Mass. Nov. 16, 2011) (finding exculpation clause reasonable and appropriate after plan was revised so exculpation provision no longer covered post-effective date activities). This is particularly true in this Chapter 11 Case, where there is expected to be a significant period of time post-confirmation until the Chapter 11 Case is closed. The Liquidating Trustee and their counsel should not be given "carte blanche" to do as they please while defending two appeals, prosecuting at least four adversary proceedings, and administrating the Chapter 11 Case. Accordingly, the exculpation clause must be narrowed before the Plan can be confirmed.

42.    Additionally, because the Plan vests all of the Debtor's assets in the Liquidating Trust, in the event that KK-PB's Mortgage Claim is reinstated in the Estimation Appeal, KK-PB must be able to be pursue payment of its Mortgage Claim against the Liquidating Trust and other

creditors. However, the language of Sections 10.3, 10.5, and 10.6 of the Plan appears to prohibit KK-PB from bringing a claim against the Liquidating Trustee to seek payment on account of its reinstated Mortgage Claim. Accordingly, a carveout should be added to those sections to make explicit that in the event KK-PB prevails in the Estimation Appeal, KK-PB will be permitted to bring claims against the Debtor, the Liquidating Trustee, any creditor or party in interest that received distribution under the Plan, and the aforementioned parties' counsel and other professionals to seek payment on account of the Mortgage Claim and will be able to assert any defenses and counterclaims that it would otherwise be able to assert absent confirmation of the Plan.

43. Further, the second carveout already included in Section 10.6 of the Plan should be revised to allow parties whom the Debtor or the Liquidating Trust has sued to assert any counterclaims they may have.

44. Finally, the clauses indemnifying and/or exculpating the Liquidating Trustee and their professionals in both Plan and the Liquidating Trust Agreement are overly broad, and the Plan should not be confirmed unless those clauses are narrowed. Specifically, the indemnification clauses carveout "those acts that are determined . . . to have arisen out of their own intentional fraud, willful misconduct or gross negligence." Plan § 7.3.6(t); id. § 10.5 ("gross negligence, willful misconduct, or fraud"); Liquidating Trust Agreement § 7.4 ("willful misconduct, gross negligence or actual fraud."); id. § 7.5 ("gross negligence, willful misconduct or actual fraud"). However, these carveouts should be expanded to cover any claims for professional malpractice and breach of fiduciary duty. E.g., In re Tousa, Inc., Case No. 08-10928, 2013 Bankr. LEXIS 3169, at *345-46 (Bankr. S.D. Fla. Aug. 5, 2013) ("The Liquidation Trustee, . . . the professionals of the Liquidation Trust and their representatives will be exculpated and indemnified pursuant to

17

the terms of the Liquidation Trust Agreement.  The indemnification described in the Liquidation Trust Agreement will exclude willful misconduct, gross negligence and professional malpractice."); Debtor's Amended Joint Plan of Liquidation, In re SMF Energy Corp., Case No. 12-19084-RBR (Bankr. S.D. Fla. Oct. 16, 2012) [ECF No. 549, at 25] ("The Liquidating Trust shall indemnify and hold [harmless] the Liquidating Trustee . . . from and against any damages, costs, claims and other liabilities incurred in connection with their respective duties and responsibilities hereunder, other than those . . . that result from their . . . gross negligence, self dealing, fraud, breach of fiduciary duty or willful misconduct.").

45.     Accordingly, the Debtor has failed to provide any support for the exculpation clause included in the Plan.  And any third-party releases in the Plan must be limited and include certain carveouts to protect KK-PB's rights.

## RESERVATION OF RIGHTS

46.     This Objection is submitted without prejudice to, and with a full express reservation of, KK-PB's rights to supplement and amend this Objection and to introduce evidence at any hearing relating to this Objection, and to further object to the Plan on any and all grounds. Moreover, KK-PB reserves its right to invoke each issue, fact, legal basis, and matter identified in the Objection as a basis for denying confirmation of the Plan pursuant to any applicable provision of the Bankruptcy Code, regardless of the particular subsection of this Objection in which the issue is raised.

## CONCLUSION

47.     **WHEREFORE**, KK-PB respectfully requests that the Court deny confirmation of the Plan and grant such further relief as it deems just and appropriate under the circumstances.

Dated: September 10, 2019                    WHITE & CASE LLP
Miami, Florida

By: */s/ John K. Cunningham*
    John K. Cunningham
    Florida Bar No. 542490
    James N. Robinson
    Florida Bar No. 608858
    Fan B. He
    Florida Bar No. 0095597
    Southeast Financial Center, Suite 4900
    200 South Biscayne Boulevard
    Miami, Florida  33131-2352
    Telephone: (305) 371-2700
    Facsimile:  (305) 358-5744

    *Counsel for KK-PB Financial, LLC*

## <u>ATTORNEY CERTIFICATION</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By: */s/ John K. Cunningham*
John K. Cunningham

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this day, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being served this day on all parties via transmission of Notices of Electronic Filing generated by CM/ECF.


By: */s/ John K. Cunningham*
     John K. Cunningham