

**ORDERED in the Southern District of Florida on February 11, 2020.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

160 Royal Palm, LLC,                          Case No.  18-19441-EPK

    Debtor.                                        Chapter 11
_____/

**ORDER APPROVING CONTINGENCY FEE APPLICATION FOR
COMPENSATION OF SHRAIBERG, LANDAU & PAGE, P.A.**

THIS MATTER came before the Court for hearing on February 10, 2020 upon the *Application for Contingency Compensation of Special Litigation Counsel for Debtor 160 Royal Palm, LLC* [ECF No. 1150] (the "Application") filed on behalf of Philip J. Landau, Esq. and Shraiberg, Landau & Page, P.A. (together, the "Applicants").

    1.    Having reviewed the Application, taking into consideration 11 U.S.C. §328 and for the reasons stated on the record which are incorporated herein and

{2234/000/00490709}

1

attached hereto as **EXHIBIT A**, and the Court being otherwise fully advised in the premises, it is hereby **ORDERED and ADJUDGED** that:

1. The Application [ECF No. 1150] is **APPROVED**.

2. The Application is approved in the amount of $15,479,941.39, which amount is the contingent fee requested in the Application, less the fees awarded to Dechert for work on matters relating to estimation of KK-PB Financial, LLC's mortgage claim.

# # #

**SUBMITTED BY:**

Philip J. Landau, Esq.
Shraiberg, Landau & Page P.A.
Attorneys for 160 Royal Palm, LLC
2385 NW Executive Center Dr., #300
Boca Raton, FL  33431
Tel. (561) 443-0800
Facsimile: (561) 998-0047
Email: plandau@slp.law

*Philip J. Landau, Esq. is directed to serve a copy of this Order upon all interested parties and file a certificate of service with the Court.*

EXHIBIT A

In re: 160 Royal Palm, LLC
Case No. 18-19441
Chapter 11

After a hearing held on February 10, 2020 to consider, *inter alia*, the *Application for Contingency Compensation of Special Litigation Counsel Philip J. Laudau, Esq. and the Law Firm of Shraiberg, Landau & Page, P.A.* [ECF No. 1150], the Court made the following ruling on the record:

This is the Court's ruling on the contingent fee application of Philip Landau and the law firm Shraiberg, Landau and Page, presented in their capacity as special litigation counsel to the debtor, at ECF number 1150. I will refer to the applicant as SLP. The Court considered the objections filed at ECF numbers 1326, 1540, 1541, and 1547, the responses filed at ECF numbers 1559, 1560 and 1561, and the arguments of counsel today.

SLP acts as special counsel on a contingent fee basis on several matters, but today seeks an award relating to specific litigation. SLP may file additional fee applications for payment of contingent fees consistent with the Court's order authorizing their retention as special litigation counsel.

For purposes of clarity, the Court incorporates here its entire oral ruling on confirmation of the debtor's third amended plan, also addressed today.

Upon filing this case, the debtor retained SLP as general bankruptcy counsel. About 6 weeks after the filing, the debtor sought to retain SLP separately as special litigation counsel, for a variety of matters, on a contingent fee basis. The application is in the docket at ECF number 77. While the application applies to several categories of litigation matters described in it, it was clear to the Court that it encompassed litigation relating to the mortgage claim of KK-PB Financial, LLC, which I will refer to as KK.

The Court held a hearing on the special counsel application on October 10, 2018. There is a transcript of that hearing in the docket at ECF number 766. Counsel for KK appeared at the hearing, at that time Mr. Salazar. KK did not object to the terms of retention. Mr. Salazar spoke only to preserve his client's right to object should the debtor later file a surcharge motion, something that never happened and is not material to today's ruling. The only other objection, asking the court to delay ruling on the application for a short time in case the entire bankruptcy case was dismissed, was overruled.

The Court approved the debtor's retention of SLP as special litigation counsel by order entered at ECF number 136. The order is detailed and states that the engagement is approved on a final basis. The order references section 328 and pre-approves the contingency fee agreement proposed by the debtor, setting fees at either 35% or 40% depending on whether the benefit to the estate is obtained before or after an appeal.

Some of the filed objections suggest that the Court did not explicitly pre-approve the contingent fee arrangement. This is un-true and those objections are overruled. Some of the objections considered today suggest that the Court did not find the contingent fee agreement to be reasonable at the time of retention. That finding is inherent in the Court's pre-approval of the debtor's contingent fee agreement with SLP. The Court does not approve, explicitly on a final basis, a contingent fee arrangement that it believes unreasonable. Those objections are overruled.

It is common for debtors-in-possession to retain special litigation counsel on a contingent fee basis. It is common for the debtor's general bankruptcy counsel to be retained also for this purpose. In many cases, the debtor has limited funds and is unable to provide assurance that an hourly fee will be paid. Special litigation counsel often takes a significant risk that, if the claims they pursue for the estate are not successful, counsel will have no ability to be paid. As in matters outside bankruptcy, the debtor may entice counsel to undertake protracted and potentially risky litigation by agreeing to a contingent fee arrangement. In many cases, this is the only way a debtor may pursue certain claims.

This case presents a good example of an instance where retention of special litigation counsel on a contingent fee basis is appropriate. When this case was filed, the debtor had almost no liquid assets. The debtor had only a partially re-constructed hotel property that it wished to sell for the benefit of creditors. KK claimed a mortgage lien on the hotel so large that if the claim was allowed there would be no assets available for distribution to creditors or to pay litigation costs. The debtor believed that KK's mortgage claim should be completely disallowed. It was clear from the start that litigation of KK's mortgage claim would require a substantial effort. Under the circumstances of this case, it was eminently reasonable -- indeed it was to be expected -- that the debtor would seek to retain special litigation counsel on a contingent fee basis.

The only objection sought to delay approval of the retention for a short time, and was overruled. No one objected to the terms of the engagement.

Consistent with their retention as special litigation counsel, SLP litigated KK's mortgage claim on several fronts, obtained the estimation order disallowing the claim, and then continued to litigate the matter before the District Court and the Eleventh Circuit. The issues surrounding KK's now disallowed mortgage claim

have been very heavily litigated for well over a year. SLP was instrumental in all of this activity. The Court is well aware of the very substantial work done by SLP in this litigation.

What was the outcome for the estate? KK's mortgage claim was disallowed completely. Not only did the Court rule that the mortgage itself was avoidable as a fraudulent transfer, but the Court ruled that the note obligation that is the basis for KK's claim was also avoidable. The result is that KK has no allowed claim on account of its mortgage claim. While KK appealed the estimation order, now about 11 months ago, the order is not stayed and is currently enforceable.

This outcome has a remarkable effect on the debtor's bankruptcy case. As a result of disallowance of KK's mortgage claim, a very substantial portion of the net proceeds from the sale of the debtor's hotel can be distributed to the debtor's unsecured creditors. If SLP had not succeeded in eliminating the mortgage claim, unsecured creditors would have received nothing at all. On the flip side, SLP took on its shoulders all of the risk of failure. If SLP was not successful in its efforts to defeat KK's mortgage claim, this entire bankruptcy case would have been a failure, leaving all of the defrauded EB-5 investors with nothing, and leaving SLP with no payment for its substantial efforts.

There were several objections filed with regard to this application.

KK filed a written objection at ECF number 1326. KK first argues that SLP is not disinterested because it was owed fees for pre-petition services. These fees were previously included in SLP's fee application as the debtor's general counsel. SLP has since explicitly waived any claim for such fees. As KK properly conceded, that means SLP is in fact disinterested and the objection is overruled.

KK argues that SLP's request for contingent fees is premature, as the estimation order remains under appeal, now apparently back with the District Court. But this argument ignores the effect of the Court confirming the debtor's plan today. As the Court has detailed in several other orders, most recently in the order at ECF number 1495 and in the ruling on plan confirmation today, the estimation order is not stayed and remains binding and enforceable. Because KK's mortgage claim was disallowed by a final order that is not stayed, the debtor's plan does not provide for any payment on account of that claim, nor does it provide for any reserve for the claim. Under black letter bankruptcy law, the confirmed plan has the effect of a contract binding on all creditors, whether or not entitled to a distribution under the plan. Upon confirmation of the plan all rights of creditors are determined solely under the terms of the plan. Thus, the confirmation of the plan, which implements the final, unstayed estimation order, terminates all rights of KK on account of the mortgage claim. This triggers SLP's right to contingent fees relating to litigation of the mortgage claim.

Under section 328(a), where the Court has approved a contingent fee arrangement such as the debtor's agreement with SLP, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." I draw the parties' attention to the specific wording of this provision. Congress did not say that if anything not anticipated happens a pre-approved contingent fee engagement may be modified. Congress required that the circumstances causing a pre-approved fee arrangement to be improvident must have not been capable of being anticipated. For the sake of the transcript, I am stressing the word "capable."

KK argues that this bankruptcy case remains active, it is not possible to know the ultimate outcome of the case, and things may happen that make SLP's contingent fee improvident. KK does not point to any specific happening that could not have been anticipated to support the suggestion that the requested fee is improvident. Even the premise of this argument is baseless. Upon confirmation of the debtor's plan, which the Court does today, this bankruptcy case is substantially complete. All of the debtor's assets were sold in a transaction no longer subject to reversal. The debtor has about $40 million to distribute under the plan. While a liquidating trust will continue to pursue certain litigation for the benefit of creditors, those actions can have no impact on whether SLP is due a contingent fee for defeating KK's mortgage claim.

Finally, KK argues that it was not possible to anticipate, at the time of SLP's engagement as special counsel, that the debtor would engage a separate firm to assist in the appeal from the estimation order, and that the estate should not suffer the additional cost of that engagement. The firm in question is the Dechert firm, whose fee application is also set for hearing today. The so-called Other Palm House Investors also raised this and similar arguments in their objection at ECF number 1547, as did the Initial EB-5 Creditors in their objection at ECF Number 1541. They alternatively ask the Court to reduce SLP's contingent fee by the amount awarded to Dechert, or to limit SLP's contingent fee to 35%.

When the Court authorized retention of SLP as special litigation counsel, it approved a contingent fee of 35%, and an increased contingent fee of 40% should the litigation involve an appeal. Contrary to its argument in responses filed at ECF numbers 1559, 1560 and 1561, by tendering the application SLP agreed to represent the debtor in appeals resulting from the relevant litigation, and SLP is entitled to the increased contingent fee only if it represented the debtor on the appeal.

In the present fee application, SLP requests the increased contingent fee of 40%. SLP has represented the debtor on the appeal from the estimation order. From Mr.

Brunstad's fee application and his statements on the record today, it appears that he assisted SLP in the matter in a material way. But SLP took a laboring oar in the estimation appeal, and is thus entitled to the increased contingent fee.

Even so, the estate should not have to pay the full 40% contingent fee to SLP, and also pay the approved fees of Mr. Brunstad and his firm for their work on the estimation appeal. It is appropriate, then, to reduce any contingent fee payable to SLP by the amount of fees payable to Dechert with regard to estimation matters. In that way, the estate will pay, in the aggregate, no more than the contingent fee the debtor agreed to and the Court approved.

In their objection at ECF number 1541, the Initial EB-5 Creditors argue that the disallowance of KK's claim through the estimation process is not an adjudication of "the validity, priority and/or extent of liens and mortgages upon assets of the Debtor" as contemplated in the debtor's engagement with SLP, and so no contingent fee is due.

Amazingly, the Initial EB-5 Creditors refer to the estimation ruling as "serendipitously advantageous to the estate and all of the creditors beyond the wildest dreams of the participants." While the estimation order was obviously advantageous to the debtor's true creditors, including the Initial EB-5 Creditors who would otherwise receive nothing from this case, there was nothing serendipitous about it. In its order denying KK's motion for a stay pending appeal of the estimation order, at ECF number 1056, the Court reviews in detail how the matter came before the Court via a motion to estimate under section 502(c), rather than on the debtor's separate objection to KK's filed claim, and how the Court ruled on KK's secured claim for all purposes in this case, consistent with section 502(c) itself and the debtor's request that the Court do so. The Initial EB-5 Creditors participated actively in all aspects of that litigation, which included extensive discovery, four days of evidentiary presentation, and a half day for closing arguments. No reasonable person, let alone a seasoned lawyer such as counsel for the Initial EB-5 Creditors, could have found the estimation ruling serendipitous.

Likewise, no reasonable person could have thought that the estimation procedure was not part of the work contemplated in SLP's engagement as special litigation counsel. In their objection, the Initial EB-5 Creditors state: "In this case, the Initial 43 EB-5 Creditors would be surprised if the Court had anticipated that in entering ECF 136 that it was essentially awarding the applicant 40% of the value of all of the assets of the estate." Yet this is exactly what the Court contemplated when the engagement came before the Court. From the filing of this case, it was obvious that the primary dispute was between the debtor and KK. Indeed, at the same hearing that the Court considered the debtor's engagement of SLP as special litigation counsel, parties in interest addressed that dispute at length. I refer you to the Court's order at ECF number 1056, which recounts this history. SLP was

undertaking to litigate with KK, on a matter which was from the start the key issue in this case, knowing that if they failed there would be nothing at all for creditors in this case, that the case would be a complete failure, and that SLP would not be paid. The proposed engagement explicitly included a contingent fee for reduction or elimination of a secured claim. The Court believed it eminently reasonable for the estate to agree to pay 35 to 40 percent of any benefit it received, as without SLP's efforts in that regard there would be nothing at all.

The Court rules that the litigation with KK relating to the estimation order is covered by the debtor's engagement of SLP as special litigation counsel on a contingent fee basis.

The Initial EB-5 Creditors also argue that it was not possible to anticipate that the debtor would attempt to settle with KK, that the Court would disapprove that settlement, and that the Initial EB-5 Creditors would then be involved in the estimation litigation. Yet none of this is surprising, let alone incapable of being anticipated at the time the debtor retained SLP as special counsel. There is nothing unusual about a debtor-in-possession attempting to settle with its primary creditor, particularly where, as in this case, failure in litigating the claim would leave the estate empty. The debtor's challenge to KK's mortgage claim was, in common parlance, bet-the-case litigation. The debtor's attempted settlement with KK was more than just capable of being anticipated -- it was expected. That the Court did not approve the settlement has no impact on this analysis. Likewise, from the filing of this case, it was obvious that the debtor's challenge to KK's mortgage claim would require extensive litigation. That the Initial EB-5 Creditors would feel the need to participate in that litigation was certainly well within the expectation of the parties.

The Initial EB-5 Creditors filed a separate joinder in all other timely objections to fee applications, at ECF number 1540. In ruling on all the other parties' objections to the present application, the Court has also ruled on the Initial EB-5 Creditors' objections made by joinder.

In summary, all objections to the present application of Mr. Laudau and the firm Shraiberg, Landau and Page, presented in ECF number 1150, for contingent fees arising from litigation relating to disallowance of the mortgage claim of KK, are overruled, with one exception. The contingent fee payable to SLP in regard to this matter shall be reduced by the amount awarded to Dechert for work in connection with estimation of KK's mortgage claim.

To be clear, this ruling is without prejudice to SLP presenting additional fee applications for contingent fees in connection with other litigation matters.

Mr. Brunstad will file an affidavit setting out those fees charged by his firm on matters relating to the estimation of KK's mortgage claim. The Court will review that affidavit and determine the total amount of fees of Dechert attributable to work in connection with estimation matters. That sum will be subtracted from the contingent fee awarded to SLP.

Mr. Landau and the firm Shraiberg, Landau and Page may present a proposed order approving their application consistent with the Court's ruling today, but leaving a blank for the amount of fees awarded. The Court will review the proposed order to ensure it is appropriate, and enter the amount of the award, which will be the contingent fee requested less the fees awarded to Dechert for work on matters relating to estimation of KK's mortgage claim.

The proposed order should specifically incorporate the ruling made by the Court on the record. My courtroom deputy will provide counsel with a document, to be attached to the order as an exhibit, that includes the entire oral ruling made today.